IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF ST. LOUIS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHS TX, INC., D/B/A/ YESCARE, )<br>LEXINGTON INSURANCE CO., and )<br>GREAT MIDWEST INSURANCE CO., )<br>)<br>Defendants. ) | Case No. 4:23-CV-00987-SRC |

### PLAINTIFF CITY OF ST. LOUIS'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

COMES NOW Plaintiff City of St. Louis (the "City"), by and through undersigned counsel, and states the following for its response in opposition to CHS TX, Inc.'s Motion to Transfer Venue and Incorporated Memorandum in Support (Doc. 8).

### STATEMENT OF FACTS

On June 30, 2023, the City filed this case in the Twenty-Second Judicial Circuit of Missouri, styled as *City of St. Louis v. CHS TX, Inc., et al.*, No. 2322-CC01330 (the "State Court Action"), bringing ten state law claims against CHS TX, Inc., d/b/a/ YesCare ("CHS TX"), Lexington Insurance Company ("Lexington"), and Great Midwest Insurance Company ("Great Midwest") (collectively, the "Defendants"). The City seeks a declaratory judgment stating that CHS TX, Lexington, and Great Midwest are obligated to indemnify the City for all of the costs and expenses incurred during the defense and settlement in *Perry v. City of St. Louis, et al.*, No. 4:17-cv-00981. (Doc. 1-1 at 6-49.) On August 8, 2023, CHS TX filed a notice of removal,

asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a), and the City has timely moved to remand the case to state court under 28 U.S.C. § 1447(c). (Docs. 1, 15, 16.)

On August 14, CHS TX filed a motion asking this Court to enter an order transferring this action to the United States Bankruptcy Court for the Southern District of Texas and docketing it as an adversary proceeding in *In re Tehum Care Servs., Inc.*, No. 23-90086 (the "Bankruptcy Case"). (Doc. 8.) In its argument that the State Court Action is "related to" the Bankruptcy Case, CHS TX asserts both that (1) CHS TX's insurer for purposes of the State Court Action will not defend CHS TX in the State Court Action because the insurance policy providing coverage is an asset of Tehum Care Services, Inc. d/b/a Corizon Health, Inc.'s (the "Debtor") estate and that (2) the same insurance policy would provide coverage to CHS TX in the State Court Action and to the Debtor in the Bankruptcy Case. (*Id.* at 4-5.) In its argument that transfer is appropriate, CHS TX reiterates its contention that the same insurance policy would provide coverage to CHS TX in the State Court Action and to the Debtor in the Bankruptcy Case and asserts—without evidence or explanation—that the bankruptcy court is the venue where the City will have the best chance of recovering the $515,000 it is owed. (*Id.* at 5-6.)

## ARGUMENT

As an initial matter, the City emphasizes that none of the Defendants have filed a petition for bankruptcy, the City seeks no relief from the bankruptcy Debtor, and CHS TX is an entity that is entirely separate from the Debtor. The City requests that the motion to transfer venue be denied because CHS TX has not shown that the State Court Action is related to the Bankruptcy Case or that a transfer would be appropriate in the interest of justice or for the convenience of the parties.

### A. The State Court Action Is Not Related to the Bankruptcy Case

The Eighth Circuit has adopted the "conceivable effect" test for determining whether a civil proceeding is related to a bankruptcy case. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (citing *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Under the "conceivable effect" test, federal courts analyze whether the outcome of the civil proceeding could conceivably have any effect on the estate being administered in the bankruptcy. *Id*. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts the handling and administration of the bankrupt estate. *Id*.

A bankruptcy court's "related to" jurisdiction cannot be limitless. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). The Supreme Court has noted that while the "First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation," the Second and Seventh Circuits have adopted a slightly different test. *Id.* at 308 n.6 (collecting cases). "But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Id.*

In *Specialty Mills*, Citizens State Bank ("CSB") secured a direct assignment of rent payments due to Dakota Oat from Specialty Mills under a lease allowing Specialty Mills to use space in one of Dakota Oat's mills in 1989. *Specialty Mills*, 51 F.3d at 772. In 1991, Dakota Oat filed a Chapter 11 bankruptcy petition, and Specialty Mills later gave notice to Dakota Oat that it would terminate the lease in 60 days and remove the machinery and equipment that it had been storing in the mill. *Id*. CSB then filed an *ex parte* motion for notice of automatic stay in the bankruptcy court, alleging that Dakota Oat "may" have an ownership interest in the machinery and equipment that Specialty Mills had intended to remove from the leased premises. *Id.* Specialty Mills moved for relief from the automatic stay, and the bankruptcy court ultimately concluded that

3

the lease termination was proper and allowed Specialty Mills to remove the machinery and equipment. *Id.*

Specialty Mills and its principal shareholder subsequently filed an action in state court asserting five state law tort claims relating to CSB's actions in Dakota Oat's bankruptcy proceedings. *Id.* at 772. They specifically alleged that CSB filed the *ex parte* motion to raise an argument that it knew was not well grounded in fact, law, or equity—namely, that Dakota Oat might have an interest in the machinery and equipment—for the improper purpose of frustrating Specialty Mills's efforts to exercise its right to terminate the lease. *Id.* at 772-73. Plaintiffs alleged that CSB's actions were intended to prolong Specialty Mills' obligation to continue paying rent under the lease. *Id.* at 773.

CSB removed the action directly to the bankruptcy court as an adversary proceeding. Plaintiffs moved to transmit the action to the district court, stating that they sought no relief against Dakota Oat, and the bankruptcy court granted the motion. *Id.* The district court granted summary judgment in favor of CSB, finding that CSB did not improperly invoke the automatic stay and thus did not improperly use the judicial process. *Id.*

On appeal, the Eighth Circuit noted that the state court action was filed after Dakota Oat's ownership interest in Specialty Mills had been transferred to CSB. *Id.* at 774. The appellate court concluded that nothing in the plaintiffs' complaint or CSB's notice of removal could have conceivably altered Dakota Oat's rights, liabilities, options, or freedom of action or have an impact on the handling and administration of Dakota Oat's bankruptcy estate. *Id.* While there might have been some convergence between Dakota Oat's affairs and the dispute between the plaintiffs and CSB, the court concluded that possibility did not impart "related to" jurisdiction, as the dispute did not affect Dakota Oat's bankruptcy estate or the allocation of assets. *Id.* Thus, the Eighth Circuit

held that the dispute between the plaintiffs and CSB was not related to the Dakota Oat bankruptcy, concluded that the district court lacked subject matter jurisdiction under 28 U.S.C. § 1334(b), and reversed the judgment with directions to remand the case to the state court. *Id.* at 775.

The City submits that CHS TX has not met its burden of proving that transferring this action to the Bankruptcy Case is appropriate because it has not shown that the State Court Action will have any effect on the Debtor's estate. *See Celotex*, 514 U.S. at 308 n.6 ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *Quick*, 2007 WL 494924, at *3 (stating that party wishing to transfer venue has burden to prove by a preponderance of evidence that transfer is appropriate). In the motion to transfer venue, CHS TX specifically states that one of its insurers will not defend it in the State Court Action because the insurance policy providing coverage is an asset of the Debtor's estate. (Doc. 8 at 4-5.) CHS TX then inexplicably asserts that the same insurance policy would provide coverage to CHS TX in the State Court Action and to the Debtor in the Bankruptcy Case. (*Id.* at 5.) The problem with this contention is that the City is not seeking coverage or recovery from the insurer identified in CHS TX's motion, American International Group, Inc. (Doc. 8 at 3). Rather, the City seeks recovery from two different insurance companies (codefendants Great Midwest and Lexington), as CHS TX's motion acknowledges. (Doc. 8 at 2).

In any event, CHS TX cannot have it both ways. Either CHS TX's insurer(s) will provide coverage in the State Court Action or it will not. If the insurance policy will not provide coverage in the State Court Action, as CHS TX asserts, then the disposition of the State Court Action will not affect the amount that creditors are able to recover from the Debtor. CHS TX appears to merely be complaining that it does not have insurance that will cover it in the State Court Action, and that

5

complaint does not support its contention that the State Court Action will have an impact on the amount creditors are able to recover from the Debtor.

Like *Specialty Mills*, nothing in the City's petition or CHS TX's notice of removal could conceivably alter the Debtor's rights, liabilities, options, or freedom of action or impact the handling and administration of the Debtor's bankruptcy estate. *See Specialty Mills*, 51 F.3d at 774. CHS TX has provided no evidence to the contrary, its brief attempt at an explanation contradicts itself, and its argument in support of transfer is not well grounded in fact or law. Unlike the plaintiffs in *Quick*, the City has not filed any proof of claims in the bankruptcy court, and the State Court Action will have no effect on the efficient administration of the Debtor's bankruptcy estate. *See Quick*, 2007 WL 494924, at *3-4. As in *Specialty Mills*, while there might have been some convergence between the Debtor's affairs and the dispute between the City and the Defendants, that possibility does not impart "related to" jurisdiction, as the State Court Action will not affect Debtor's bankruptcy estate or the allocation of assets. *See id.* at 775.

### B. Transfer Is Not Appropriate

The granting of a motion to transfer is within the district court's discretion. *Lonquist Field Servs., LLC v. Dominion Proppants, LLC*, No. 1:19-cv-213-JAR, 2020 WL 5230887, at *2 (E.D. Mo. Sept. 2, 2020). The party wishing to transfer venue has the burden to prove by a preponderance of the evidence that the transfer is appropriate. While there is a strong presumption in favor of placing venue in the district court where the bankruptcy case is pending, when the debtor is a non-movant in the motion to transfer venue to the "home court," consideration of the home-court presumption is less important than if the debtor was the movant or had joined in the motion. *Quick v. Viziqor Solutions, Inc.*, No. 4:06-cv-637-SNL, 2007 WL 494924, at *3-4 (E.D. Mo. Feb. 12, 2007) (granting defendants' motion to transfer venue to bankruptcy court where

plaintiffs had filed proofs of claims based upon allegations in complaint, and district court found that it would be significantly detrimental to efficient administration of debtor's bankruptcy estate and patently unfair to any creditors if case was not controlled by the bankruptcy court).

In determining whether a transfer is in the interest of justice, courts consider: (1) the economics of estate administration, (2) the presumption in favor of "home court," (3) judicial efficiency, (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum. *Quick*, 2007 WL 494924, at *4. In determining whether a transfer will serve the convenience of the parties, courts consider: (1) the location of the plaintiff and the defendant, (2) the ease of access to necessary proof, (3) the convenience of the witnesses, (4) the availability of subpoena power for unwilling witnesses, and (5) the expense related to obtaining witnesses. *Id.*

Not only is the State Court Action unrelated to the Bankruptcy Case, transfer is not appropriate in the interest of justice or for the convenience of the parties. While CHS TX notes that there is generally "a strong presumption in favor of placing venue in the district court where the bankruptcy case is pending," it fails to mention that consideration of the home-court presumption is less important when the debtor is a non-movant in the motion to transfer venue to the home court. *See Quick*, 2007 WL 494924, at *3. Indeed, the Debtor could not join in the motion to transfer venue, as it is not a party to this case.

CHS TX also fails to mention that the home-court presumption is only one of many factors that courts consider when determining whether a transfer is in the interest of justice, and none of those factors weigh in favor of transfer. *See Lonquist*, 2020 WL 5230887, at *2; *Quick*, 2007 WL 494924, at *4 (listing (1) the economics of estate administration, (2) the presumption in favor of

"home court," (3) judicial efficiency, (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum as the factors courts consider when determining whether a transfer is in the interest of justice). Because the State Court Action is not related to the Bankruptcy Case, a transfer would not facilitate the economics of estate administration, judicial efficiency, the ability to receive a fair trial, or the enforceability of any judgment, as the bankruptcy court would lack jurisdiction over the claims the City has brought against the Defendants. *See Celotex*, 514 U.S. at 308 n.6 ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *Lonquist*, 2020 WL 5230887, at *2; *Quick*, 2007 WL 494924, at *4. A transfer would also undermine Missouri's interest in having local controversies decided within its borders by those familiar with its laws and the City's original choice to bring its ten state law claims in state court. *See Lonquist*, 2020 WL 5230887, at *2; *Quick*, 2007 WL 494924, at *4.

      CHS TX does not mention any of the factors that courts consider when determining whether a transfer will serve the convenience of the parties, presumably because they clearly weigh against a transfer. *See Quick*, 2007 WL 494924, at *4 (listing (1) the location of the plaintiff and the defendant, (2) the ease of access to necessary proof, (3) the convenience of the witnesses, (4) the availability of subpoena power for unwilling witnesses, and (5) the expense related to obtaining witnesses as factors courts consider when determining whether a transfer will serve the convenience of the parties). While CHS TX is a citizen of both Texas and Tennessee, Great Midwest is the only defendant that has its principal place of business in Texas. Lexington is a citizen of Delaware and Massachusetts, the City is a citizen of Missouri, and all of the evidence and witnesses are located in Missouri. It is unclear whether the City would be able to secure

witness cooperation to travel from Missouri to Texas, and it would cost the City a considerable amount of time, money, and effort to do so. *See Quick*, 2007 WL 494924, at *4. Thus, the City submits that the above factors demonstrate that transferring this action to the Bankruptcy Case is not appropriate and that the interest of justice and the convenience of the parties would be best served by remanding this case to state court.

## CONCLUSION

Accordingly, the City respectfully requests that this Court deny CHS TX's motion to transfer venue and grant the City's motion to remand this case to state court (Doc. 15).

Dated: September 14, 2023

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: */s/* Erin K. McGowan
Erin McGowan #64020MO
*Associate City Counselor, Affirmative Litigation Unit*

314 City Hall
1200 Market St.
St. Louis, Missouri 63103
(314) 622-3361 (telephone)
(314) 622-4956 (facsimile)
mcgowane@stlouis-mo.gov
*Attorney for City of St. Louis*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2023, the foregoing was electronically filed with the Clerk of Court using the Court's ECF filing system, to be served on all counsel of record.

                                                         */s/* Erin K. McGowan