# EXHIBIT A

*City of St. Louis*
FRANCIS G. SLAY MAYOR

*WE STRIVE TOWARD EXCELLENCE*
*Ad Excelleum Conamur*

*DEPARTMENT OF PUBLIC SAFETY*
*RICHARD GRAY, DIRECTOR*

*DIVISION OF CORRECTIONS*
*DALE GLASS, COMMISSIONER*



**CITY OF ST. LOUIS**
**JUSTICE CENTER**

# City of St Louis, Division of Corrections
# Health Services Agreement

# June 2014



EXHIBIT 1

## CITY OF ST. LOUIS, DIVISION OF CORRECTIONS
## HEALTH SERVICES AGREEMENT

THIS AGREEMENT is made and entered into by and between the City of St. Louis, Missouri (the "City"), with its principal place of business at the City Justice Center, 200 South Tucker, St. Louis, MO 63102-1152 and Corizon, LLC ("Corizon") with its principal place of business at 105 Westpark Drive, Suite 200, Brentwood, TN 37027.

WITNESSETH:

WHEREAS, the City is charged by law with the responsibility for administering, managing and supervising the health care delivery system of the City Justice Center ("CJC") located at 200 South Tucker, St. Louis, MO 63102-1152, and the Medium Security Institution ("MSI"), located at 7600 North Hall Street, St. Louis, MO 63147, (the "Facility" and/or the "Facilities"); and

WHEREAS, the objective of the City is to provide for the delivery of quality health care to Inmates in accordance with applicable law; and

WHEREAS, the City desires to enter into a health care services agreement with Corizon to promote this objective; and

WHEREAS, Corizon is a limited liability company duly and validly existing in good standing under the laws of the state of Missouri and is duly qualified to carry on its business; and

WHEREAS, Corizon provides correctional health care staffing and services and desires to provide such staffing and services for the City under the terms and conditions of this Health Services Agreement (the "Agreement").

NOW, THEREFORE, with the intent to be legally bound, and in consideration of the covenants and promises hereinafter made, the parties hereto agree as follows:

## ARTICLE I: HEALTH CARE SERVICES.

1.1 General Engagement. The City hereby engages Corizon to provide and to arrange for the delivery of reasonable and necessary medical, behavioral and dental care to individuals under the custody and control of the City and sentenced to and incarcerated at the Facilities ("Inmates"), and Corizon hereby accepts such engagement according to the terms and provisions hereof.

1.2 Scope of Services. Corizon will provide on a regular basis professional medical, behavioral health, dental and related health care and administrative services for the Inmates, including a program for a Receiving Screening of Inmates upon arrival

1

at the Facility, an Initial Health Assessment of each Inmate following admission to the Facility, regularly scheduled sick call, nursing coverage, regular physician visits on site, infirmary care, hospitalization, medical specialty services, emergency medical care, medical records management, pharmacy services, health education and training services, a quality assurance program, administrative support services, and other services, all as more specifically described hereinafter in Appendix A, Scope of Work. Corizon shall be financially responsible for such care, subject to the compensation terms as detailed in Appendix B, Contract Pricing.

1.3 <u>Specialty Services</u>. Corizon will provide and be financially responsible for specialty services (e.g. radiology services, laboratory services, etc.) on site to the extent reasonably possible. To the extent specialty care is required and cannot be rendered on site, Corizon will make appropriate off-site arrangements for the rendering of such care, and Corizon shall be financially responsible for such care, subject to the compensation terms as detailed in Appendix B of this Agreement.

1.4 <u>Emergency Services</u>. Corizon will be responsible to provide off-site emergency medical care to Inmates, to the extent required, through arrangements to be determined with local hospitals and Corizon shall be financially responsible for such care, subject to the compensation terms as detailed in Appendix B, except that Corizon is not responsible for the cost of emergency transportation services. Routine transfers will be the responsibility of the City in regard to off-site non-emergency medical treatment.

1.5 <u>Hospitalization Services</u>. Corizon will arrange for the admission of any Inmate, who in the opinion of the treating physician requires hospitalization and Corizon will bear the costs thereof, subject to the compensation terms as detailed in Appendix B.

1.6 <u>Infant Care</u>. Corizon will provide health services to any pregnant Inmate, subject to the compensation terms as detailed in Appendix B, but health care services provided to an infant following birth will be the responsibility of the City.

1.7 <u>Elective Medical Care</u>. Corizon will not be responsible for the provision of elective medical care to Inmates. For purposes of this Agreement, "elective medical care" means medical care which, if not provided, would not in the opinion of Corizon's Medical Director cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well-being.

1.8 <u>Health Care Services to Visitors and Staff</u>. Corizon shall provide emergency medical treatment to Visitors or Facility staff as necessary and appropriate on-site. The City will provide appropriate transportation services as requested by Corizon.

1.9 <u>Unauthorized Absence and Pre-Booking Injuries.</u> To the extent possible and medically appropriate, Corizon agrees to render on-site medical services to Inmates for injuries incurred prior to incarceration, or while the Inmate was away from the jail.

However, if an Inmate is deemed not fit for confinement at intake, Corizon shall have the ability to divert that Inmate to an off-site hospital for treatment and Corizon shall not be financially responsible for treatment rendered. Furthermore, in no event, shall Corizon be liable for or responsible for the payment of:

a. any claim, liability, cost or expense for off-site hospitalization or specialty services arising or incurred at any time in connection with treatment of any Inmate's injury if such injury occurred while the Inmate was away from the Facility for reasons other than health care prescribed by Corizon employees or contractors; or

b. any claim, liability or cost for off-site hospitalization or specialty services arising out of the City's, or any of their respective employees, officers, agents or subcontractors (i) preventing any Inmate from receiving medical care ordered by Corizon employees or contractors, (ii) failure to exercise good judgment in promptly presenting any ill or injured Inmate for treatment by Corizon employees or contractors, or (iii) own acts or omissions, including acts of negligence or willful misconduct.

## ARTICLE II: PERSONNEL.

2.1 Staffing. Corizon will provide medical, behavioral health, dental, technical, and support personnel necessary for the rendering of health care services to Inmates as contemplated herein. The health care staff will be at levels consistent with Appendix C, Staffing Plan.

2.2 Staffing Vacancies. Corizon will credit to the City all positions vacant in excess of 15 consecutive days in accordance with the staffing plan in Appendix C. Corizon will provide the City a monthly summary of vacant positions in accordance with the contracted staffing plan by job class (RN, LPN, etc.). Once a position has been vacant for a period of fifteen (15) consecutive days, credit shall be given for actual positions vacant based upon the number of scheduled days vacant (beyond the initial 15 consecutive days) within the calendar month for that position. Corizon will provide a credit memo to the City based upon the vacated employee's actual salary and benefits.

A position is deemed vacant when no individual has been hired or contracted to provide services, and has begun working at the facilities. When part time, temporary, agency, locum, PRN, and overtime are utilized consistently to cover a position, these services will preclude a position from being declared vacant. The computation of vacant days will be provided to the City no later than 30 days following the month of service.

2.3 Licensure, Certification and Registration of Personnel. All personnel provided or made available by Corizon to render services hereunder will be licensed, certified or

5

registered, as appropriate, in their respective areas of expertise pursuant to applicable Missouri law.

2.4 <u>The City's Satisfaction with Health Care Personnel</u>. If the City should become dissatisfied with any health care personnel provided by Corizon hereunder, Corizon, in recognition of the sensitive nature of correctional services, will, following receipt of written notice from the City of its dissatisfaction and the reasons thereof, immediately remove the health care personnel from their role in providing services in the City Facilities.

2.5 <u>Use of Inmates in the Provision of Health Care Services</u>. Inmates will not be employed or otherwise engaged by either Corizon or the City in the direct rendering of any health care services. Inmates may be used in positions not involving the rendering of health care services directly to Inmates as Corizon and the City may mutually agree.

2.6 <u>Discrimination</u>. Corizon will recruit, select, train, promote, transfer and release its personnel, as contemplated hereunder, without regard to race, color, religion, national origin, handicap, Vietnam-Era veteran status, age, sex or sexual orientation (except where age, sex or handicap is a bona fide occupational qualification). Further, Corizon will administer its other personnel policies such as compensation, benefits, layoffs, return from layoff, company sponsored training, education, and tuition assistance without regard to race, color, religion, national origin, handicap, Vietnam-Era veteran status, age, sex or sexual orientation.

2.7 <u>Restrictive Covenant</u>. Recognizing among other things the unique services provided by the employees, independent contractors, subcontractors and agents of Corizon during the term of this Agreement, the City will not, directly or indirectly, solicit, engage or permit to be engaged at the Facilities said employees, independent contractors, subcontractors or agents of Corizon during the term of this Agreement (including any renewals thereof) and for a period of one (1) year thereafter without the prior written consent of Corizon; provided, however, that this limitation shall not apply to persons who were employed at the Facilities immediately prior to the commencement of Corizon's services hereunder.

# ARTICLE III: NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE (NCCHC) ACCREDITATION.

3.1 <u>Maintenance of NCCHC Accreditation</u>. Corizon's services hereunder are designed to maintain NCCHC accreditation for both City of St. Louis Division of Corrections Facilities throughout the contract period.

3.2 <u>Submission of AMRs</u>. Corizon will submit Annual Maintenance Reports (AMRs) and accreditation site visits before October 2014. The City must review and approve AMRs before submittal.

3.3    Accreditation Costs. Corizon will incur all costs associated with achieving and maintaining NCCHC accreditation over all contract term periods.

3.4    Timeframe and Action Plan. Corizon will develop the timeframe and action plan for all NCCHC accreditation compliance activities. Corizon will submit this timeframe and action plan to the City.

3.5    Applicable Standards. To the extent required to achieve NCCHC Accreditation, Corizon will provide all health care services in compliance with the 2008 or most recent Standards for Health Services in Jails, established by the National Commission on Correctional Health Care (NCCHC).

3.6    Penalty for Failure to Maintain Accreditation. Failure to obtain such accreditation within the specifications of the Agreement will result in Corizon being considered in breach of contract, and subject to a penalty of $100,000 per Facility, unless the failure is due to circumstances outside the control of Corizon, including physical plant limitations or the City's inability to meet its obligations as defined by NCCHC standards. The penalty will be assessed on the date on which NCCHC deems that the Facility loses accreditation status.

# ARTICLE IV: EDUCATION AND TRAINING.

4.1 Ongoing Health Educations Programs. Corizon will conduct an ongoing health education program for Inmates, Correctional Officers, and Healthcare Staff at the Facilities toward the objective of raising the level of Inmate health and health care. The topics and schedule will be developed following Agreement signing.

4.2 Inmate Health Education. Recurring topics will include, at a minimum:

  a. Group treatment and other peer treatment services in accordance with nationally-recognized best practices, including but not limited to a Substance Use Disorder group
  b. Education on mental illnesses and the importance of medication adherence
  c. Programs for individuals who have a serious mental illness
  d. Oral hygiene and preventive oral health education within one month of admission

4.3 Correctional Officer Health Education. Corizon will provide training to selected Division of Corrections staff at least every six months. Rotating topics will include, at a minimum:

  a. Suicide prevention and interventions, including mock drills practice sessions

5

b. Recognizing and diffusing behavioral health problems
c. De-escalation techniques
d. Sick call requests protocols
e. Addressing clinical emergencies
f. Techniques to physically subdue/restrain a prisoner with acute mental distress
g. Infectious disease and universal precautions

4.3 <u>Orientation for Newly Hired Healthcare Staff</u>. Corizon will ensure that all newly-hired employees, regardless of position, are provided with appropriate orientation within one week of start date. Corizon will coordinate with the St. Louis City Division of Corrections to ensure the Division provides facility operations and security matters orientation within one week of start date of a new employee. These provisions apply to all employees including contract, temporary, and full-time.

4.4 <u>Monthly In-service Training for Healthcare Staff</u>. Corizon will deliver appropriate in-service training and scheduled continuing educational programs to healthcare staff throughout the contract period. Selected training topics and programs will include, at a minimum:

a. Suicide Prevention
b. Recognizing the Signs of Mental Illness
c. Medication Ordering and Administration
d. Managing Off-site Referrals
e. Intake Medical and Mental Health Screening
f. Managing Inmate Sick-Call Requests
g. Effective Infection Control Procedures
h. Planning and Processes
i. Additional training sessions as new processes with courts, local public health, state insurance programs, and the state Health Benefit Exchange develop throughout the contract.

4.5 <u>Online Medical Resources</u>. Corizon will provide for and pay for online medical resources and guides to support the medical, behavioral and dental staff in providing appropriate healthcare according to the most recent protocols. At a minimum, this requires subscription to "Up To Date" or a comparable medical resource.

## ARTICLE V: REPORTS AND RECORDS.

5.1 <u>Medical Records</u>. Corizon will cause to be maintained an integrated medical record for each Inmate who has received health care services. This medical record will be maintained pursuant to applicable law and City policies, and will be kept separate from the Inmate's confinement record. A complete copy of the applicable medical record will be available to accompany any Inmate who is transferred from either Facility to another location for off-site services. Medical records will be kept confidential, and

Corizon will follow the City's policy with regard to access by Inmates and Facilities staff to medical records, subject to applicable law regarding confidentiality of such records. No information contained in the medical records will be released by Corizon except as provided by the City's policy, by a court order, or otherwise in accordance with applicable law.

5.2 Additional requirements for medical records:

a. All paper medical, dental and behavioral health records will be maintained at the Facilities and will remain the property of the City. The records will be maintained separately from an Inmate's legal/confinement record.

b. Corizon will give the City access to all medical records immediately upon request of the City.

c. Corizon will update the Inmate's medical record at the point of service, and will forward a summary of the record to the appropriate Facility in the event of an Inmate's transfer. Upon transfer, the medical record will include a Medical Flow Sheet or other transfer of medical information sheet.

d. Corizon will ensure that the Inmate's Medical Record is transferred to the other City Facility at the time of transfer of the Inmate but not more than four hours later than said transfer.

e. Corizon must take all necessary precautions to ensure medical records and information remains privileged and confidential. These precautions must include but not be limited to keeping them locked and secured from routine traffic.

f. Corizon will adhere to and comply with all protections outlined in the Health Insurance Portability and Accountability Act.

g. Corizon will ensure that its staff documents all healthcare contacts in the Inmate healthcare record in the problem-oriented medical record format (Subjective, Observation, Assessment, Plan (SOAP)).

h. Corizon will retain medical records for a minimum of ten years, or as long as legally required, so long as Corizon is the contracted medical provider.

5.3 Electronic Medical Records. Corizon will provide, at no additional cost to the City, an electronic medical records system integrated with the Jail Management System (IJMS) during the first year of this contract. Corizon is obligated to migrate only current Inmate medical records to the electronic medical records system, training all staff and monitoring the integrity of data entry.

5.4 Medical Records Requests: Corizon must deliver any and all data requested by the City, within 48 hours of the request. Corizon must create and deliver all data contained in the electronic record to the City at contract termination.

5.5  Medicaid Electronic Health Record Incentive Program: If either the City or Corizon engages with the state of Missouri's Medicaid Electronic Health Record Incentive program, Corizon will require eligible clinicians to comply with and meet Meaningful Use Requirements and the City and Corizon will agree in writing as to the disposition of incentive payments paid to clinicians.

5.6  Inmate Health Insurance. Corizon will seek and obtain from any Inmate information concerning any health insurance the Inmate might have that would cover services rendered by Corizon hereunder, and the City will cooperate fully with Corizon in its efforts to secure this information. Corizon will notify the entity providing medical services of such third-party coverage. Corizon will reduce the payment to the hospital or medical provider based on the amount paid by a third party in the event fees for any medical services provided to any Inmate pursuant to this Agreement are paid or payable by any third party source or sources including but limited to: Workers Compensation insurance, third party insurance, federal, state, or local health care benefits or programs.

5.7  Inmate Information. In order to assist Corizon in providing the best possible health care services to Inmates, the City will provide Corizon with information pertaining to Inmates that Corizon identifies as reasonable and necessary for Corizon adequately to perform its obligations hereunder.

5.8  Corizon Records Available to the City with Limitations on Disclosure. Corizon will make available to the City or any of its duly authorized representatives at any time during the term of this agreement access to, and the right to audit and examine, any pertinent records of Corizon related to this Agreement, provided, however, that the City understands that the systems, methods, procedures, written materials and other controls employed by Corizon in the performance of its obligations hereunder are proprietary in nature and will remain the property of Corizon and may not, at any time, be used, distributed, copied or otherwise utilized by the City, except in connection with the delivery of health care services hereunder, unless such disclosure is approved in advance in writing by Corizon. Such records will be kept by Corizon for a period of not less than five years from the date the records are made, unless the City authorizes their earlier disposition. Corizon agrees to refund to the City any overcharges disclosed by any such audit, or to take other corrective action as may be required. The City agrees to refund to Corizon any underpayments disclosed in such audits.

5.9  The City Records Available to Corizon with Limitations on Disclosure. During the term of this Agreement and for a reasonable time thereafter, the City will provide Corizon, at Corizon's request, the City's records relating to the provision of health care services to Inmates as may be requested by Corizon or as are pertinent to the investigation or defense of any claim related to Corizon's conduct. The City will make available to Corizon such records as are maintained by the City, hospitals, and other outside health care providers involved in the care or treatment of Inmates (to the extent the City has any claim to those records) as Corizon may reasonably request consistent with applicable law; provided, however, that any such information released by the City

to Corizon that the City considers confidential will be kept confidential by Corizon and will not, except as may be required by law, be distributed to any third party without prior written approval by the City.

5.10 Reporting Requirements. Corizon will comply with all reporting requirements including, but not limited to, the reports specified in APPENDIX D, MANDATORY PROVIDER REPORTS.

## ARTICLE VI: SECURITY.

6.1 General. Corizon and the City understand that adequate security services are necessary for the safety of the agents, employees and subcontractors of Corizon, as well as for the security of Inmates and Facility staff. Corizon will have no direct responsibility for the security at the St. Louis City Division of Corrections Facilities or for the custody of any Inmate at any time as all matters related to Facility security are the sole responsibility of the St. Louis City Division of Corrections. The City hereby indemnifies Corizon, its agents, employees, contractors and officers against any claims or losses arising out of Inmate disturbances or any other security failures and shall reimburse Corizon for any and all costs (including attorney's fees) incurred in connection with any such claims or losses.

6.2 Transportation Off-Site. The City will provide security as necessary and appropriate in connection with the transportation of any Inmate between either Facility and any other location for off-site services as contemplated herein.

## ARTICLE VII: OFFICE SPACE AND EQUIPMENT.

7.1 General Services. The City will provide for each Inmate receiving health care services no less than the full range of services and facilities provided by the City for other Inmates at both Facilities including, but not limited to, daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

7.2 Business Equipment, Medical Equipment and Supplies. Corizon will provide and pay for all business equipment and supplies necessary to meet its obligations contained in this Agreement. Although not comprehensive, this includes computers and related equipment, copier machine and supplies, fax machine, pagers, two-way radios, phones and related equipment, long-distance phone, and fax calls. Business equipment and supplies leased or purchased by Corizon will remain the property of Corizon.

7.3 Medical Supplies and Durable Medical Equipment. Corizon will supply, maintain, and have financial responsibility for all medical supplies and durable medical equipment necessary to meet its obligations contained in this Agreement. Supplies and durable medical equipment introduced into either Facility will become and remain the

property of the City. Corizon may utilize existing medical equipment and medical supplies in place at contract start-up.

7.4 <u>Inventory of Facility Medical Equipment, Supplies</u>. Corizon will inventory all Facility medical equipment and supplies at contract start-up and termination and share the results with the City. The inventory will report on the condition of all equipment, all scheduled maintenance, and maintenance records. The City reserves the right upon reasonable notice to request additional inventory procedures.

7.5 <u>New Medical Equipment</u>. Corizon will be responsible for identifying the need for new medical equipment and for bringing quotes for necessary equipment with a unit cost exceeding $500 to the City for approval before purchase. The City will be responsible for the cost of all new equipment where the unit cost, defined as the actual acquisition cost, exceeds $500. Medical equipment introduced into either Facility will become and remain the property of the City.

7.6 <u>Equipment Maintenance and Repair</u>. Corizon assures that at all times all medical and dental equipment is properly maintained, scheduled maintenance is carried out, and all equipment is maintained in compliance with local, state and Federal guidelines and regulations. Corizon will be responsible for the maintenance, repair, and replacement of equipment and parts that become damaged, broken or render the equipment to be inoperable or unsafe. The City will be responsible for the cost of routine maintenance, repair, or replacement costs in excess of $500 per incident.

7.7 <u>Damage by Corizon Employees, Agents, or Subcontractors</u>. Corizon will be responsible for the cost to repair/replace any equipment, supplies or assets damaged by its employees, agents or subcontractors, regardless of the cost. Corizon will assume full responsibility for any damage to City of St. Louis' equipment or premises that are caused by the negligent or intentional acts or omissions of its employees, agents, or officers.

7.8 <u>Cleaning Supplies and Services</u>. The City will provide general cleaning supplies and general cleaning services to maintain the medical services work areas. Corizon will provide cleaning supplies used primarily in a healthcare setting and special cleaning services necessary for a healthcare work environment.

7.9 <u>Utilities</u>. The City of St. Louis will provide existing phone service (excluding long-distance service), internet service, heat, electricity, and habitable physical space.

7.10 <u>Key Control</u>. All keys and tools that could pose a danger in the hands of prisoners are accounted for at every Corizon shift change. A list of items and a key and tool control policy for approval by the City will be submitted as required.

## ARTICLE VIII: TERM AND TERMINATION OF AGREEMENT.

8.1 <u>Contract Term</u>. This Agreement will be effective as of 12:01 A.M. on July 1, 2014, for an initial term of three (3) year(s). This Agreement is renewable under like-terms for two (2) additional one-year terms thereafter, unless either party delivers written notice of non-renewal to the other party at least 90 days prior to the expiration of then-existing term, in which event this Agreement will terminate upon the expiration of then-existing term.

8.2 <u>Termination Provisions</u>. This Agreement may be sooner terminated on the first to occur of the following:

a. <u>Termination by Either Party</u>. With or without cause, penalty or recourse in the event the City or Corizon give the other party not less than seventy five (75) days written notice of intent to terminate as of the date specified.

b. <u>Termination for Default</u>. In the event that the City will give written notice to Corizon that Corizon has displayed a significant pattern of non compliance and has materially defaulted in the performance of any of its obligation under this agreement and such default will not have been cured within thirty (30) days following the giving of such notice, the City will have the right to immediately terminate the term of the Agreement or reinstate the Agreement based upon corrective action. In the event of such termination, the City will have no liability to Corizon for the remainder of the term of the Agreement. In the event the default has not been cured within thirty (30) days following notification, the City reserves the right to withhold one month's payment from the Corizon until such time that an acceptable cure is reached.

c. <u>Termination by Corizon for Special Situations</u>. Corizon may terminate this Agreement immediately upon the occurrence of any of the following:

(i) Failure of the governing body of the City to authorize or appropriate funds sufficient for the City to meet its obligations hereunder; or (ii) Insolvency, bankruptcy, or receivership of the City.

8.3 <u>Changes to Scope</u>. Notwithstanding anything herein to the contrary, if

a. any applicable law, statute, regulation, ordinance, standard, rule, court order or decree, policy, practice or procedure of any applicable governmental unit, agency or office (including but not limited to the federal, state or local courts, legislative bodies, and agencies, including the City, or their respective officers or agents) is adopted, implemented, amended, or changed, or if
b. any standard of care or treatment protocol changes or evolves in any material respect, or if any new medication or therapy is introduced to treat any illness, disease or condition, or if

c. any of the cost or historical information upon which Corizon based its Proposal, including but not limited to the information provided by the City in the RFP and answers to questions (if applicable), proves to be inaccurate or incomplete or changes in any significant respect, or if

d. any labor activity, including but not limited to unionizing activity, that affects the administrative or clinical staff,

and if such change, as described in either (a), (b), (c), or (d) materially increases the cost of providing healthcare services or impacts the scope of services or staffing hereunder; then Corizon and the City agree to meet to negotiate compensation or service requirement changes. The parties agree to meet and negotiate in good faith within thirty (30) days following the giving of notice by one party to the other party of a change (whether such change is anticipated or implemented). If the parties fail to reach agreement regarding compensation or service requirement changes within the foregoing thirty (30) day period, then either Corizon or the City may terminate this Agreement upon seventy-five (75) days prior written notice.

8.5 <u>Responsibility for Inmate Health Care</u>. Upon termination of this Agreement, total responsibility for providing health care services to all Inmates, including Inmates receiving health care services at facilities off site, will be transferred from Corizon to the City.

8.6 <u>Assignment</u>. The Agreement will not be assignable without prior written consent of both parties. An attempted assignment without such consent shall be void and of no effect.

## ARTICLE IX: COMPENSATION AND INVOICING.

9.1 <u>Contract Pricing and Invoicing</u>. Corizon shall invoice the City monthly for services rendered pursuant to this Agreement as set forth in the pricing schedule included as Appendix B of this Agreement. Corizon will invoice the City the fixed monthly fee at least fifteen days prior to the month of service, with payment due by the City no later than thirty (30) days after invoice receipt. Provider will provide a separate variable monthly invoice no later than the 5th business day following the month of service, with payment of the full invoice amount received by Provider within thirty days of invoice receipt.

9.2 <u>Renewal</u>. Pricing quoted must be firm for one year from the date of this agreement. Corizon must provide notification of any proposed pricing increase ninety days prior to the proposed effective date (end of contract year).

9.3 <u>CPI Index</u>. The fixed and variable per diem will be increased on the effective date and annually thereafter for the remaining contract term and any renewal periods

based on the increase in the Medical Care Component of the Consumer Price Index for the Midwest Region. The period of measurement will be March of the current year.

## ARTICLE X: LIABILITY AND RISK MANAGEMENT.

10.1 Insurance. At all times during the term of this Agreement, Corizon will provide and maintain, at its own expense, the following programs of insurance covering its operations hereunder. Such insurance will be provided by insurer(s) licensed to do business in the State of Missouri and evidence of such programs will be delivered to the City within thirty (30) days of the effective date of this agreement. Such evidence will specifically identify the agreement.

  a. Worker's Compensation Insurance as required by the State of Missouri.
  b. Professional liability in the amount of $1,000,000 per occurrence and $3,000,000 in aggregate, with the City named as additional insured. If "claims made" is provided, continuing liability coverage of at least five (5) years must be in force.
  c. General Liability and Personal Injury Insurance up to $3,000,000 with the City named as additional insured.

10.2 Indemnity.

  a. Corizon hereby indemnifies and holds the City harmless up to the limits of Corizon's applicable insurance policy, from and against any claims against the City proximately caused by negligence in treatment rendered by Corizon personnel; provided, however, that Corizon will not be responsible for any claim arising out of the City or its employees, agents, or contractors: (i) preventing an Inmate from receiving services ordered by Corizon or its agents or contractors; (ii) failing to exercise good judgment in promptly presenting an Inmate to Corizon for service; or (iii) own acts or omissions, including negligence or willful misconduct. the City agrees to notify Corizon's Legal Department in writing within thirty (30) days after the City has received written notice of a claim. Corizon's indemnification and defense obligations hereunder will not apply for expenses incurred or settlements offered or effected, prior to notice to Corizon. Corizon shall have the right to control the defense and/or settlement of the claim.

  b. The City hereby indemnifies and holds Corizon harmless from and against any claims against Corizon arising out of the performance by the City, its employees, agents, officers, or contractors in connection with the City's obligations hereunder or other conduct.

10.3 Limitation of Liability. The parties to this Agreement both acknowledge that Corizon is providing the services contemplated hereunder as a corporation primarily acting as an instrumentality of the City; consequently, any and all statutory,

common law or legislative limitations on the liability of instrumentality's of the City are applicable to Corizon.

## ARTICLE XI: MISCELLANEOUS.

11.1 <u>Independent Contractor Status</u>. The City expressly acknowledges that, other than set forth in Section 10.3, Corizon is an "independent contractor," and nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the City to exercise control or direction over the manner or method by which Corizon or its subcontractors perform hereunder.

11.2 <u>Assignment and Subcontracting</u>. Corizon shall not assign or subcontract this Agreement to any other corporation without the express written consent of the City, which consent shall not be unreasonably withheld. The City and Corizon each binds itself, its successors, assigns and legal representatives to the other party hereto and to the successors, assigns, and legal representatives of such other party in respect to all covenants, agreements and obligations contained herein.

11.3 <u>Ownership of Intellectual Property</u>. The City hereby acknowledges that certain information and documents provided by Corizon and/or used by Corizon in fulfilling its contract obligations are proprietary, confidential, and constitute trade secrets.

The City hereby agrees to keep confidential all Corizon documents designated as confidential. The City further agrees to limit the access to Corizon Confidential or Proprietary information or documentation strictly to employees and representatives (such as attorneys or consultants) who have a need to know the Confidential or Proprietary information and who have been informed of the obligation to keep such information or documents confidential.

The City further agrees that any such information or documentation will not be disclosed to third parties unless Corizon specifically authorizes disclosure in advance, so that Corizon may have the opportunity to intervene to protect its Confidential and Proprietary information from public disclosure.

11.4 <u>Unauthorized alien employees</u>. Corizon, shall, pursuant to the provisions of Sections 285.530 through 285.555 of the Revised Statutes of Missouri 2000, as amended, by sworn affidavit (attached hereto as Exhibit 1) and provision of documentation, affirm its enrollment and participation in a federal work authorization program with respect to the employees working in connection with this Agreement. Corizon shall also sign an affidavit (attached hereto as Exhibit 1) affirming that it does not knowingly employ any person who is an unauthorized alien in connection with this Agreement pursuant to the above-stated Statutes.

11.5 Americans with Disabilities Act. In connection with the furnishing of goods and services under this agreement, Corizon shall comply with all applicable requirements and provisions of the Americans with Disabilities Act.

11.6 Living Wage. This agreement is subject to the St. Louis Living Wage Ordinance 65597.

11.7 Audits. The City of St. Louis and the City's auditors and accountants shall be afforded access, during the term of this agreement, and for five (5) years following termination, to all of Corizon's books and records pertaining to this contract without limitation whatsoever for the purpose of conducting audits. All books and records shall be open to inspection and/or reproduction to the extent necessary to adequately permit evaluation and verification of Corizon's full compliance with the contract documents. In those situations where Corizon's records have been generated from computerized data or records, in addition to hard copy (reports), Corizon shall provide such information on disk or in a suitable alternative electronic format.

11.8 Licenses and Taxes. Corizon shall have and maintain proper licensing, including a Business License issued by the License Collector for the City of St. Louis. Corizon will not be delinquent in any local, state or federal taxes or fees.

11.9 Notice. All notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or mailed certified mail, return receipt requested, postage prepaid on the date posted, and addressed to the appropriate party at the following address or such other address as may be given in writing to the parties:

a. The City:

Division of Corrections
200 S. Tucker
St. Louis, MO 63102
Attention: Dale Glass, Commissioner of Corrections

b. Corizon:

Corizon, LLC
2105 Westpark Drive, Ste 200
Brentwood, TN 37027
Attention: Carla Cesario, Group Vice President

11.10 Governing Law. This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Missouri.

11.11 Entire Agreement. This Agreement, including Appendix A through E and Exhibits 1 and 2, constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modification or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto.

11.12 Waiver of Breach. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

11.13 Force Majeure. Corizon shall not be deemed in violation of this Agreement if it is prevented from performing any of its obligations hereunder for any reason beyond its control, including, without limitation, strikes, labor disputes and shortages, Inmate disturbances, lack of the City's financial or physical resources, acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, or any similar cause beyond the reasonable control of either party.

11.14 Severability. In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

11.15 Forensic Activity Prohibition. Corizon is prohibited from assisting with or providing forensic activities in any manner.

11.16 Inmate Research Prohibition. Corizon is prohibited from participating in or conducting any research projects involving Inmates or detainees without the prior written consent of the St. Louis City Division of Corrections.

11.17 Compliance with Safety and Sanitation Laws. Corizon will abide by all City, State, and Federal laws and all sanitation, safety and fire codes, regulations and other ordinances pertaining to their operations pursuant to Agreement.

11.18 Furnish all Services. During the term of the Agreement, Corizon has full responsibility for the successful performance and completion of all of the services specified. The City will consider Corizon to be the sole point of contact with regard to all contractual matters, including payment of any and all charges for services and deliverables. Corizon understands and agrees that this is a requirements contract and the City will have no obligation to Corizon in providing Corizon's services.

11.20 Performance Requirements. Corizon will abide by the following Performance Requirements contained in APPENDIX E. PERFORMANCE REQUIREMENTS.

    a. Decision-making Authority
    b. Collaborative and Regular Communications
    c. Investigations and Evaluations
    d. Quarterly Meetings
    e. Cooperation with Monitoring
    f. Review of Protocols, Policies and Procedures
    g. Service Level Agreements

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date the last party executes this Agreement.

For the City of St. Louis:

_signature_ 6/17/14

Dale Glass                    Date
Commissioner of
Corrections

For Corizon:

_signature_ 6/6/14

Authorized Officer            Date

Jonathan B. Walker, CDO
Printed Name and Title

_signature_ 7/7/14

Darlene Green                 Date
Comptroller

_signature_ JUL 1 4 2014

Patrie May                    Date
City Register

Approved 6-18-14

BOARD OF ESTIMATE AND APPORTIONMENT
_signature_
                              SECRETARY

APPROVED AS TO LEGAL FORM ONLY:

_signature_ 6/17/14

City Counselor                Date

_signature_ 6/17/14

COMPTROLLER'S OFFICE
DOCUMENT NUMBER 67196

# APPENDIX A: SCOPE OF WORK

## A.  Inmate Health Services

### 1. Receiving Screening[1]

   a. Corizon will perform Receiving Screenings on all new inmates to the CJC intake unit, twenty-four hours per day/seven days per week. These screenings will occur within four hours of the new commitments' arrival.

   b. Receiving Screenings will be conducted by a qualified and licensed medical professional.

   c. The medical professional conducting Receiving Screenings will triage prisoners in order to assure that those with evident and immediate health care needs are screened first, so that referral for acute mental health needs, current medications, and other urgent conditions can be addressed as quickly as possible.

   d. This Receiving Screening will assess an inmate's health status and determine if the inmate can be medically maintained at a City Correctional facility. In general and at a minimum, the Receiving Screening will include:

   (i)   Documentation of current illnesses and health problems, including but not limited to any chronic health conditions, presence of infectious disease, history of mental illness, medications (prescribed and over-the-counter), special health requirements, and vital statistics.

   (ii)  Assessment of and care of maternity needs for pregnant females, if pregnancy is known.

   (iii) A pregnancy test if pregnancy is not known and the female inmate is less than 50 years of age, does not have a history of sterilization (tubal ligation or hysterectomy) and is on or after the due date for menses. In addition, Corizon will conduct a pregnancy test on all women less than 50 years of age who have abdominal pain, regardless of other circumstances, to rule out ectopic pregnancy.

   (iv)  Behavioral observations, including state-of-consciousness, mental status, suicidal ideation and whether the inmate exhibits signs of alcohol or drug abuse or active use.

   (v)   Notations of body deformities, trauma markings, bruises, ease of movement, etc.

   (vi)  Condition of skin and body orifices, including bodily infestations.

   (vii) Questions about whether the inmate has a usual source of healthcare in the community and if so, the name of the provider.

---

[1] "Receiving Screening" is the term used by NCCHC and has historically been referred to as a "Level I Intake" at St. Louis jails.

(viii) Presenting a HIPAA-compliant release of information form for inmate signature, allowing the City to request and obtain medical and/or behavioral health information and to coordinate inmate's care at release with community providers and insurers as necessary. Corizon will submit the form to the City for approval.

e. Corizon will use a standardized medical history form that has been approved by the City to record the information from the Receiving Screening. This medical history form will be included in the health record of the inmate.

f. Based on the screening and assessment, Corizon will make referrals of the inmate for specialty consultations, onsite and offsite follow-up care, and emergency treatment as clinically indicated. Inmates who indicate prescription drug utilization will be referred for an Initial Health Assessment within twenty-four hours.

g. When the Receiving Screening occurs on a Friday evening or the eve of a holiday, immediate health care and prescription drugs needs will be addressed within 24 hours by the physician on call.

## 2. Initial Health Assessment[2]

a. Corizon will perform an Initial Health Assessment as soon as possible but not later than 14 calendar days from commitment to a City correctional facility, to assess medical, behavioral health, and dental conditions and needs.

b. When clinically indicated, the Initial Health Assessment will be completed within 24 hours from inmate arrival to accommodate inmates with significant health condition(s) (i.e. medical, behavioral, infectious disease, pregnancy, oral health) and those on maintenance prescription drug regimens. Determination of significant health condition(s) will be made by a qualified medical professional that is an MD, RN, Physician Assistant (PA), or Nurse Practitioner (NP) and in accordance with policies and procedures developed by Corizon and approved by the City.

c. At a minimum, the Initial Health Assessment will include the following components described below in greater detail and be conducted by the personnel required below.

d. Medical Health Screening and Evaluation

(i) The medical component of the Initial Health Assessments must be conducted by a qualified and licensed medical professional. Per NCCHC requirements, the hands-on portion of the health assessment may be performed by an RN only when the RN completes appropriate training that is approved by the responsible physician. The responsible physician will review and document all physical exam findings performed by an RN and all abnormal and/or significant physical exam findings identified by a PA or NP.

---

[2] "Initial Health Assessment" is the term used by NCCHC and has historically been referred to as "Level II Intake" by St. Louis jails.

(ii) The medical component of the Initial Health Assessment must include:

    a) Review of Receiving Screening results and, for women, pregnancy tests.

    b) Administration of PPD, sexually transmitted disease, and other infectious disease testing procedures as directed by applicable local, state and federal statutes and/or communicable disease programs and/or by NCCHC standards.

    c) A qualified health professional collecting additional data to complete a medical, dental, and mental health history.

    d) Physical examination appropriate to the prisoner's age, and risk factors that that includes a comprehensive health history, evaluation of physiologic and metabolic systems, and medically necessary vital signs and statistics (i.e. height, weight, blood pressure and temperature).

    e) Assessment and treatment of female inmates according to comprehensive and standardized "well woman" gynecological healthcare guidelines. At a minimum, this means inquiry about menstrual cycle and unusual bleeding, contraceptive medications, the presence of an IUD, breast masses and nipple discharge and possible pregnancy, pre-natal and post-natal care and delivery, if applicable.

    f) Laboratory testing as clinically indicated and directed by the physician.

    g) Comprehensive diagnostic testing as clinically indicated.

    h) An initial problem list with a diagnostic and therapeutic plan for each problem.

    i) Immunization as appropriate.

e. Behavioral Health Screening and Evaluation

    (i) The behavioral health component of the Initial Health Assessment must be conducted by a qualified behavioral health professional.

    (ii) The behavioral health component of the Initial Health Assessment will include a structured interview with inquiries into psychiatric history, current status of psychotropic medications and drug use and current mental status, emotional response to incarcerations, and screening for intellectual functioning

    (iii) Prisoners that screen positive for behavioral health problems are referred to behavioral health professionals for further evaluation and treatment. Treatment may include psychiatric evaluation for medication and enrollment in group therapy in topics specific to their issues.

f. Oral Health Screening and Evaluation

     (i) The oral health component of the Initial Health Assessment will be conducted by a dentist or qualified health care professional trained by the dentist.

     (ii) The oral health component of the Initial Health Assessment will include a dental history and the charting of decayed, missing, and filled teeth with subsequent referrals for dental care and services.

### 3. Health Assessment Review.

    a. The onsite staff physician will review all comprehensive Intake Health Assessment findings (including medical, behavioral and oral health findings) within 5 business days of each Initial Health Assessment and direct appropriate disposition and/or care plans.

### 4. Medical Care.

    a. Corizon will accept financial responsibility, subject to the shared risk cap in Appendix B, for the provision of all onsite fixed and mobile healthcare services and all offsite outpatient and ancillary healthcare services provided to all inmates. Special financial arrangements for mandatory services provided to federal inmates or inmates of other jurisdictions may be required from time to time.

    b. Onsite Primary Care. Corizon will provide all services, subject to the shared risk cap in Appendix B,, including all physician services, routine, urgent and emergent care, ambulatory care, laboratory, radiographic, diagnostic, as well as the following specific services:

     (i) Dietary evaluation and management.

     (ii) Health education.

     (iii) Personal hygiene counseling and education.

     (iv) Detoxification and withdrawal: Corizon will provide all medical detoxification services required to treat chemically dependent inmates and those who are acutely intoxicated. Corizon will adhere to the guidelines of the American Society for Addictions Medicine (ASAM) to determine whether detoxification services will be administered at either facility or other offsite healthcare facilities. Corizon may use information and observations provided by custody staff about inmates undergoing detoxification, but Corizon must render and act on its own independent clinical judgment.

     (v) Health evaluation of inmates in segregation.

     (vi) Communicable disease treatment and isolation.

     (vii) Special needs treatment planning, including chronic care clinics and use of restraints. Corizon will develop policies and procedures for its chronic care clinics, including identification of clinics to be established and managed and submit to the City for prior approval. Corizon will provide

clinical management of chronic diseases that complies with the following nationally accepted guidelines:

  a) Asthma: National Heart Lung and Blood Institute Guidelines for Diagnosis and Management of Asthma.

  b) Type II Diabetes: American Diabetes Association Clinical Practice Recommendations.

  c) Hypertension: National Heart Lung and Blood Institute Guidelines for Prevention, Evaluation, and Treatment of High Blood Pressure.

(viii) All ambulatory care, including professional services and infirmary care. Corizon will use policies to guide admission to and discharge from infirmary care.

(ix) All onsite provider services.

(x) Corizon will communicate treatment options and treatment steps that will be taken with the inmate both verbally and, if requested, in writing.

c. Offsite Care.

  (i) Corizon will be responsible for paying for and coordinating all offsite physician (primary, specialty, sub-specialty) and medical professional services, subject to the shared risk cap in Appendix B,. This will include:

    a) All offsite testing, laboratory, diagnostic procedures, and supporting examinations.

    b) All necessary offsite follow-up medical needs for health problems (including mental health) identified by any of the assessments, screening tests, or laboratory tests.

    c) Prenatal appointments and other services to pregnant inmates.

  (ii) Outpatient hospital care, excluding all newborn care, inclusive of all institutional charges, physician charges and any and all related charges.

  (iii) Corizon will develop and maintain a provider network that assures prisoner access to all necessary off-site medical care. Corizon will have discretion in the selection of hospitals and other providers used to provide services for this agreement, so long as their use does not impose undue transport and guarding cost upon the City. Corizon must obtain approval of these selections and any changes during the course of the contract from the Commissioner of Corrections or designee, which will not be unreasonably withheld.

  (iv) At the City's request, Corizon will provide the City with copies of any contracts, including all payment terms, it executes with off-site facilities and providers.

  (v) Corizon will adjudicate and pay all "clean" off-site claims within 30 days of receipt.

5. **Women's Health Services.**

   a. Corizon will perform a pregnancy test during Receiving Screening and comply with the Initial Health Assessment requirements as described herein. Corizon will be responsible for all prenatal appointments and other services to pregnant inmates, whether provided onsite or offsite.

   b. Corizon will ensure all female inmates receive comprehensive and standardized "well woman" gynecological healthcare services according to clinical guidelines.

6. **Behavioral Health Services.**

   a. Corizon will provide all onsite and offsite psychiatric and psychological health services, including follow-up referrals, subject to the shared risk cap in Appendix B,. Corizon is responsible for offsite psychiatric and psychological services.

   b. In treating inmates with Severe Mental Illness Corizon will use evidence based practices that include assessment of symptom severity, prescription of the appropriate medications that is adequate in both dosage and duration, education on mental illnesses and the importance of medication adherence, and appropriate discharge planning to ensure continuity of care when released from jail.

   c. Corizon will ensure that the on-call physician and nurse on shift have the ability to access the services of behavioral health staff as necessary twenty-four hours per day seven days per week.

   d. Corizon will provide screening, response, medical and mental health treatment to victims of sexual assault in compliance with Prison Rape Elimination Act Community Confinement Standards, Final Rule May 2012[3].

   e. Corizon will provide daily visits from Mental Health Professionals to all individuals who are going through detoxification, enroll individuals in a Substance Use Disorder group upon completion of detoxification, and complete referrals to the appropriate community resources for individuals upon release.

   f. Corizon will provide group treatment and other peer treatment services in accordance with nationally-recognized best practices.

   g. Corizon will have treatments and programs in place for individuals who have a serious mental illness, (defined as one that results in serious functional impairment, which substantially interferes with or limits one or more major life activities). These programs will be developed and managed in accordance with nationally recognized standards. Corizon will submit the policies and procedures for these programs to the City for prior approval.

---

[3] http://www.prearesourcecenter.org/sites/default/files/library/preafinalstandardstype-communityconfinement.pdf

h. Corizon will provide behavioral crisis treatment throughout the facilities, not just in the infirmary or clinic.

i. Corizon will typically re-assess all inmates placed on suicide watch within thirty-six hours. If the thirty-six hour period ends during non-business hours, the re-assessment will occur within the first four hours of the next business day. If no improvement in the inmate's condition occurs after three days, staff will meet with a clinical supervisor and determine the appropriate intervention. Evaluation of suicide watch data will be a routine agenda item for the Quality Improvement Committee.

j. Corizon will collaborate with the St. Louis City Division of Corrections in programs designed to prevent suicide attempts. At a minimum, Corizon will conduct suicide prevention intervention and training for medical, mental health and correctional officer staffs at the facilities. In addition, Corizon will engage in on-going consultative assistance and cooperation to improve program effectiveness.

7. **Oral Health Services.** Corizon will provide oral health services under the supervision of a dentist licensed in the state of Missouri. Oral Health services will include but not be limited to extractions, temporary fillings, treatment of infections, relief of pain, treatment to ensure inmate ability to masticate food and other clinically indicated treatment, and immediate access for urgent or painful conditions. Corizon will provide instruction in oral hygiene and preventive oral health education within one month of admission. Corizon will conduct an oral health examination on all inmates housed longer than one year. Corizon will include dental conditions and treatments in the dental record which will be maintained as part of the medical record of the inmate.

8. **Ambulance and Transportation Services.** Corizon will utilize emergency and non-emergency ambulance service when transportation to offsite providers requires ambulance service. Corizon is not responsible for the cost of emergency transportation services. The City of St. Louis (Police and Sheriff Departments, the City Marshal, and/or St. Louis City Division of Corrections staff) will provide timely routine transportation to offsite health care providers for St. Louis City inmates at no cost to Corizon.

9. **Sick Call.**

a. Corizon will conduct physician sick call at least five days per week, excluding holidays recognized by the City of St. Louis. Corizon will establish a twenty-four hour/seven day per week nurse triage system to accommodate inmate sick call requests; this triage system must include inmates in temporary housing to ensure access to medical personnel while in temporary housing.

b. The triage system will operate under protocols approved by the Medical Director and must clearly define routine, urgent, and emergent referral definitions as well as NCCHC based referral timeframes. The protocols will include the provision of information, status, and results to inmates submitting medical service requests.

c. Corizon will conduct nurse sick call and physical and behavioral assessments in facility locations that are not designated as free-movement housing areas. Physician sick call and ancillary services (i.e. x-rays) will be conducted in the medical unit. Inmates housed in facility locations designated as free movement housing units will be escorted to the medical unit for services.

d. Corizon will examine and treat any inmate in segregation or who are otherwise unable to attend sick-call in a clinically appropriate designated area within the segregation area. Corizon will render emergency care at any location within the Correctional facilities.

10.      **Medical Clearances for Inmate Work.** Corizon will coordinate with inmate work programs to provide medical clearances for inmate workers within seven business days of request.

11. **Medical Clearance for Court Appearance.** Corizon will perform medical reviews and clearances for St. Louis City Division of Corrections inmates who are referred by Court Order or other directives to Correctional facilities or jails other than St. Louis City Division of Corrections facilities.

12. **Individualized Hepatitis A Vaccines.** Corizon will supply and administer Hepatitis A vaccinations per fiscal year to all Food Service Workers (Inmate and Civilian) working in St. Louis City Division of Corrections facilities as required by City of St. Louis Ordinance. Hepatitis A vaccine sera will be billed the City as other pharmaceuticals.

13.      **Treatment Plans.** For inmates with special medical, behavioral or dental conditions or needs requiring close medical or behavioral supervision including chronic and convalescent care, the responsible physician will develop a written individualized treatment plan. The treatment plan will include directions to health care and other personnel regarding their roles in the care and supervision of the inmate. The treatment plans will follow evidence-based clinical treatment protocols for management of conditions (i.e. asthma, diabetes, severe mental illness, and infectious diseases) and will conform to community standards and evidence-based practices. The treatment plan will be updated at each clinical encounter. Treatment plans for chronic conditions must be reviewed at least every 90 days.

14.      **Medical Records.**

a. Corizon will maintain a comprehensive, accurate, and integrated medical health, behavioral health and dental medical record for every MSI and CJC inmate consistent with applicable law and based on the Problem Oriented Medical Record approach to documentation

b. All paper medical, dental and mental health records will be maintained at the facilities and will remain the property of the City. The records will be maintained separately from an inmate's legal/confinement record.

c. Corizon will give the City access to all medical records immediately upon request of the City.

d. If either the City or Corizon engages with the State of Missouri's Medicaid Electronic Health Record Incentive program, Corizon will require eligible clinicians to comply with and meet Meaningful Use Requirements and the City and Corizon will agree in writing as to the disposition of incentive payments paid to clinicians.

e. Corizon will update the inmate's medical record at the point of service, and will forward a summary of the record to the appropriate facility in the event of an inmate's transfer. Upon transfer, the medical record will include a Medical Flow Sheet or other transfer of medical information sheet.

f. Corizon will ensure that the inmate's Medical Record is transferred to the other City facility at the time of transfer of the inmate but not more than four hours later than said transfer.

g. Corizon must take all necessary precautions to ensure medical records and information remains privileged and confidential. These precautions must include but not be limited to keeping them locked and secured from routine traffic.

h. Corizon will adhere to and comply with all protections outlined in the Health Insurance Portability and Accountability Act.

i. Corizon will ensure that its staff documents all healthcare contacts in the inmate healthcare record in the problem-oriented medical record format (Subjective, Observation, Assessment, Plan (SOAP)).

j. Corizon will retain medical records for a minimum of ten years, or as long as legally required, so long as Corizon is the medical contractor..

15. **Dietary Plan.** Corizon will develop a physician-ordered special diet plan for any inmate required to be on special or dental diets. Corizon will review these diets at least quarterly for nutritional adequacy. Corizon will coordinate with the on-site dietary provider for these services if available.

16. **Key and Tool Control.** Corizon must assure that all keys and tools that could pose a danger in the hands of prisoners are accounted for at every provider shift change. Corizon must submit a list of items and a key and tool control policy for approval by the City.

17. **Supplies and Durable Medical Equipment.** Corizon will be responsible for the purchase of and maintenance of all necessary medical supplies and durable medical equipment necessary to meet its obligations contained in this contract. Corizon will provide all durable medical equipment needed by inmates including but not limited to crutches, wheelchairs, and oxygen.

18. **Biomedical Waste Disposal.** Corizon will be responsible for disposal of Infectious Waste and all other biomedical waste in accordance with Missouri State and Federal Law.

19.      Payment for Health Services

a. Corizon will cooperate and comply with the St. Louis City Division of Corrections Policy and Procedures regarding the reporting and assessment of inmate copayments for medical services.

### 20. Utilization Management

a. On-Site Services:

   (i) Corizon will utilize scheduling processes that minimize multiple provider appointments that could be managed in a single visit, minimize duplicate visits, and coordinate visits for health, behavioral health, and/or dental visits to minimize prisoner movement.

   (ii) Corizon will work with the City to optimize provider productivity by recommending, piloting, and implementing changes to health care service operations to assure that providers are optimally engaged in patient care and optimally performing duties for which they are licensed.

b. Off-Site Services. Corizon will assure that off-site services are rendered when clinically appropriate through the use of appropriate utilization management decision tools and protocols.

### 21. Discharge Planning/Comprehensive Care Transitions.

a. Corizon will work with the City to identify prisoners with significant discharge planning needs, and to develop practices that provide discharge planning prior to release.

b. Corizon will conduct discharge planning for inmates who have significant medical or behavioral health issues identified in the Initial Health Assessment and who move between correctional facilities (including but not limited to City and County correctional facilities) or are released from the facility and into the community.

c. Discharge planning may include coordination with community providers that constitutes a "warm hand-off," a scheduled appointment and transportation arrangements, and/or a supply of medications not to exceed seven days.

d. Upon written authorization of an inmate, Corizon will release medical record information to a specific, designated provider in the community and will include information on date of release or dates of other court appearances.

e. As the State implements the federal Affordable Care Act and other health reform activities, including possible expansion of public programs, Corizon will collaborate with the City and other City officials to support transitions into health insurance and health care and to facilitate determination of eligibility and possible enrollment into new health insurance options.

## B. Prescription Drugs

1. Corizon will deliver a total pharmaceutical system for MSI and CJC commitments and inmates. This system will include physician prescription and management

activities, administration of prescription medication, provision of over-the-counter medications, and necessary record keeping and will operate in compliance with all applicable state and federal regulation and law.

2. Corizon will provide all keep on person (KOP) medications in unit dose form (blister pack). The City and Corizon will agree upon a list of medications to be routinely provided as KOP. At a minimum, all prescription antibiotics will be provided as KOP unless the inmate is unable to assume responsibility for self-management.

3. Because of the significant turn-over of jailed prisoners, Corizon may provide most medications as stock. Stock medication must be in blister packs, clearly labeled, and packaged to allow for return for credit where appropriate.

4. All prescription medications will be administered by a licensed healthcare professional in accordance with sound medical practice and at the direction of the treating physician.

5. All controlled substances, syringes, needles and surgical instruments will be securely stored in compliance with the City's facility regulations, DEA regulations, Occupational Safety and Health Administration regulations, and NCCHC standards.

6. Corizon will fill and deliver original prescriptions and prescription refills within twenty-four hours of order unless clinically indicated otherwise. Corizon will contract with a local pharmacy to assure twenty-four-hour delivery on weekends and holidays.

7. Where Corizon can coordinate with community providers, it will permit inmates with a documented, active psychotropic medication prescription who have been compliant with that medication immediately prior to entering the facility, be allowed to have those medications continued regardless of their formulary status, and provided that the medication is not used primarily as an aid for sleep. Corizon will strive to match, as closely as possible, the psychotropic drug formulary used by the community mental health system.

8. Corizon will develop and maintain a medication compliance program at both jail facilities aimed at identifying noncompliant inmates in a manner that allows for timely intervention by the medical or behavioral health staff. The list of medications falling under this provision will be agreed to by the City and Corizon. This program will be reviewed regularly by the Continuous Quality Improvement Committee.

9. Corizon will assure that a registered pharmacist conducts semi-annual audits of the prescription drug practices at both jails, to determine compliance with applicable federal and state laws and regulations and to recommend improvements to accurate, timely and efficient drug delivery, safeguarding, and distribution.

## Services to Non-Inmates

1. **Screening Staff.** Corizon will screen all healthcare staff for illegal drugs, and offer Hepatitis B immunizations and PPD testing at the time of commencement of employment. Corizon will be responsible for these costs.

2. **Emergency Medical Treatment for Non-Inmates.** Corizon will provide emergency medical treatment for visitors, vendors (including health care provider employees) and employees of the St. Louis Division of Corrections at the correctional facilities who are injured or become ill while working within the facilities. Follow-up care will be the responsibility of the visitor, vendor or employee (except as provided by the City's Worker's Compensation Program for City staff).

## C.   *Training of Non-Provider Staff*

1. Corizon will provide appropriate in-service training for selected Division of Corrections staff during the first ninety days of this agreement. The topics and schedule will be developed following Agreement signing but will include, at a minimum, suicide prevention activities, education on behavioral health disorders and resulting behaviors, de-escalation techniques, sick call requests protocols, and addressing clinical emergencies.

2. Corizon will provide training to selected Division of Corrections staff at least every six months. Rotating topics must include, at a minimum:

   a. Techniques to physically subdue/restrain a prisoner with acute mental distress

   b. Recognizing and diffusing behavioral health problems

   c. Suicide prevention and interventions, including mock drills practice sessions

   d. Infectious disease and universal precautions

## D.   *Continuous Quality Improvement (CQI) and Accreditation*

### 1. CQI Committee.

   a. Corizon will develop and maintain a Continuous Quality Improvement (CQI) Committee. The Committee will include, at a minimum, the Health Services Administrator, the Director of Nursing, at least one behavioral health staff member and the Medical Director.

   b. The Committee's objective will be to ensure that high quality cost-effective health care commensurate with community standards is available to all inmates and that clinical and behavioral protocols are adopted and followed.

   c. The committee will be responsible for developing and implementing programs and strategies that aim to improve quality of care, enhance health care and behavioral health care operations, and assure responsible management of offsite services.

   d. The committee will meet on a monthly basis.

e. A standing agenda item will be the review of inmates on suicide watch.

2. **Additional Quality Improvement Activities.** Corizon will participate in and be involved with other quality improvement and coordination initiatives at the request of the City. These initiatives may include, collaborative efforts with the medical care provider for the St. Louis County jail, the City and County Departments of Health, and the judicial systems including any mental health or drug courts.

3. **Peer Review.** Corizon will conduct medical peer review activities that comply with NCCHC standards. In addition, Corizon will fully cooperate with peer review conducted by an external physician at the City's request.

4. **MIS Data and Usage.** Corizon will utilize its management information system for data collection, analysis, and trending of medical service utilization. One output will be a monthly summary report of onsite and offsite medical service utilization and other data as determined by the Division of Corrections. This report will be submitted by the 10th of each month for the preceding month to the Division of Corrections Contract Monitor. Corizon will maintain a current and comprehensive accounting of inmates requiring chronic medical and mental health care and inmates on medications by facility location.

5. **Policies and Procedures.** Corizon will develop site-specific Medical, Behavioral and Dental Policies, Procedures and Protocols that comply with National Commission on Correctional Health Care (NCCHC) standards. At a minimum Corizon will evaluate and revise health care site-specific policies and procedures on an annual basis, and as needed or required by the City. The City will review and approve all policies and procedures related to this agreement.

6. **National Commission on Correctional Health Care Accreditation**

   a. The City's jails were both accredited by the National Commission on Correctional Health Care (NCCHC) subsequent to site visits in October 2011. Corizon will maintain NCCHC accreditation for both City of St. Louis Division of Corrections facilities throughout the contract period. This will require submission of Annual Maintenance Reports (AMRs) and accreditation site visits before October 2014. The City must review and approve AMRs before submittal. Corizon will incur all costs associated with achieving and maintaining NCCHC accreditation over all contract term periods.

   b. Corizon will develop the timeframe and action plan for all NCCHC accreditation compliance activities. Corizon will submit this timeframe and action plan to the City.

   c. To the extent required to achieve NCCHC Accreditation, Corizon will provide all health care services in compliance with the 2008 or most recent Standards for Health Services in Jails, established by the National Commission on Correctional Health Care (NCCHC).

   d. Failure to obtain such accreditation within the specifications of the Agreement will result in Corizon being considered in breach of contract, and subject to a

penalty of $100,000 per facility, unless the failure is due to circumstances outside the control of Corizon, including physical plant limitations or the City's inability to meet its obligations as defined by NCCHC standards. The penalty will be assessed on the date on which NCCHC deems that the facility loses accreditation status.

## E. *Communications and Community Planning and Supports*

1. **Collaborative and Regular Communications.** Corizon will maintain regular, collaborative communications with St. Louis City Division of Corrections and will actively cooperate in all matters pertaining to services provided under this agreement.

2. **Division of Corrections Primary Contact.** Corizon will communicate regularly with the Division of Corrections designated employee(s) that serves as the contract monitor for the St. Louis City Division of Corrections.

3. **Consultation Support to St. Louis City Division of Corrections.** Corizon will consult with the St. Louis City Division of Corrections on any and all aspects of the healthcare delivery system at both facilities including evaluations and recommendations concerning new programs, architectural plans, staffing patterns for new facilities, alternative healthcare strategies, and on any other matter relating to the provision of correctional healthcare services where the City seeks the advice and counsel of Corizon.

4. **Collaboration with Key Community Partners.** Corizon will develop collaborative relationships with St. Louis County Division of Corrections, its health care provider, the City and County Health Departments, community mental health providers, local judicial officials, and hospitals to identify opportunities for collaboration, protocol development and management, and peer review activities that support the objectives of this agreement. Corizon will regularly report on these relationships and subsequent activities and projects to the City's Director of Public Safety. Opportunities to be addressed during this contract may include but are not limited to:

   a. Uniform practices to:

      (i) Screen female prisoners for pregnancy and all prisoners for infectious disease

      (ii) Assure continuous treatment across jails and post-release for prisoners under treatment for infectious disease

   b. Community policies to:

      (i) Divert persons with serious mental illness from the jails where appropriate

      (ii) Assure that inmates with serious mental illness are maintained on appropriate psychotropic medication regimens across community settings

5. **Discussions with Local Civic Groups and Visiting Officials.** Corizon will represent the healthcare unit in discussions with local civic groups or visiting officials as mutually agreed upon by the parties when requested by the St. Louis City Division of Corrections.

6. **Health Reform Changes.** As the State implements the federal Affordable Care Act and other health reform activities, including possible expansion of public programs, Corizon will collaborate with the City and other City officials to support transitions into health insurance and health care and to facilitate determination of eligibility and possible enrollment into new health insurance options.

## F. Staffing Requirements

### 1. General.

a. Corizon will recruit, interview, hire, train and supervise all health care staff to meet all conditions and specifications contained in this Agreement.

b. Corizon will remove a staff member from his/her role in providing services in the City facilities immediately upon request from the City.

c. Corizon will recruit and employ or contract only licensed and qualified personnel. Corizon will interview each candidate for employment or contract with special focus on technical expertise, emotional stability and motivation.

d. Corizon will conduct criminal background checks on all employees as a prerequisite for initial and/or continued employment.

e. Corizon will ensure that all personnel comply with current and future State, Federal, and Local laws and regulations, administrative directives, and policies and procedures of the St. Louis Division of Corrections.

f. The Commissioner of Corrections or designee will review completed applications, background checks, and related credentials prior to Corizon extending an offer for employment and will have final approval on healthcare staff.

g. Corizon will ensure that all medical staff providing services under this contract are licensed to practice in the State of Missouri and that the license is current, in "good standing," and that the healthcare provider is otherwise unimpaired.

### 2. Training and Support

a. Corizon will ensure that all newly-hired employees, regardless of position, are provided with appropriate orientation within one week of start date. The provision applies to all employees including contract, temporary and full-time.

b. Corizon will coordinate with the St. Louis City Division of Corrections to ensure they provide facility operations and security matters orientation within one week of start date of a new employee. Corizon will not provide this training and orientation. The provision applies to all employees including contract, temporary and full-time.

c. Corizon will deliver appropriate in-service training and scheduled continuing educational programs to healthcare staff throughout the contract period. All healthcare staff will receive monthly in-service training. Selected training topics and programs will be identified on an ongoing basis through the Continuous Quality Improvement Committee, contract auditing and compliance processes, or as identified by the Department of Corrections. Corizon will conduct in-service training for medical and behavioral health care staff during the first sixty days of this Agreement. The schedule and approach to training and education programs will be submitted to the City for review and approval but will include, at a minimum:

   (i)    Suicide Prevention

   (ii)   Recognizing the Signs of Mental Illness

   (iii)  Medication Ordering and Administration

   (iv)  Managing Off-site Referrals

   (v)   Intake Medical and Mental Health Screening

   (vi)  Managing Inmate Sick-Call Requests

   (vii)  Effective Infection Control Procedures

   (viii) Transition Planning and Processes

   (ix)  Corizon will develop additional training sessions as new processes with courts, local public health, state insurance programs, and the state Health Benefit Exchange develop throughout the contract.

d. Corizon will provide for and pay for online medical resources and guides to support the medical, behavioral and dental staff in providing appropriate healthcare according to the most recent protocols. At a minimum, this requires subscription to "Up To Date" or a comparable medical resource.

## 3. Staff Management.

a. Corizon will maintain personnel files in the healthcare unit for all healthcare personnel. Corizon will make these files available to St. Louis Division of Corrections upon reasonable request and within three business days of request. These files will include professional licensure, relevant medical education and training, all in-service training sessions attended and other pertinent education programs.

b. All personnel hired by Corizon will be on Corizon's payroll, and Corizon will pay all wages, fringe benefits, payroll taxes and any other employee- related costs. The City understands and agrees to independent contracting of or delegation of personnel that might be necessary in order for Corizon to discharge its obligations under this Agreement. As the relationship between Corizon and these health care professionals will be that of independent contractor, Corizon will not be considered or deemed to be engaged in the practice of medicine. However, this does not relieve Corizon from monitoring

its subcontractors' performance related to professional conduct, and ensuring compliance with this Agreement.

c. Corizon will distribute to each staff member a written job description that defines the specific duties and clearly delineates assigned responsibilities. Corizon will submit these job descriptions to the St. Louis Division of Corrections upon execution of a contract. Job descriptions will be approved by St. Louis City Division of Corrections and will be reviewed at least annually and updated as needed.

d. Corizon will provide St. Louis City Division of Corrections a list of employees, the positions they hold, and the number of hours worked each week on a monthly basis.

e. Corizon will comply with all Federal, State, and Local laws and standards pertaining to:

   (i)     Recruitment practices

   (ii)    Equal employment opportunities

   (iii)   License/certification requirements

   (iv)    Staff training and personnel development

   (v)     Continuing education

   (vi)    Performance review

   (vii)   St. Louis City Ordinances and Division of Corrections Policies

f. Corizon will adhere to the staffing schedule agreed upon in the contract.

g. Corizon will monitor the performance of healthcare staff to ensure adequate job performance in accordance with job descriptions and the terms of this Agreement. Corizon will conduct all disciplinary actions against employees and document all activities related to disciplinary actions in each employee's file.

## 4. Staffing Model.

a. Corizon will provide staffing that delivers the required levels of service and enables licensed professionals to practice at the fullest scope allowed under Missouri regulations. Corizon may use para-professional and support staff to maximize the efficiency of health care operations. In addition, Corizon will propose and, where agreed to by the City, implement staffing efficiencies throughout the course of the contract, particularly where recruitment and retention challenges develop. The following staffing requirements are considered minimal.

b. Administration and Management

   (i)     Corizon will have a full-time Health Services Administrator who will oversee and manage healthcare operations of the St. Louis City

Division of Corrections facilities. The Health Services Administrator must have previous experience in a correctional health care facility environment unless otherwise approved by the Commissioner of Corrections or designee.

(ii) Corizon will have a Director of Nursing appointed to the MSI and one appointed to the CJC. These individuals will provide general oversight and management for healthcare operations at that facility and will coordinate and collaborate with one another to ensure similar approaches and policies are followed in both facilities. The Director(s) of Nursing must have previous experience in a correctional health care facility environment unless otherwise approved by the Commissioner of Corrections or designee.

(iii) Corizon will assign the duties described herein for collaboration with key partners to a specific individual who is approved by the City. The individual may be the HSA, a clinician, or another party with appropriate skills and knowledge.

c. Medical Care Personnel Requirements. In accordance with NCCHC standards, Corizon will engage physicians and/or mid-level providers, in accordance with state law, to provide a minimum of 80 hours per week of clinical services. A supervising physician must be available where mid-level providers are employed as required by the State of Missouri Licensing Board.

d. Corizon must establish collaboration agreements for all mid-level providers and must provide supervision, consultation and work review for each mid-level provider and each limited license provider as required by the State of Missouri Licensing Board.

(i) Corizon must provide onsite supervision for mid-level providers as required by the State of Missouri Licensing Board

(ii) Corizon must further supervise mid-level providers through chart review as required by the State of Missouri Licensing Board. The chart reviews must be documented in the prisoner medical record as appropriate and a report must be provided to the City.

(iii) Corizon will employ a single Medical Director who will oversee and manage clinical quality for all matters related to inmate healthcare. Such clinical oversight must recognize and adhere to accepted community standards. This function includes oversight of inmate sick call, all health care related assessments and screenings, onsite and offsite referrals, prescription drug needs, clinical mental health issues, mandatory supervision of mid-level providers in accordance with state law, collaboration with behavioral health providers, coordination with community providers for off-site care and for aftercare, and all other matters related to maintaining and improving delivery of health care to CJC and MSI inmates.

(iv) Corizon will ensure that at a minimum one covering physician is available or on call seven days per week, twenty-four hours per day as mandated by community standards.

(v) Corizon will employ a half-time practitioner with at least three years of experience with women's health and prenatal care services, to serve the women at both facilities. This person must provide appropriate on-site prenatal services, supported by phone and e-consultation with an obstetrician. This person may be a family physician, Advanced Practice Nurse, or Physician Assistant.

(vi) Corizon will require that its physicians attempt to secure admission privileges at a local hospital, preferably with contracted hospitals.

(vii) Corizon will provide qualified nursing staff at the City's Corrections Facilities so that appropriate medical care is delivered on a twenty-four hour seven-day per week basis. This means that at least one Registered Nurse will be working on each shift twenty-four hours per day/seven days per week at each of the locations. A Registered Nurse will be responsible for supervision of other RNs, LPNs, and non-licensed health care staff. , mid-level nurses. Nurse staffing must also be sufficient to assure that:

a) Receiving Screening is carried out within four hours of lock up

b) Inmate requests for health care services are triaged from all locations, including CJC holding area, with 24 hours

c) Prescription drugs and other medications are administered on time and correctly

d) Appropriate and timely medical detox services are provided

e) Patient education and medical discharge planning are conducted appropriately

e. Behavioral Health Staffing Requirements.

(i) Corizon will provide appropriate mental health staff to assure that appropriate behavioral health services are delivered at each location.

(ii) Staff will include a full-time, senior mental health professional who, in addition to providing care, will have the responsibility for:

a) Supervision of Behavioral Health staff and services at both facilities (at least weekly at each site)

b) Conducting peer review activities

c) Review of individuals on suicide watch

d) Collection of data on Behavioral Health services

e) Developing relationships with community mental health providers

(iii) At a minimum, services must include:

a) Mental health assessment and evaluation at intake, health assessment, and in segregation

b) Crisis intervention

c) Suicide evaluation

d) Medication administration and management

e) Group treatment

f) Discharge and aftercare planning

g) On-call services during nights and weekends for suicide attempts, behavioral health assessments identified during Receiving Screening, and psychiatric medication emergencies. This service will include traveling to the facility if necessary

h) Psychiatric evaluation in the housing units where clinically appropriate

i) Collaboration with medical staff on integrated plan of care

f. Oral Health Staffing. Corizon will provide appropriate dental staff to assure that oral health screening and medically necessary dental services are provided to prisoners at both facilities. At a minimum, this will include a dentist and dental assistant performing duties that comply with the State of Missouri Licensing Board.

g. Ancillary Staff and Clinical Team Members

(i) Corizon will provide appropriate staff to carry out medical record functions.

(ii) Corizon will provide appropriate staff to carry out functions related to prescription drug procurement, safeguarding and distribution.

(iii) Efficient teams that provide support to clinicians and minimize clinician time spent on administrative tasks are strongly encouraged. Corizon should exercise flexibility and creativity in staffing areas and shifts in order to assure the most favorable response and prompt delivery of quality, gender-specific prisoner medical services to meet the needs of the City. Corizon is encouraged to engage psychiatric nurses, certified nursing assistants, secretaries, pharmacy technicians, schedulers, medical assistants, medical record technicians, and/or other appropriately trained ancillary personnel to assure efficient and timely delivery of medical, nursing, behavioral health, and dental services.

# APPENDIX B: CONTRACT PRICING

RATE SCHEDULE

|  | ANNUAL BASE | MONTHLY PAYMENT |
|---|---|---|
| CJC | $4,032,480.00 | $336,040.00 |
| MSI | $3,342,467.04 | $278,538.92 |
| TOTAL | $7,374,947.04 | $614,578.92 |

VARIABLE PER DIEM          $2.30

The City shall be billed $2.30 per Inmate per day for population in excess 1,600 Inmates for the combined population at CJC and MSI. The City shall receive a credit of $2.30 per Inmate per day for population below 1,600 Inmates for the combined population at CJC and MSI. The City will provide Inmate counts for each Facility to Corizon no later than three business days following the month of service.

## AGGREGATE CAP FOR OFFSITE SERVICES

Corizon will be responsible for payment of all contracted services up to an annual aggregate total of $750,000. Should the amount incurred be less than $750,000, Corizon will refund the City an amount equal to $750,000 less the cost of contracted services. Should the amount incurred be in excess of $750,000 the following risk sharing formula will be utilized:

First $250,000 above $750,000:   35% Corizon/65% Division of Corrections

All amounts above $250,000:      10% Corizon/90% Division of Corrections

The following costs are considered contracted medical costs and will be included in the annual aggregate cap calculations:

     Inpatient Hospitalization
     Outpatient Services
     Laboratory Services
     Radiology Services (including mobile x-ray services provided on-site)
     Emergency room Services
     Specialty Care
     Prosthetic Devices
     Medical Treatment of Hepatitis C
     Medications for Factors VIII & IX for the treatment of bleeding disorders

Corizon will supply a comprehensive accounting of all contracted medical services to the Division of Corrections on a monthly basis, with quarterly reconciliations and billings/credits to the City based upon the trend of actual and anticipated costs. In the

event any contract term is less than a full year, the risk sharing limits will be prorated based upon the actual months of service provided.

Within 120 days after the end of the first year of the contract and every year thereafter Corizon will make a payment to the Division of Corrections for any amounts owed to the City of St. Louis if the total cost of contracted medical services is less than the aggregate cap and the City of St. Louis will make a payment to Corizon for any amounts owed to Corizon for total contracted medical costs exceeding the aggregate cap.

Because contracted medical costs may be received after annual settlement payments have been made, any payments for contracted medical costs after annual settlement payments have been made will be added to the aggregate total of contracted medical costs for the subsequent year (even though the service period was during the previous year). In the event significant additional payments are made causing a change in the previous settlement split, Corizon and the City will equitably adjust such settlement.

# APPENDIX C: STAFFING PLAN

| CITY JUSTICE CENTER | | | | |
|---|---|---|---|---|
| POSITION NAME | LICENSURE OR CREDENTIALS | #FTEs | Total Hours / Week | Supervised By |
| *DAY SHIFT* | | | | |
| Medical Director | MD Board Eligible Preferred | 1.00 | 40 | RMD / Administrator |
| Administrator | BSN / Licensed RN | 1.00 | 40 | Regional VP |
| Director of Nursing | Licensed RN | 1.00 | 40 | Administrator |
| RN | Licensed RN | 1.80 | 72 | DON |
| LPN | Licensed Practical Nurse | 8.20 | 328 | DON / RN |
| Medical Assistant | AAMA Certification | 1.00 | 40 | DON / RN |
| Pharmacy Tech | High School Diploma / GED | 1.00 | 40 | DON |
| Administrative Assistant | High School Diploma / GED | 1.00 | 40 | Administrator |
| Discharge Planner | BA Social Work /Related | 1.00 | 40 | Administrator |
| Medical Records Clerk | High School Diploma | 4.40 | 176 | Administrator |
| Dentist | DMD / DDS / Licensed | 0.20 | 8 | MD / Administrator |
| Dental Assistant | Licensed Dental Asst | 0.20 | 8 | Dentist |
| Psychiatrist | MD Psychiatry | 0.50 | 20 | MD / Administrator |
| MH Director | MA Social Work | 1.00 | 40 | Administrator |
| MH Professional | MA Social Work | 2.00 | 80 | MH Director |
| **Day Shift Total** | | **25.30** | **1012** | |
| | | | | |
| *EVENING SHIFT* | | | | |
| RN | Licensed RN | 1.80 | 72 | DON |
| LPN | Licensed Practical Nurse | 6.60 | 264 | DON / RN |
| **Evening Shift Total** | | **8.40** | **336** | |
| | | | | |
| *NIGHT SHIFT* | | | | |
| RN | Licensed RN | 1.40 | 56 | DON |
| LPN | Licensed Practical Nurse | 4.20 | 168 | DON / RN |
| **Night Shift Total** | | **5.60** | **224** | |
| | | | | |
| **Grand Total** | | **39.30** | **1,572** | |

| POSITION NAME | LICENSURE OR CREDENTIALS | #FTEs | Total Hours / Week | Supervised By |
|---|---|---|---|---|
| **DAY SHIFT** | | | | |
| Staff Physician | MD Board Eligible Preferred | 1.00 | 40 | RMD / MD / Administ. |
| Director of Nursing | Licensed RN | 1.00 | 40 | Administrator |
| RN | Licensed RN | 2.40 | 96 | DON |
| LPN | Licensed Practical Nurse | 3.80 | 152 | DON / RN |
| Medical Assistant | AAMA Certification | 1.00 | 40 | DON / RN |
| Administrative Assistant | High School Diploma / GED | 1.00 | 40 | Administrator |
| Medical Records Clerk | High School Diploma | 2.40 | 96 | Administrator |
| Dentist | DMD / DDS / Licensed | 0.40 | 16 | MD / Administrator |
| Dental Assistant | Licensed Dental Asst | 0.40 | 16 | Dentist |
| Psychiatrist | MD Psychiatry | 0.50 | 20 | MD / Administrator |
| MH Professional | MA Social Work | 2.00 | 80 | MH Director |
| **Day Shift Total** | | **15.90** | **636** | |
| | | | | |
| **EVENING SHIFT** | | | | |
| RN | Licensed RN | 1.40 | 56 | DON / RN |
| LPN | Licensed Practical Nurse | 2.80 | 112 | DON / RN |
| **Evening Shift Total** | | **4.20** | **168** | |
| | | | | |
| **NIGHT SHIFT** | | | | |
| RN | Licensed RN | 1.40 | 56 | DON / RN |
| LPN | Licensed Practical Nurse | 1.40 | 56 | DON / RN |
| **Night Shift Total** | | **2.80** | **112** | |
| | | | | |
| **Grand Total** | | **22.90** | **916** | |

# APPENDIX D: MANDATORY CORIZON REPORTS

All data except for Receiving Screenings will be reported for: CJC, MSI and combined.

### 1. Off-Site Referrals
- Submitted Monthly to Commissioner and Contract Manager

| Inmate | Date Referred | Reason | Provider | Approved/ Denied | Scheduled / Days from Referral to Appointment | Seen if > 30 Days | Completed Date | Disposition |
|--------|---------------|--------|----------|------------------|-----------------------------------------------|-------------------|----------------|-------------|
|        |               |        |          |                  |                                               |                   |                |             |

### 2. Receiving Screenings: Daily Report
- Submitted on Request

| Inmate | Date & Time Admitted | Special Needs Y/N | Date & Time Intake Exam | Disposition |
|--------|----------------------|-------------------|-------------------------|-------------|
|        |                      |                   |                         |             |

### 3. Receiving Screening Monthly Summary
- Submitted to CJC Commissioner and Contract Manager

| Month | # Inmates | # Special Needs | # > 4 Hour Wait | Disposition | | | | |
|-------|-----------|-----------------|-----------------|-------------|--------|----|-------|--------|
|       |           |                 |                 | Rx | Medical | MH | Detox | Dental |

### 4. Monthly Provider Vacancies
- Submitted Monthly to Commissioner and Contract Manager

## 5. Behavioral Health Services Reports

- Monthly Report by Facility submitted Monthly to Commissioner and Contract Manager
- Suicide Watch Report: SUMMARY submitted Monthly to QI Committee and Contract Manager
- Behavioral Health Recidivism submitted Monthly to Contract Manager
- Monthly Behavioral Health Recidivism and Community Support Summary submitted Monthly to Contract Manager

### 1. Monthly Report by Facility

| Facility | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | # Inmates w BH Services | # Inmates on Psych Meds | MH Staff Services | | | | | | Psychiatry Services | | | | Detox | | | |
| | | | Assessment | Individ Therapy | Group Treatment | Discharge Planning | Crisis Interven. | Seg Eval | Inititial Eval | Med Review | Other | # On-Site | # Off-Site | Sub-stance | Dispos-tion |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

### 2. Suicide Watch Report: SUMMARY

| Month | Total # Inmates | Duration | | | | | # Referred for Further Assessment | # Waiting for Transfer | |
|---|---|---|---|---|---|---|---|---|---|
| | | up to 48 hrs | 3 days | 4-5 days | 6-8 days | > 8 days | | To Hospital | To Community |
| Referred by Level I Intake | | | | | | | | | |
| Referred from CJC | | | | | | | | | |
| Referred from MSI | | | | | | | | | |

### 3. Behavioral Health Recidivism Roster

| | # Arrests Past 3 Years | Months/ Years Since Last Arrest | Info from Community Provider Y/N |
|---|---|---|---|
| New inmate receiving BH services | | | |
| | | | |
| | | | |

### 4. Monthly BH Recivism and Community Support Summary

| Month | # New inmates receiving BH services | # with arrests past 3 years | | | |
|---|---|---|---|---|---|
| | | 1 arrest | 2 arrests | 3-5 arrests | 6 > arrests |
| | | | | | |
| | | | | | |
| | | | | | |

## 6. Monthly Health Services Report
- Submitted to Commissioner

**FACILITY**
**Monthly Statistical Report YEAR**

| | JAN | FEB | MAR | APR | MAY | JUN | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CENSUS STATISTICS** | | | | | | | | | | | | | |
| ADULT POPULATION (Average Daily Total) | | | | | | | | | | | | | |
| MALE | | | | | | | | | | | | | |
| FEMALE | | | | | | | | | | | | | |
| **ON SITE SERVICES** | | | | | | | | | | | | | |
| RECEPTION SCREENINGS | | | | | | | | | | | | | |
| RECEPTION SCREENINGS DEFERRED | | | | | | | | | | | | | |
| INITIAL HEALTH ASSESSMENTS | | | | | | | | | | | | | |
| PHYSICIAN VISITS | | | | | | | | | | | | | |
| NURSE SICK CALL (TRIAGE) | | | | | | | | | | | | | |
| NUMBER OF OTHER NURSE ENCOUNTERS | | | | | | | | | | | | | |
| PSYCHIATRY VISITS | | | | | | | | | | | | | |
| MH PROFESSIONAL VISITS | | | | | | | | | | | | | |
| NUMBER OF DAYS ON SUICIDE WATCH | | | | | | | | | | | | | |
| NUMBER OF DAYS ON CLOSE OBS | | | | | | | | | | | | | |
| NURSE SEGREGATION VISITS | | | | | | | | | | | | | |
| **ON-SITE CHRONIC CARE CLINIC** | | | | | | | | | | | | | |
| CARDIAC AND HYPERTENSION | | | | | | | | | | | | | |
| PULMONARY | | | | | | | | | | | | | |
| ENDOCRINE | | | | | | | | | | | | | |
| INFECTIOUS DISEASE (TB, HIV, HEP) | | | | | | | | | | | | | |
| OTHER | | | | | | | | | | | | | |
| NEUROLOGICAL - SEIZURE | | | | | | | | | | | | | |
| TOTAL CHRONIC CARE VISITS | | | | | | | | | | | | | |
| **DENTAL** | | | | | | | | | | | | | |
| DENTIST VISITS | | | | | | | | | | | | | |
| OTHER | | | | | | | | | | | | | |
| FILLINGS | | | | | | | | | | | | | |

# FACILITY
## Monthly Statistical Report YEAR

| | JA N | FE B | M A R | AP R | MA Y | JU N | JU LY | A U G | SE P | O CT | NO V | DE C | TOT AL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X-RAYS | | | | | | | | | | | | | |
| SCREENINGS | | | | | | | | | | | | | |
| EXTRACTIONS | | | | | | | | | | | | | |
| **MEDICAL HOUSING/INFIRMARY** | | | | | | | | | | | | | |
| NUMBER ADMITTED TO UNIT | | | | | | | | | | | | | |
| TOTAL NUMBER OF DAYS | | | | | | | | | | | | | |
| # OF INMATES TCU AT BEGINNING OF MONTH | | | | | | | | | | | | | |
| INMATE DEATHS | | | | | | | | | | | | | |
| HIV POSITIVE INMATES | | | | | | | | | | | | | |
| NUMBER OF POSITIVE MRSA | | | | | | | | | | | | | |
| NUMBER OF STDS DIAGNOSED | | | | | | | | | | | | | |
| # OF DETOX WATCH ROUNDS | | | | | | | | | | | | | |
| # OF ASTHMA WATCH ROUNDS | | | | | | | | | | | | | |
| **PHARMACY (COUNTED LAST DAY OF MONTH)** | | | | | | | | | | | | | |
| # OF INMATES ON PSYCH MEDS | | | | | | | | | | | | | |
| # OF INMATES ON RX MEDS (excluding psych meds) | | | | | | | | | | | | | |
| **LAB/X-RAY** | | | | | | | | | | | | | |
| NUMBER INMATES X-RAYED | | | | | | | | | | | | | |
| NUMBER OF LAB STUDIES DONE | | | | | | | | | | | | | |
| **OFF-SITE SERVICES** | | | | | | | | | | | | | |
| OB / GYN | | | | | | | | | | | | | |
| DENTAL / ORAL SURGERY | | | | | | | | | | | | | |
| ORTHOPEDIC | | | | | | | | | | | | | |
| PHYSICAL THERAPY (ON-SITE) | | | | | | | | | | | | | |
| DIALYSIS | | | | | | | | | | | | | |
| GENERAL SURGERY | | | | | | | | | | | | | |
| NEUROLOGY | | | | | | | | | | | | | |
| RADIATION THERAPY | | | | | | | | | | | | | |
| RADIOLOGY | | | | | | | | | | | | | |
| ONCOLOGY/CHEMOTHERAPY | | | | | | | | | | | | | |
| OPTHALMOLOGY | | | | | | | | | | | | | |
| ENT | | | | | | | | | | | | | |

| FACILITY<br>Monthly Statistical Report YEAR | JAN | FEB | MAR | APR | MAY | JUN | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OTHER | | | | | | | | | | | | | |
| TOTAL OFF-SITE PROFESSIONAL FOR MONTH | | | | | | | | | | | | | |
| ER VISITS | | | | | | | | | | | | | |
| HOSPITAL ADMITS | | | | | | | | | | | | | |
| HOSPITAL DAYS | | | | | | | | | | | | | |
| AVERAGE LENGTH OF STAY | | | | | | | | | | | | | |
| NUMBER AMBULANCE TRANSPORTS | | | | | | | | | | | | | |

## 7. Contracted Services and IBNR
- Submitted to Contract Manager

| CONTRACTED SERVICES EXPENDITURES AND IBNR | | | | | | | |
|---|---|---|---|---|---|---|---|
| | CLAIMS PAID FOR CONTRACTED SERVICES | | IBNR (ESTIMATED) | | | | |
| Month | Month Total | Cumulative Total | Inpatient | ER | Professional | Other | Total |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## 8. Hospital Utilization Logs
- Submitted to Contract Manager
- Updated Monthly

| A. EMERGENCY ROOM UTILIZATION LOG | | | | | | |
|---|---|---|---|---|---|---|
| **MSI** | | | | | | |
| Date | Time | Inmate | Hospital | Reason | Discharge Diagnosis | Admitted as Inpatient? |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **CJC** | | | | | | |
| Date | Time | Inmate | Hospital | Reason | Discharge Diagnosis | Admitted as Inpatient? |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| B. HOSPITAL INPATIENT UTILIZATION LOG | | | | | | |
|---|---|---|---|---|---|---|
| **MSI** | | | | | | |
| Date | Inmate | Hospital | Reason | Discharge Diagnosis | LOS | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **CJC** | | | | | | |
| Date | Inmate | Hospital | Reason | Discharge Diagnosis | LOS | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## 9. Quarterly Prescription Drugs and Other Medications Reports
- Submitted to Contract Manager
- Report to Include:
  Utilization
  # New Prescriptions
  Top 50 Medications by Cost
  Top 50 Medications by Volume
  Percent of New Prescriptions by Drug Class

  Drug Cost
  Total Cost of all medications sent to MSI
  Total Cost of all medications sent to CJC
  TOTAL COST

# APPENDIX E: PERFORMANCE REQUIREMENTS

1. **Decision-making Authority.** Corizon will have sole decision-making authority in all matters regarding inmate healthcare. Corizon will have primary, but not exclusive responsibility for the identification, care and treatment of inmates requiring medical care and who are "security risks", or who present a danger to themselves or others. On these matters of mutual concern, the St. Louis City Division of Corrections and staff will support, assist and cooperate Corizon, and Corizon will support, assist and cooperate with the St. Louis City Division of Corrections whose decision in any non-medical matter will be final.

2. **Collaborative and Regular Communications.** Corizon will maintain regular, collaborative communications with St. Louis City Division of Corrections and will actively cooperate in all matters pertaining to services provided under this Agreement.

3. **Quarterly Meetings.** Corizon will organize, schedule, prepare the agenda and provide minutes for quarterly review meeting between the City staff and the Corizon staff for the discussion of the report and evaluation of services provided and costs incurred under this Agreement. Within thirty days of execution of this Agreement, Corizon will submit the schedule of these quarterly meetings.

4. **Cooperation with Monitoring.** Corizon will cooperate with all City contract monitoring activities through designated City Department of Corrections contract monitor(s) or other investigative and peer review entities provided by the City. All books, records financial statements, reports, medical records, etc. as related to this Agreement are to be made available for all contract monitoring activities. These books, records financial statements, reports, medical records, etc. are to be made available for all contract monitoring activities within five business days of receipt of request.

6. **Staffing Vacancies.** Performance Objective: Corizon will fill vacancies for all staff in the contractual staffing plan, within 15 days. Once a position has been vacant for a period of fifteen (15) consecutive days, credit shall be given for actual positions vacant based upon the number of scheduled days vacant (beyond the initial 15 consecutive days) within the calendar month for that position. Corizon will provide a credit memo to the City based upon the vacated employee's actual salary and benefits.

A position is deemed vacant when no individual has been hired or contracted to provide services, and has begun working at the facilities. When part time, temporary, agency, locum, PRN, and overtime are utilized consistently to cover a position, these services will preclude a position from being declared vacant. The computation of vacant days will be provided to the City no later than 30 days following the month of service.

SLA: Compliance at 100% for all mandatory positions at both Facilities

Measurement: Monthly Provider Vacancy Report

Penalty: The daily value of the salary and benefits of the position vacant for every day for which the position remains vacant greater than the initial 15 scheduled days.

7.  **Timely Receiving   Screening Intake Screening.**   Performance Objective: Receiving Screening is completed on all detainees within four hours of admission to the CJC.

SLA: For the first year of the contract, minimum compliance means 90% compliance every day in a month, with exceptions for days in which there is a large civil disturbance or other unexpected event that results in undue number of simultaneous arrests. For additional contract years the City reserves the right to adjust this minimum compliance threshold.   However, Corizon will not be responsible for this objective in the event that the City or its employees, agents, or contractors: (i) prevent an Inmate from receiving services ordered by Corizon or its agents or contractors, or (ii) fail to exercise good judgment in promptly presenting an Inmate to Corizon for service.

Measurement: Monthly Provider Report: Detentions and Receiving Screenings. Analysis conducted quarterly.

Penalty: Assessed by month. First infraction, development of a Corrective Action Plan; second infraction: $1,000 per day of infraction; third infraction and beyond: $2,000 per day of infraction.

# Exhibit 1: Affidavit Employment of Unauthorized Aliens

## EXHIBIT 1

STATE OF _Tennessee_ )
                              )SS.
COUNTY OF _Williamson_ )

## AFFIDAVIT

Before me, the undersigned Notary Public, personally appeared _Jonathan Walker_ **(Name)** who, by me being duly sworn, deposed as follows:

My name is _Jonathan Walker_ **(Name)**, I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the _CDO_ **(Position/Title)** of _Corizon, LLC_.
**(Contractor)**

I have the legal authority to make the following assertions:

1. _Corizon, LLC_ **(Contractor)** is currently enrolled in and actively participates in a federal work authorization program with respect to the employees working in connection with this Agreement, as required pursuant to Sections 285.525 through 285.555 of the Revised Statutes of Missouri 2000, as amended.

2. Pursuant to Sections 285.525 through 285.555 of the Revised Statutes of Missouri 2000, as amended, _Corizon, LLC_ **(Contractor)** does not knowingly employ any person who is an unauthorized alien in connection with this Agreement.

_____
Affiant

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this _6th_ day of _June_, 20_14_.

_____
Notary Public

My Commission Expires: _5/8/18_

EXHIBIT 2

## BUSINESS ASSOCIATE CONTRACT

THIS BUSINESS ASSOCIATE CONTRACT (hereinafter the "Agreement") is entered by and between **Corizon Health, Inc.**, a corporate entity and its affiliated covered entities, including but not limited to Corizon, LLC and Corizon Health of New Jersey, LLC (as defined and permitted pursuant to 45 C.F.R. § 164.504) with its principal place of business located at 105 Westpark Drive, Suite 200, Brentwood, TN 37027 (hereinafter the "Covered Entity"); and **the City of St. Louis,** 200 South Tucker, St. Louis, MO 630102-1152 (hereinafter "Business Associate").

1. **Background and Purpose.** Business Associate provides services (hereinafter the "Services") to Covered Entity. The provision of these Services may require Business Associate to be provided with, have access to, and/or create Protected Health Information ("PHI") that is subject to federal privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act, the Health Information Technology for Economic and Clinical Health Act ("HITECH") and the Omnibus Rule of 2013 (hereinafter collectively referred to as "HIPAA") and codified at 45 C.F.R. Parts 160 through 164 (the "HIPAA Regulations"). This Agreement shall address Business Associate's receipt, use, and creation of PHI during the provision of the Services to allow the Covered Entity to comply with HIPAA and shall supersede and replace any prior Business Associate Agreement between the Parties.

2. **Definitions.** Unless otherwise defined in this Agreement, all capitalized terms used in this Agreement shall have the meanings ascribed in the HIPAA Regulations; provided, however, that "PHI" shall mean Protected Health Information, as defined in 45 C.F.R. § 160.103, limited to the Protected Health Information Business Associate received from, created, or received on behalf of Covered Entity as its Business Associate.

3. **Obligations and Activities of Business Associate.** Business Associate agrees to:

   a. Not use or disclose PHI other than as permitted or required by the Agreement or as required by law;

   b. Use appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to Electronic Protected Health Information, to prevent use or disclosure of PHI other than as provided for by the Agreement;

   c. Promptly notify Covered Entity any use or disclosure of PHI not provided for by the Agreement, of which it becomes aware, including breaches of unsecured PHI as required at 45 CFR 164.410, and any security incident of which it becomes aware. Further, Business Associate shall make a report to Covered Entity of any such breach within five (5) business days of Business Associate's discovery of the breach.

   d. Enter into a written agreement with any agent or subcontractor that will have access to PHI that is created, received, maintained, or transmitted by Business Associate on behalf of Covered Entity, pursuant to which such agent or subcontractor agrees to be bound by the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such PHI;

e. Within fifteen (15) days of receiving a written request from Covered Entity for access to PHI about an individual contained in a Designated Record Set, make such PHI available to Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.524. in the event that any individual requests access to PHI directly from Business Associate, Business Associate shall, within ten (10) days forward such request to Covered Entity;

f. Within fifteen (15) days of receiving a written request from Covered Entity for amendment of an individual's PHI contained in a Designated Record Set, make such PHI available to Covered Entity for such amendment and incorporate any amendments to the PHI in accordance with the HIPAA Regulations;

g. Within twenty (20) days of receiving a written request from Covered Entity, make available to Covered Entity the information required for Covered Entity to provide an accounting of disclosures of PHI as necessary to satisfy Covered Entity's obligations under 45 CFR 164.528. in the event a request for an accounting is delivered directly to Business Associate, Business Associate shall, within ten (10) days, forward such request to Covered Entity;

h. To the extent the Business Associate is to carry out one (1) or more of Covered Entity's obligation(s) under Subpart E of 45 CFR Part 164, comply with the requirements of Subpart E that apply to the Covered Entity in the performance of such obligation(s); and

i. Make its internal practices, books, and records available to the Secretary for purposes of determining compliance with the HIPAA Regulations.

4. **Permitted Uses and Disclosures by Business Associate.**

    a. Unless otherwise limited herein, Business Associate may:

      i. Use the PHI in its possession for its proper management and administration and to fulfill any legal responsibilities of Business Associate;

      ii. Disclose the PHI in its possession to a third party for the purpose of Business Associate's proper management and administration or to carry out the legal responsibilities of Business Associate, if:

          a) the disclosures are required by law; or

          b) Business Associate obtains reasonable assurances in writing from the third party that the PHI will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to the third party and the third party notifies the Business Associate of any instances of which it becomes aware in which the confidentiality of the information has been breached;

iii. Provide Data Aggregation services related to the health care operations of the Covered Entity;

iv. De-identify PHI obtained by Business Associate under the Underlying Agreement(s) or this Agreement and use such de-identified data in accordance with the de-identification requirements of the HIPAA Regulations; and

v. Make uses, disclosures and requests for PHI consistent with Covered Entity's minimum necessary policies and procedures.

b. Business associate may not use or disclose PHI in a manner that would violate Subpart E of 45 CFR Part 164 if done by Covered Entity, to the extent Business Associate is to carry out the obligations of a Covered Entity.

c. Business associate may provide data aggregation services relating to the health care operations of the Covered Entity.

5. **Provisions for Covered Entity to Inform Business Associate of Privacy Practices and Restrictions.** Covered entity shall notify Business Associate of:

a. The Parties hereby agree that Covered Entity is exempt from the requirement to provide adequate notice of the uses and disclosures of PHI that may be made by Covered Entity, and of Covered Entity's legal duties with respect to PHI pursuant to the provisions of 45 C.F.R. § 164.520;

b. Any changes in, or revocation of, the permission by an individual to use or disclose his or her PHI, to the extent that such changes may affect Business Associate's use or disclosure of PHI; and

c. Any restriction on the use or disclosure of PHI that Covered Entity has agreed to or is required to abide by under 45 CFR 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

6. **Permissible Requests by Covered Entity.** Covered entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under Subpart E of 45 CFR Part 164 if done by Covered Entity.

7. **Term and Termination**

a. Term. This Agreement shall be effective as of the final signature on the last page of this Agreement.

b. Termination by Covered Entity. Compliance with the terms of this Agreement is a material term of any arrangement for providing the Services, pursuant to which Covered Entity is making PHI available to Business Associate. Should Covered Entity become aware of a breach or violation of Business Associate's obligations under this Agreement, Covered Entity shall provide Business Associate with written notice of such breach or violation. Upon receipt of such notice, Business Associate

shall act diligently to remedy any such breach or violation. Covered Entity shall be entitled to terminate the Services if Business Associate fails to cure the breach or violation within a reasonable time or if Business Associate has breached or violated its obligations under this Agreement on more than one (1) occasion. If termination of the Services is not feasible, Covered Entity shall report the breach or violation to the Secretary of Health and Human Services.

c. <u>Obligations of Business Associate upon Termination</u>. Upon the completion or earlier termination of the Services, Business Associate shall return to Covered Entity or destroy all PHI, including such information in possession of Business Associate's subcontractors, as a result of the provision of the Services and retain no copies, if it is feasible to do so. If return or destruction is infeasible, Business Associate agrees to notify Covered Entity of this infeasibility and the reason(s) therefore and agrees to extend all protections, limitations and restrictions contained in this Agreement to Business Associate's use and/or disclosure of any retained PHI, and to limit further uses and/or disclosures to the purposes that make the return or destruction of the PHI infeasible. This provision shall survive the termination or expiration of this Agreement and the completion or earlier termination of the Services.

8. **Indemnity.** Business Associate shall indemnify and hold Covered Entity harmless from all claims, damages, liabilities, judgments and costs, including reasonable attorneys' fees, which Covered Entity may incur in connection with the performance or breach of Business Associate's responsibilities, obligations, warranties, and representations contained in this Agreement. This provision shall survive the termination or expiration of this Agreement and the completion or earlier termination of the Services.

9. **Regulatory References.** A reference in this Agreement to a section in the HIPAA Regulations means the section as in effect or as amended.

10. **Amendment.** The parties acknowledge that federal and state laws relating to the privacy and security of patient information are evolving rapidly and that changes to this Agreement may be necessary to ensure compliance with such developments. The parties hereby agree to take such actions and to execute any and all amendments to this Agreement as may be necessary to implement the standards and requirements of HIPAA, the HIPAA Regulations and other federal and state laws and regulations relating to the privacy and security of patient information.

11. **No Third Party Beneficiaries.** Nothing express or implied in this Agreement shall confer upon any person, other than the Parties hereto and their respective successors or assigns, any rights, remedies, obligations or liabilities whatsoever.

12. **Interpretation.** Any ambiguity in this Agreement shall be interpreted to permit compliance with the HIPAA Regulations.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement:

THE CITY OF ST. LOUIS

By: _____

Title: Commissioner of Corrections

Date: 6-17-14

CORIZON HEALTH, INC.

By: _____

Title: Associate General Counsel

Date: 6-16-14