# EXHIBIT G

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

EXHIBIT 7

# FORMS SCHEDULE

**Named Insured:**     VALITAS HEALTH SERVICES, INC.

**Policy Number:**        6797142
**Effective 12:01 AM:** January 1, 2014

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | Healthcare PL-CM & Healthcare GL-Occ | 79222 | (07/03) |
| | Healthcare PL & GL - Policy Provisions & Condition | 79229 | (08/09) |
| | Healthcare GL-Occ Coverage Part | 79227 | (07/03) |
| 1 | Definition of Named Insured | MNSCPT | (12/13) |
| 2 | Additional Insured Endorsement | MNSCPT | (12/13) |
| 3 | Separate Aggregate Limit (St of Idaho DOC) | MNSCPT | (12/13) |
| 4 | Amendatory Endorsement - City of New York | MNSCPT | (12/13) |
| 5 | Definition of Employee Amendatory Endorsement | MNSCPT | (12/13) |
| 6 | Employee Benefit  Admin Liability  End-CM | 79541 | (10/03) |
| 7 | Penalties Amendatory End | 80025 | (05/02) |
| 8 | Professional Services Exclusion | MNSCPT | (12/13) |
| 9 | Products Liability (Bodily Injury) Exclusion | MNSCPT | (12/13) |
| 10 | Exclusion-Violation of Statutes | 87295 | (01/05) |
| 11 | Fungus Exclusion | 82021 | (05/03) |
| 12 | Indiana Amendatory Endorsement (Def of Polllants | MNSCPT | (12/13) |
| 13 | Economic Sanctions Endorsement - OFAC | 115718 | (07/13) |
| 14 | Minimum Earned Premium Endorsement | 74778 | (06/08) |
| 15 | Additional Insured (County of Alameda, CA) | MNSCPT | (12/13) |
| 16 | Additional Insured (Specific) | MNSCPT | (12/13) |
| 17 | Additional Insured (State of Arizona DOC) | MNSCPT | (12/13) |
| 18 | Discrimination Amendatory (State of Arizona DOC) | MNSCPT | (12/13) |
| 19 | Sexual Misconduct Amendatory (State of Arizona) | MNSCPT | (12/13) |
| 20 | Terrorism Exclusion | 96554 | (04/08) |

# LEXINGTON INSURANCE COMPANY

Administrative Office: 100 Summer Street, Boston, MA 02110-2103

(A Capital Stock Insurance Company)

## HEALTHCARE PROFESSIONAL LIABILITY - CLAIMS MADE AND HEALTHCARE GENERAL LIABILITY - OCCURRENCE

### DECLARATIONS

**Various provisions in the General Policy Provisions and Conditions and Coverage Parts restrict coverage. There may be both occurrence coverages and claims made coverages in this Policy. Claims made coverage is limited to liability for claims first made against an Insured during the policy period or any extended reporting period, if applicable.**

**Please read all General Policy Provisions and Conditions and Coverage Parts carefully to determine rights, duties, and what is and what is not covered. A complete Policy includes the Declarations, General Policy Provisions and Conditions, and the applicable Coverage Parts.**

**POLICY NUMBER:**  6797142       **RENEWAL OF NUMBER:**  6797142

**Item 1.  FIRST NAMED INSURED:**       VALITAS HEALTH SERVICES, INC.

**Item 2.  ADDRESS:**        105 WESTPARK DR
BRENTWOOD, TN 37027-5010

**Item 3.  (a) RETROACTIVE DATE - HEALTHCARE PROFESSIONAL LIABILITY CLAIMS MADE COVERAGE PART _ONLY:_** N/A

**(b) POLICY PERIOD:** From: January 1, 2014       To: January 1, 2015
at 12:01 a.m. Standard Time at your mailing address shown above.

**(c) OPTIONAL EXTENDED REPORTING PERIOD:** To be determined at the time it is purchased.

**Item 4.  DESCRIPTION OF OPERATIONS:** Correctional Healthcare Provider

**Item 5.  LIMITS OF INSURANCE:**

(a) Healthcare Professional Liability

| | | |
|---|---|---|
| Aggregate Limit | No Coverage | |
| Each Medical Incident | No Coverage | |
| Deductible | None | |
| Deductible Aggregate | None | |

(b) Healthcare General Liability

| | | |
|---|---|---|
| Aggregate Limit | $6,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Products/Completed Operations Limit | $1,000,000 | |
| Personal/Advertising Injury Limit | $1,000,000 | |
| Fire Damage Limit | $500,000 | Each Fire |
| Medical Expense Limit | No Coverage | Each Injured Person |
| Deductible | $25,000 | |
| Deductible Aggregate | None | |

**Item 6.  PREMIUM:** ▉

**Item 7.  FORMS AND ENDORSEMENTS:** Attached at Inception

**Item 8.  PRODUCER NAME AND ADDRESS:** HEALTHCARE LIABILITY SOLUTIONS INC
840 GESSNER
SUITE 1825
HOUSTON, TX 77024

By _____       By _____
Countersignature (In States Where Applicable)           Authorized Representative

79222 (7/03)
HC0268

## Claim Reporting

Chartis Healthcare Liability Claims is the Claim Administrator for the companies of AIG.

Claims should be reported to the following centralized customer service center for assignment to a claim professional appropriate for the type of claim reported.

E-mail: HealthcareFNOL@AIG.com

Fax: 877-430-5356

Mail: Chartis Healthcare Liability Claims
Attn: Central Processing Canter
P.O. Box 25994
Shawnee Mission, KS 66225

The Central Processing Center will consolidate claim intake, creation and assignment functions. This means you have a simple way to notify the company of a loss,[1] as well as clearly identified points of contact to request claim information. You will be promptly advised of the assigned claim professional. Recognizing the importance of prompt issuance of acknowledgement letters, the Central Processing Center enables Chartis Healthcare Liability Claims to quickly and thoroughly acknowledge your claim submissions facilitating timely claim resolution.

[1] Please refer to the notice provision of the applicable policy or reinsurance certificate for specific requirements regarding timely and proper submission of a claim.

# HEALTHCARE PROFESSIONAL LIABILITY AND
# HEALTHCARE GENERAL LIABILITY

# GENERAL POLICY PROVISIONS AND CONDITIONS

**VARIOUS PROVISIONS IN THE GENERAL POLICY PROVISIONS AND CONDITIONS AND COVER-
AGE PARTS RESTRICT COVERAGE. THERE MAY BE BOTH OCCURRENCE COVERAGES AND
CLAIMS MADE COVERAGES IN THIS POLICY. PLEASE READ ALL GENERAL POLICY PROVISIONS
AND CONDITIONS AND COVERAGE PARTS CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES,
AND WHAT IS AND WHAT IS NOT COVERED. A COMPLETE POLICY INCLUDES THE DECLARA-
TIONS, GENERAL POLICY PROVISIONS AND CONDITIONS, AND THE APPLICABLE COVERAGE
PARTS.**

Throughout this Policy the words **you** and **your** mean the **First Named Insured**, including any other
**Named Insured**. The words **we**, **us** and **our** mean the Company providing insurance under this Policy.
Other words and phrases are defined in Section I. Definitions Applicable To General Policy Provisions and
Conditions and All Coverage Parts. Further, words that appear in the General Policy Provisions and
Conditions may be defined in other Coverage Parts forming part of this policy.

In consideration of the payment of the premium and in reliance upon the statements in the Application and
upon the Declarations, we agree as follows:

## I. DEFINITIONS APPLICABLE TO GENERAL POLICY PROVISIONS AND CONDI-
## TIONS AND ALL COVERAGE PARTS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market
segments about **your** goods, products or services for the purpose of attracting customers or supporters.

B. **Auto** means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any
attached machinery or equipment. **Auto**, however, does not include **mobile equipment**.

C. **Biomedical Waste** means a biological agent or condition including, but not limited to, an infectious
organism or unsafe laboratory condition that may cause or result in **bodily injury** or **property damage**.

D. **Bodily Injury** means physical injury, sickness or disease sustained by any person, including death
resulting from any of these at any time. **Bodily injury** does not include emotional distress or mental
anguish unless due to physical injury, sickness or disease.

E. **Claim** means a written demand against an insured for monetary damages, including a **suit**.

F. **Defense Costs** means costs and expenses incurred by **us** including fees charged by an attorney
designated by **us** to investigate or defend any **claim** or **suit** brought against any **insured**.

    **Defense costs** does not include salary charges or the expenses of **our** regular employees.

G. **Employee** means a person paid by **you** in connection with **your** business. It includes a **leased worker**
but does not include a **temporary worker** or independent contractor.

H.  **Executive Officer** means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

I.  **First Named Insured** means the **Named Insured** designated on Item 1. of the Declarations attached to this policy.

J.  **Impaired Property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1.  It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.  **You** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of **your product** or **your work**; or

2.  The fulfilling of the terms of the contract or agreement by **you**.

K.  **Insured Contract** means:

1.  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;

2.  A sidetrack agreement;

3.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  An elevator maintenance agreement; or

6.  That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

     Paragraph 6. does not include that part of any contract or agreement:

     a.  That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

     b.  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         i.  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings, designs and specifications; or

         ii. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

c. Under which **you**, if an architect, engineer or surveyor, assumes liability for **bodily injury** or **property damage** arising out of **your** rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

L. **Leased Worker** means a person leased to **you** by a labor leasing firm, under an agreement between **you** and the labor leasing firm, to perform duties related to the operations as described in the Declarations and which are at **your** direction. **Leased worker** does not include a **temporary worker**.

M. **Loading** or **Unloading** means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or **auto**;

2. While it is in or on an aircraft, watercraft or **auto**; or

3. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

But **loading** or **unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or **auto**.

N. **Medical Incident** means any act, error or omission in the providing of or failure to provide **professional services**.

O. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment and including, but not limited to:

1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises **you** own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles other than those described in Items 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles other than those described in Items 1, 2, 3, or 4 above that are maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. Equipment designed primarily for:

      i. Snow removal;

ii.  Road maintenance, but not construction or resurfacing; or

iii.  Street cleaning;

b.  Cherry pickers and similar devices mounted on **auto** or truck chassis and used to raise or lower workers; and

c.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

P.  **Occurrence** means:

1.  As respects **bodily injury, property damage** or medical expense, an accident, including continuous or repeated exposure to substantially the same general conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**;

2.  As respects **personal injury**, an offense arising out of your business that results in **personal injury**. All **damages** that arise from the same or related injurious material or act shall be considered as arising out of one **occurrence**, regardless of the frequency of repetition thereof, the number and kind of media used and the number of claimants;

3.  As respects **advertising injury**, an offense committed in the course of advertising your goods, products and services that results in **advertising injury**. All **damages** that arise from the same or related injurious material or act shall be considered as arising out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

Q.  **Patient** means a person seeking or receiving, either on an inpatient, outpatient or emergency basis, any form of medical, surgical, dental or nursing care or any service or treatment.

R.  **Personal and Advertising Injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

1.  False arrest, detention, or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication of material that violates a person's right of privacy;

6.  The use of another's advertising idea in **your advertisement**;

7.  Infringing upon another's copyright, trade dress or slogan in **your advertisement**.

S.  **Policy Period** means the period commencing on the inception date shown on the Declarations and ending on the earlier of the expiration date or the effective date of cancellation of the Policy.

T.  **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to: smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, but is not limited to, **biomedical waste** and materials to be recycled, reconditioned or reclaimed.

U. **Products-Completed Operations Hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

1. Products that are still in **your** physical possession; or

2. Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

   a. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   b. When all of the work called for in **your** contract has been completed.

   c. When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   This hazard does not include **bodily injury** or **property damage** arising out of:

1. The transportation of property, unless the injury or **damage** arises out of a condition in or on a vehicle not owned or operated by **you,** and that condition was created by the **loading or unloading** of that vehicle by any Insured;

2. The existence of tools, uninstalled equipment, or abandoned or unused materials; or

3. Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

V. **Professional Services** means:

1. Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling or treatment of deceased human bodies, including, but not limited to, autopsies, organ donation or other procedures;

2. Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or

3. Supervising, teaching, proctoring others at **your** request.

W. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. Solely with respect to any **bodily injury** and **property damage** coverage of this policy, all such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

X. **Suit** means a civil action in which damages are alleged because of an **occurrence, claim, medical incident, bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which an **Insured** must submit or does submit with **our** consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which an **Insured** submits with **our** consent.

Y. **Temporary Worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term work load requirements.

Z. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. **You**;
   b. Others trading under **your** name; or
   c. A person or organization whose business or assets **you** have acquired; and

2. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **Your product** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

2. The providing of or failure to provide warnings or instructions.

   **Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

AA. **Your Work** means:

1. Work or operations performed by **you** or on **your** behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

   **Your work** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

2. Providing of or failure to provide warnings or instructions.

---

## II. DEFENSE AND OTHER PAYMENTS UNDER THIS POLICY - ALL COVERAGE PARTS

A. When **we** have the duty to defend any **suit**, **we** will defend such **suit** against the **Insured** for a covered **claim** seeking damages on account of **a medical incident, bodily injury, property damage, personal injury** or **advertising injury** even if such **claim** or **suit** is groundless, false or fraudulent. **We** have the right to investigate, defend, appoint an attorney to defend and settle the **suit** as **we** deem expedient.

B. In addition to the Limits of Insurance applicable to this Policy, **we** shall pay, with respect to any **suit we** defend:

1. All expenses **we** incur including **defense costs**.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which any **bodily injury** liability coverage applies. **We** do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. **We** do not have to furnish these bonds.

4. All reasonable expenses incurred by an **Insured** at **our** request to assist **us** in the investigation or defense of the **suit**, including actual loss of earnings up to $500 a day because of time off from work.

5. Pre-judgment interest awarded against the **Insured** on that part of the judgment **we** pay. If prior to judgment, **we** make an offer to pay the applicable Limit of Insurance, **we** will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

7. All costs taxed against the **Insured** in the **suit**.

8. Premiums on appeal bonds required by law to appeal any **suit we** defend, but only for bond amounts within the applicable Limits of Insurance. **We** are not obligated to apply for or furnish any such bond.

C. With respect to the HEALTHCARE GENERAL LIABILITY COVERAGE PART only, if **we** defend an **Insured** against a **suit** and an indemnitee of the **Insured** is also named as a party to the **suit**, **we** will defend that indemnitee if all of the following conditions are met:

1. The **suit** against the indemnitee seeks damages for which the **Insured** has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

2. This insurance applies to such liability assumed by the **Insured**;

3. The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the **Insured** in the same **insured contract**;

4. The allegations in the **suit** and the information **we** know about the **occurrence** are such that no conflict appears to exist between the interests of the **Insured** and the interests of the indemnitee;

5. The indemnitee and the **Insured** ask **us** to conduct and control the defense of that indemnitee against such **suit** and agree that **we** can assign the same counsel to defend the **Insured** and the indemnitee; and

6. The indemnitee agrees in writing to:

   a. Cooperate with **us** in the investigation, settlement or defense of the **suit**,

   b. Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **suit**;

   c. Notify any other insurer whose coverage is available to the indemnitee; and

   d. Cooperate with **us** with respect to coordinating other applicable insurance available to the indemnitee; and

7. The indemnitee provides **us** with written authorization to:

   a. Obtain records and other information related to the **suit**; and

   b. Conduct and control the defense of the indemnitee in such **suit**.

So long as the above conditions are met, attorneys fees incurred by **us** in the defense of that indemnitee, necessary litigation expenses incurred by **us** and necessary litigation expenses incurred by the indemnitee at **our** request, will be paid as stated in Section II. Defense And Other Payments Under This

Policy-All Coverage Parts. Notwithstanding the provisions of Section III. S. 2. b. (Contractual Liability) of the HEALTHCARE GENERAL LIABILITY COVERAGE PART such payments will not be deemed to be damages for **bodily injury** and **property damage** and will not reduce the Limits of Insurance.

**Our** obligation to defend an Insured's indemnitee and to pay for attorney's fees and necessary litigation expenses as Other Payments Under This Policy ends when:

1. **We** have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

2. The conditions set forth above, or the terms of the agreement described in paragraph 6. above, are no longer met.

D. **Our** duty to defend any **suit** ends, and **we** may withdraw from the defense, after the applicable Limit of Insurance has been exhausted by the payment of settlements, judgments or awards including pre-judgement interest.

---

## III. CONDITIONS APPLICABLE TO ALL COVERAGE PARTS

The following conditions apply to all coverage parts:

A. Assistance and Cooperation

The Insured shall:

a. Cooperate with **us** in the investigation, settlement, or defense of the **claim** or **suit**; and

b. Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

The Insured shall not, except at the Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without **our** consent.

B. Audit

**We** may audit and examine **your** books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of **our** authorized representatives.

D. Knowledge and Notice of a **Medical Incident** or **Occurrence**

Knowledge of a **medical incident** or **occurrence** on the part of the risk management department or on the part of an executive officer constitutes knowledge by the **First Named Insured.**

E. Coverage Territory

**We** will cover an **occurrence**, offense or **medical incident** in the United States of America, its territories and possessions, Canada and Puerto Rico, provided a **claim** is made and **suit** is brought in the United States of America, its territories and possessions, Canada or Puerto Rico.

F. Mergers/Acquisitions

**We** will cover any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or at least a majority interest, only for sixty (60) days or for the remainder of the **policy period**, whichever is less, from the date that **you** acquire or form it. **You** are not covered for damages that arise out of **bodily injury, property damage** or **medical incidents** that occurred before **you** acquired or formed the organization, or **personal and advertising injury** arising out of an **occurrence** which took place before **you** acquired or formed the organization. **You** shall notify **us** or **our** authorized representative in writing within sixty (60) days of such acquisition.

If any person or organization became an additional **Named Insured** under this policy after the inception date, the **policy period** for that person or organization begins on the date that such person or organization became an additional **Named Insured** and ends on the earlier of the expiration date or the effective date of cancellation of the policy.

For coverage to apply to the newly acquired or formed organization upon acquisition **you** must do the following within sixty (60) days:

1. Submit an underwriting application to **us**;

2. The application must be approved by **us**;

3. Pay any additional premium; and

4. Agree to any amendment of the provisions of this Policy required by **us** relating to such company.

If **you** are acquired or merged into another organization not named as an **Insured** in this policy, then this insurance shall cease immediately upon such acquisition or merger.

G. Legal Action Against **Us**

No person or organization has a right under this Policy:

1. To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from **you**; or

2. To sue **us** under this Policy, unless all this Policy's terms have been complied with in full.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against **you** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of any Insuring Agreement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, **you** and the claimant or the claimant's legal representative.

H. Other Insurance

If there is other insurance which applies to the loss resulting from an **occurrence**, offense or **medical incident**, the other insurance must pay first. This Policy applies to the amount of the loss which is more than:

1. The Limits of Insurance of the other insurance; and

2. The total of all deductibles and self-insured amounts under all such other insurance.

I. Multiple Policies

Two or more insurance policies may be issued by **us** or any company that controls, is controlled by, or is under common control with **us**. These policies may provide coverage for:

1.  **Claims** or **suits** arising from the same **occurrence**, offense or **medical incident**; or

2.  Persons or organizations covered in those policies that are jointly and severally liable.

In such a case, **we** shall not be liable under this Policy for an amount greater than the proportion of the loss that this Policy's applicable Limit of Insurance bears to the total applicable Limits of Insurance under all such policies.

In addition, the total amount payable under all such policies is the highest, single applicable Limit of Insurance among all such policies.

J.  Separation of Insureds

Except with respect to the Limits of Insurance and deductible, and except with respect to any rights or duties specifically assigned in this Policy to the **Named Insured**, this insurance applies:

1.  As if each **Insured** were the only **Insured**; and

2.  Separately to each **Insured** against whom a **claim** is made or **suit** is brought.

K.  Bankruptcy/Insolvency

**Your** bankruptcy or insolvency will not relieve **us** of **our** obligations under this Policy.

L.  Representations

By accepting this Policy, the **First Named Insured** agrees that:

1.  The statements in the Declarations and/or Applications are accurate and complete;

2.  Those statements are based upon representations made to **us** by **you**; and

3.  **We** have issued this Policy in reliance upon **your** representations.

M.  Subrogation

If an **Insured** has rights to recover all or part of any payment **we** have made under this Policy, those rights are transferred to **us**. An **Insured** shall do nothing to impair these rights after a loss. At **our** request, an **Insured** will bring **suit** or transfer those rights to **us** and fully cooperate with **us** with respect to enforcing them.

Any recoveries will be applied in accordance with the following priorities:

1.  Any person or organization, including the **Insured**, that have paid an amount in excess of **our** payment under this policy will be reimbursed first;

2.  **We** then will be reimbursed up to the amount **we** have paid; and

3.  Lastly, any interests, including the **Insured**, over which **our** insurance is excess, are entitled to the residual.

N.  Conformance To Statute

To the extent that this Policy conflicts with any law, statute, or regulation applicable to this Policy, this Policy shall conform to the minimum requirements of that law, statute, or regulation.

O.  Transfer of **Your** Rights and Duties

**Your** rights and duties under this policy may not be transferred without **our** written consent.

If **you** die or are legally declared bankrupt, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of duties as **your** legal representative. However, notice of cancellation sent to the **First Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

P.  Special Rights And Duties Of **First Named Insured**

It is agreed by all **Insureds** that the **First Named Insured** is authorized to act on behalf of all **Insureds** as to:

1.  Giving and receiving notice of cancellation;

2.  Payment of premiums and receipt of return premiums;

3.  Acceptance of any endorsements to this Policy;

4.  Purchasing or deciding not to purchase the Optional Extended Reporting Period Endorsement, if applicable; or

5.  Making changes in this Policy or any coverage part with **our** consent.

6.  Making representation with respect to the issuance by **us** of this Policy.

This Policy can only be changed by a written endorsement **we** issue and make a part of this Policy.

Q.  Inspections And Surveys

**We** have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give the **First Named Insured** reports on the conditions **we** find; and

3.  Recommend changes.

Any inspections, surveys, reports, or recommendations are related only to insurability and the premiums to be charged.

**We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

**We** do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes, or standards.

This condition applies not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports, or recommendations.

R.  Omnibus Reconciliation Act

**We** will comply with the requirements of section 952 of the Omnibus Reconciliation Act of 1980. Upon written request, the company will allow the secretary of health and human resources and the comptroller

general access to the policy and necessary books, documents and records to verify the cost of the policy, to the extent required by law. Access will also be allowed to subcontract between the Company and any affiliated organization of the Company and to its books, documents and records. Such access will be provided up to four years after the services furnished under this policy end.

S.  Titles Of Paragraphs

Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

T.  Service Of Suit

In the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed  that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts 02110-2103 or his or her representative, and that in any suit instituted against **us** upon this Policy, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by **you** or on **your** behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## IV.  CANCELLATION/NON-RENEWAL

A.  When We Do Not Renew

If **we** decide not to renew this Policy, **we** will mail or deliver to the **First Named Insured** at the address designated in the Declarations written notice of the non-renewal not less than thirty (30) days before the expiration date. If such notice is mailed, proof of mailing will be sufficient proof of notice. If **we** mail or deliver the notice less than thirty (30) days before the expiration, **we** will extend the **policy period** so that the expiration date will be thirty (30) days after **we** mail or deliver the notice. **You** will be charged a pro rata additional premium for such extension. Such extension shall be subject to the remaining Limits of Insurance of this Policy and there shall not be a reinstatement of the Aggregate Limits. **You** can terminate the extension at any time, but not retroactively.

B.  Cancellation

This Policy may be canceled by the **First Named Insured** by surrendering it to **us** or any of **our** authorized representatives or by mailing to **us** written notice stating when thereafter the cancellation shall be effective.

**We** may cancel this Policy by mailing or delivering a written notice of cancellation to the **First Named Insured** at the address shown in this Policy stating when, not less than 30 days thereafter, cancellation will be effective. However, if **we** cancel this Policy because the **First Named Insured** has failed to pay a premium when due, this Policy may be canceled by **us** by mailing or delivering a written notice of cancellation to the **First Named Insured** at the address shown in this Policy stating when, not less than 10 days thereafter, such cancellation will be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery of such written notice either by the **First Named Insured** or by **us** shall be the equivalent to mailing. If the **First Named Insured** cancels, the unearned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, unearned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

By signing below, the President and the secretary of the Insurer agree on behalf of the Insurer to all the terms of the Policy.

SECRETARY                                    PRESIDENT AND CHIEF EXECUTIVE OFFICER

This policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the policy.

AUTHORIZED REPRESENTATIVE

## HEALTHCARE GENERAL LIABILITY
## OCCURRENCE COVERAGE PART

### I.  INSURING AGREEMENTS

A.  **Bodily Injury** and **Property Damage**

**We** will pay those sums that an **Insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this Coverage Part applies.  The amount **we** will pay for damages is limited as described in Section IV., Limits Of Insurance.

This Coverage Part applies to **bodily injury** and **property damage** only if:

1.  The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the coverage territory; and

2.  The **bodily injury** or **property damage** occurs during the **policy period**.

B.  **Personal and Advertising Injury**

**We** will pay those sums that an **Insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this Coverage Part applies. The amount **we** will pay for damages is limited as described in Section IV., Limits Of Insurance.

This Coverage Part applies to **personal and advertising injury** only if:

1.  **Personal injury** is caused by an offense arising out of **your** business, excluding advertising, publishing, broadcasting or telecasting done by **you** or on **your** behalf;

2.  **Advertising injury** is caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the coverage territory during the **policy period.**

C.  **Medical Expenses**

**We** will pay medical expenses as described below for **bodily injury** caused by an **occurrence**:

1.  On premises **you** own or rent;

2.  On ways next to premises **you** own or rent; or

3.  Because of **your** operations;

Provided that:

1.  The occurrence takes place in the coverage territory and during the **policy period**;

2. The expenses are incurred and reported to **us** within one year of the date of the occurrence; and

3. The injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

**We** will make these payments regardless of fault. The amount **we** will pay for damages is limited as described in Section IV., Limits Of Insurance. **We** will pay reasonable expenses for:

1. First aid administered at the time of an occurrence;

2. Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3. Necessary ambulance, hospital, professional nursing and funeral services.

## II.  WHO IS AN INSURED

The following are **Insureds** under this Coverage Part:

A. **You.**

B. An individual and the individual's spouse are **Insureds**, but only with respect to the conduct of **your** business named in the Declarations of which such individual is the sole owner.

C. A partnership or joint venture is an **Insured**, but only if the partnership or joint venture is specifically listed as a **Named Insured**. The partnership's partners or joint venture's members and their spouses are also **Insureds**, but only with respect to the conduct of **your** business.

   No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

D. A limited liability company is an **Insured**, but only if the limited liability company is specifically listed as a **Named Insured**. The limited liability company's members are also **Insureds**, but only with respect to the conduct of **your** business. **Your** managers are **Insureds** but only with respect to their duties as **your** managers.

E. If **you** are designated in the Declarations as other than partnership, joint venture or limited liability company, the organization so designated and any **executive officer**, director or stockholder thereof while acting within the scope of his duties for **you**.

F. **Your employees**, other than **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), are **Insureds**, but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

   No **employee**, however, is an **Insured** for:

1. **Bodily injury, personal and advertising injury:**

   a. To **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), or to a co-employee while in the course of his or her employment or while performing duties related to the conduct of **your** business;

   b. To the spouse, child, parent, grandparent, brother, or sister of that co-employee as a consequence of paragraph 1.a. above;

c. For which there is an obligation to share damages with or repay another who must pay damages due to an injury described in 1.a. or 1.b. above; or

d. Arising out of his or her providing or failing to provide professional healthcare services.

2. **Property Damage** to property:

a. Owned, occupied, or used by, or

b. Rented to, in the care of, custody or control of, or over which physical control is being exercised for any purpose by,

**you**, any of **your** employees, any partner or member (if **you** are a partnership or a joint venture), or any member (if **you** are a limited liability company).

G. Any student enrolled in a training program in connection with **your** professional services, but only when acting within the scope of his or her duties and at **your** direction.

H. Any of **your** authorized volunteer workers, other than a healthcare provider, but only while acting within the scope of their duties as such and at **your** direction.

I. **Your** legal representative if **you** die, but only with respect to his or her duties as a legal representative.

J. **Your** superintendents, administrators, directors, department heads and heads of the medical staff, but only in their capacity as such.

K. Members of **your** boards and committees, but only for conduct arising out of their duties as board or committee members and those who execute orders from **your** boards or committees, but only while in the course and scope of executing those orders.

L. **Your** trustees and governors, but only for the conduct of **your** business within the course and scope of their employment or their duties as trustees or governors.

M. Any person (other than **your** employee) or any organization while acting as **your** real-estate manager.

N. Any person or organization having proper temporary custody of **your** property if **you** die, but only:

1. With respect to liability arising out of the maintenance or use of that property; and

2. Until **your** legal representative has been appointed.

O. With respect to **mobile equipment** registered in **your** name under any motor vehicle registration law, any person is an **Insured** while driving such equipment along a public highway with **your** permission. Any other person or organization responsible for the conduct of such person is also an **Insured**, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. No person or organization, however, is an **Insured** with respect to:

1. **Bodily injury** to a co-employee of the person driving the equipment; or

2. **Property damage** to property owned by, rented to, occupied by **you**, in **your** charge, or by the employer of any person who is an **Insured** under this provision.

---

## III.  EXCLUSIONS

This insurance does not apply to any **occurrence**, **claim** or **suit** arising out of:

A. Workers Compensation and Similar Laws

Any obligation an **Insured** has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

B. Employer's Liability

1. **Bodily Injury** to an **employee** of **yours** arising out of and in the course of:

   a. Employment by **you**; or

   b. Performing duties related to the conduct of **your** business; or

   c. Any Occupational Disease; or

2. Any **claims** or **suits** brought by a spouse, child, grandparent, parent, brother, or sister of that **employee** as a consequence of paragraph 1. above.

This exclusion applies:

1. Whether **you** may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by **you** under an **insured contract**.

C. Damage to Property

**Property damage** to:

1. Property **you** own, rent, or occupy;

2. Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

3. Property loaned to **you**;

4. Personal property in **your** care, custody, or control;

5. That particular part of the real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

With respect to any **Property Damage** Coverage of this Policy:

Paragraph 2. of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you**.

Paragraphs 3., 4., 5., and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

D. War

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

E. Pollution

1. The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of **pollutants**;

2. Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or

3. Any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

This exclusion shall not apply to damages arising out of heat, smoke or fumes from a **hostile fire**. As used in this exclusion, **hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

F. Employment Practices

Any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

G. Dishonest Practices

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions; however, **we** will defend civil **claims** alleging such acts, errors or omissions until final adjudication.

H. Nuclear Hazards

Nuclear fission, nuclear fusion or radioactive contamination.

I. Asbestos

The manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

J. Sexual Misconduct

Any sexual act, including without limitation, sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation, or other verbal or physical conduct of a sexual nature. However, this exclusion does not apply to:

1. Any Specific Individual **Insured** who allegedly committed such sexual misconduct, unless it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct. If it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct we will not pay any damages.

2. Any other **Insured**, unless that **Insured**:

  a. knew or should have known about the sexual misconduct allegedly committed by the Specific Individual **Insured**, but failed to prevent or stop it; or

  b. knew or should have known that the Specific Individual **Insured** who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

We will defend **claims** alleging such acts until final adjudication.

As used in this exclusion, Specific Individual **Insured** includes employees and authorized volunteer workers while performing duties related to the conduct of **your** business.

K. ERISA

The Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

L. Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any **claims** involving humiliation or mental anguish, arising out of discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

M. **Insured** vs. **Insured**

Any **claims** made by one **Insured** against another **Insured.**

N. Other Coverage Parts

Any **claims** or **suits** brought under any Coverage Part of this Policy other than this Healthcare General Liability **Occurrence** Coverage Part.

O. Patients

Any **bodily injury** sustained by a patient of any **Insured** and any **claims** or **suits** by spouse, child, parent, grandparent, brother or sister of such patient arising out of such **bodily injury**.

P. Unfair Trade Practices

Any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restrain of trade, business or profession.

Q. U.S. Department of Health & Human Services (HHS)

Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by HHS or by any utilization or quality review organization under contract with HHS.

This exclusion does not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act.

R. Expected Or Intended Injury

Damages or harm expected or intended from an **Insured's** standpoint. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

S. **Contractual Liability**

Liability arising from **bodily injury** or **property damage** for which **you** are obligated to pay damages by reason of the assumption of liability in a contract or agreement except an **insured contract**. This exclusion does not apply to liability for damages:

1. That **you** would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

   b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

T. Damage to **Your Product**

**Property damage** to **your product** arising out of it or any part of it.

U. Damage to **Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

V. Damage to **Impaired Property** or Property Not Physically Injured

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **your product** or **your** work; or

2. A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

W. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your product**,

2. **Your work**, or

3. **Impaired property**,

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

X.  Liquor Liability

**Bodily injury** or **property damage** for which an **Insured** may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Y.  Aircraft, Auto, or Watercraft

Ownership, maintenance, use or entrustment to others of any aircraft, **auto**, or watercraft owned or operated by or rented or loaned to **you**.  Use includes operation and **loading** or **unloading**.

This exclusion shall not apply to:

1.  A watercraft while ashore on premises **you** own or rent;

2.  A watercraft **you** do not own that is:

    a.  Less than 26 feet long; and

    b.  Not being used to carry persons or property for a charge;

3.  Parking an **auto** on, or on the ways next to premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you**;

4.  Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft;

5.  The operation of any of the equipment listed in paragraph 6.b. or 6.c. of the definition of **mobile equipment**; or

6.  **Loading** or **unloading** of patients.

Z.  Mobile Equipment

1.  The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any Insured; or

2.  The use of **mobile equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

Exclusions A. through E. and T. through Z. do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner.  A separate Limit of Insurance applies to this coverage as described in Limits of Insurance (Section IV.).

AA. **Personal Injury** or **Advertising Injury**:

1.  Caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**;

2.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

3.  Arising out of oral or written publication of material whose first publication took place before the beginning of the **policy period**;

4.  Arising out of the violation of a penal statute or ordinance committed by or at the direction or with the consent of any **Insured**;

5.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6.  Arising out of a breach of contract, other than misappropriation of advertising ideas under an implied contract;

7.  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in **your advertisement**;

8.  Arising out of the wrong description of the price of goods, products or services stated in **your advertisement**; or

9.  Arising out of an offense committed by an **Insured** whose business is advertising, broad-casting, publishing or telecasting.

BB. With respect to Insuring Agreement C. Medical Expenses of this Coverage Part, **we** will not pay Medical Expenses for **bodily injury**:

1.  To any Insured;

2.  To a person hired to do work for or on behalf of **you** or a tenant of **yours**;

3.  To a person injured on that part of premises owned or rented by **you** that the person normally occupies;

4.  To a person, whether or not an employee of any **Insured**, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law;

5.  To a person injured while taking part in athletics;

6.  Included within the **products-completed operations hazard**;

7.  Excluded under Insuring Agreement A of this Coverage Part; or

8.  To any **patient**.

CC. Penalties

Any fines, penalties, punitive, exemplary, multiplied damages or the multiple portion of multiple damages.

## IV.  LIMITS OF INSURANCE

A.  The Limits of Insurance shown in Item 5 (b) of the Declarations for Healthcare General Liability and the provisions below fix the most **we** will pay regardless of the number of:

1. Insureds;
2. **Occurrences**, **claims** submitted or **suits** brought; or
3. Persons or organizations making **claims** or **suits**.

B. The Aggregate Limit is the most **we** will pay for all damages covered under this policy.

C. The **Products-Completed Operations** Limit is the most **we** will pay under Insuring Agreement A for damages because of **bodily injury** and **property damage** included in the **products-completed operations hazard**.

D. Subject to B. above, the **Personal and Advertising Injury** Limit is the most **we** will pay under Insuring Agreement B, for the sum of all damages because of all **personal and advertising injury** sustained by any one person or organization.

E. Subject to B. or C. above, whichever applies, the each **occurrence** limit is the most **we** will pay for the sum of:

1. Damages under Insuring Agreement A; and

2. Medical Expenses under Insuring Agreement C;

because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

F. Subject to E. above, the Fire Damage Limit is the most **we** will pay under Insuring Agreement A. for damages because of **property damage** to premises rented to **you** or temporarily occupied by **you** with permission of the owner, arising out of any one fire.

G. Subject to E. above, the Medical Expense Limit is the most **we** will pay under Insuring Agreement C. for all medical expenses because of **bodily injury** sustained by any one person.

H. If the **policy period** is extended for an additional period of less than 12 months, the additional period will be deemed part of the policy period for purposes of determining the Limits of Insurance.

I. All **claims** arising from continuous, related, or repeated **occurrences** shall be treated as arising out of one **occurrence**.

## V.  DEDUCTIBLE

A. The **First Named Insured** shall be responsible for the deductible amount shown in Item 5 (b) of the Declarations. Expenses **we** incur in investigating and defending **claims** and **suits** are included in the deductible. The deductible applies to each **occurrence** and the **First Named Insured** shall not insure against it without **our** written consent. All **claims** arising from a single **occurrence** or from continuous, related, or repeated **occurrences** shall be subject to one deductible.

B. The deductible aggregate shown in Item 5 (b) of the Declaration is the total amount of damages arising out of all deductibles for which the **Named Insured** shall be responsible for all **occurrences** during the **policy period**.

C. **We** may pay all or part of the deductible to settle a **claim** or **suit**. The **First Named Insured** agrees to repay **us** promptly after **we** notify the **First Named Insured** of the settlement.

## VI.  ADDITIONAL CONDITIONS APPLICABLE TO THIS COVERAGE PART

In addition to the GENERAL POLICY PROVISIONS AND CONDITIONS - Section III. CONDITIONS APPLICABLE TO ALL COVERAGE PARTS, the following Conditions shall apply to Insuring Agreements A., B. and C. of this Coverage Part:

A. Duties In the Event Of An **Occurrence**, Offense, **Claim** or **Suit**.

1. If during the **policy period**, the **First Named Insured** becomes aware of any **occurrence** or offence which may reasonably be expected to give rise to a **claim** being made against any **Insured**, the **First Named Insured** must notify **us** in writing as soon as practicable. To the extent possible, notice should include:

   a. How, when, and where the **occurrence** or offense took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the **occurrence** or offense.

2. If a **claim** or **suit** is brought against an **Insured** arising out of an **occurrence** or offense the **First Named Insured** must:

   a. Immediately record the specifics of the **claim** or **suit** and the date received;

   b. Provide **us** with written notice of the **claim** or **suit** as soon as practicable; and

   c. Immediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with the **claim** or **suit**.

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### DEFINITION OF NAMED INSURED

"Named Insured" wherever used in the policy means:

1. The **First Named Insured** shown in Item 1. of the **DECLARATIONS**, Valitas Health Services, Inc.,

2. The Named Insureds shown in the "Schedule of Named Insureds" below,

3. A newly acquired or formed **subsidiary or affiliated entity** of the **First Named Insured**, newly acquired or formed during the **policy period**. Coverage is only provided for an **occurrence** or offense which first occurs on or after the acquisition or formation of such entity, but prior to the end of the **policy period**. **We** shall have the right to audit and charge an additional premium for any such **subsidiary or affiliated entity** in accordance with **our** rules and rates, and

4. A Professional Corporation (P.C.) or Professional Association (P.A.) that is a party to a written contract with a **subsidiary** or **affiliated entity** of the **First Named Insured** during the **policy period**, but only with respect to an **occurrence** or offense arising out of correctional healthcare services provided to correctional facilities under such written contract.

The **First Named Insured** is the appointed and irrevocable agent for all Named Insureds, including, for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment or return of any premium under this policy.

As used herein, **subsidiary or affiliated entity** means a subsidiary or affiliated entity of the **First Named Insured**, other than a joint venture or partnership:

1. that is in the primary business of providing correctional healthcare, and

2. for which the **First Named Insured**:

   a. has more than a 50% ownership interest in such entity, or

   b. exercises management or financial control of such entity, such that the **First Named Insured** has or controls the rights to elect or appoint more than 50% of the directors or officers of such entity or maintains a majority ownership interest of more than 50% of the outstanding securities representing the present right to vote in the election of directors or officers of such entity.

### SCHEDULE OF NAMED INSUREDS

Valitas Health Services, Inc.
Corizon, Inc.
Corizon Health, Inc.
Corizon Health of New Jersey, LLC
America Service Group Inc.
Prison Health Services, Inc.
Prison Health Services of Indiana, LLC
Correctional Health Services, Inc.
Correctional Health Services, LLC
EMSA Correctional Care, Inc.
EMSA Military Services, Inc.
EMSA Government Services, Inc.
EMSA Limited Partnership
Secure Pharmacy Plus, Inc.
Secure Pharmacy Plus, LLC
PHS Community Care, LLC
CHS Medical Services, P.C. (NJ)
Quality Correctional Care of New Jersey, P.C. (fka CHS Medical Services, P.C. (NJ))
PHS Medical Services, P.C. (NY)
Correctional Medical Associates of New York, P.C. (fka PHS Medical Services, P.C.)
PHS Dental Services, P.C. (NY)
Correctional Dental Associates of New York, P.C. (fka PHS Dental Services, P.C.)
PHS of Kansas, P.A.
PHS Professional Medical Services, P.C. (TN, MN)
Quality Correctional Care of Tennessee, P.C. (fka PHS Professional Medical Services, P.C.)
PHS of North Carolina Medical Services, P.C.
PHS Regional Medical, P.C. (NY)
Prison Medical, P.A. (TX)
PHS Medical Corporation (CA)
Comprehensive Correctional Care, P.C. (CA) (fka PHS Medical Corporation)
Young S. Kim, M.D.P.C. dba PHS of IL Medical Services
Saavedra, M.D. PHS of Nevada Medical Services, P.C.
Quality Correctional Care of Michigan, P.C. (fka PHS of Michigan, PC)
PHS of Michigan, PC
Ivor Garlick, MD, PC & Correctional Dental Associates
Correctional Dental Associates of Arkansas, PA
Correctional Physician Associates of Arkansas, P.A.
Correctional Medical Associates of Greater New York, P.C. (incorporation in process)
Valitas Equity LLC
Valitas, Inc.
Correctional Medical Services, Inc.
Correctional Medical Services of Illinois, Inc.
Correctional Medical Services of Delaware, Inc.
PharmaCorr, LLC
Valitas Behavioral Services, Inc.
Genesis Behavioral Services, Inc.
Valitas Behavioral Services of Delaware, Inc.

All other terms, conditions and exclusions of the policy remain unchanged.

**Authorized Representative
or countersignature (where required by law)**

This endorsement, effective 12:01 AM: January 1, 2014

Forms a part of policy no.: 6797142

Issued to: VALITAS HEALTH SERVICES, INC.

By: LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Section **II. WHO IS AN INSURED** of the HEALTHCARE GENERAL LIABILITY OCCURRENCE COVERAGE PART are amended by adding the following:

[The following are **Insureds** under this Coverage Part:]

Any person or organization to whom **you** are obligated by virtue of a written contract to provide indemnification or insurance as afforded by this Policy, but only with respect to liability arising out of operations conducted by **you** or on **your** behalf.

In the event that the Limits of Insurance provided by this Policy exceed the Limits of Insurance required by the written contract, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis, unless the written contract with additional insured specifically requires that this insurance be primary and non-contributory with any other insurance carried by the additional insured. In such case, this insurance shall be primary and non-contributory with any other insurance carried by the additional insured.

In the event of payment under the Policy, **we** waive our right of subrogation against a person or organization included as an Insured on this endorsement where the **Named Insured** has waived liability of such person or organization as part of a written contractual agreement between the **Named Insured** and the organization entered into prior to the **occurrence** or offense.

In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give **us** prompt notice of any **occurrence** which may result in a **claim**, forward all legal papers to **us**, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions. Failure to comply with this provision may, at **our** option, result in the **claim** or **suit** being denied.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

*Brenda S. Osborne*

**Authorized Representative
or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### SEPARATE AGGREGATE LIMIT OF LIABILITY
### (STATE OF IDAHO DOC) ENDORSEMENT

The policy is amended as follows:

Item B. of Section IV. LIMITS OF INSURANCE of the HEALTHCARE GENERAL LIABILITY is deleted in its entirety and replaced with the following Items B. and B (1):

B.      The Aggregate Limit shown in Item 5. (b) on the DECLARATIONS is the most **we** will pay for all damages covered under this policy except as provided in Item B. (1) below.

B. (1)  The Aggregate (Idaho DOC) Limit shown below is the most **we** will pay for all damages covered under this policy with respect to the **First Named Insured's** contract with the State of Idaho Department of Corrections.

Aggregate (Idaho DOC) Limit: $3,000,000

All other terms, conditions and exclusions of the policy remain unchanged.

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

## AMENDATORY ENDORSEMENT - CITY OF NEW YORK

The policy is amended as follows:

Coverage under this policy is excess over any indemnification provided by The City of New York to **you** for any **claim** or **suit** resulting from an **occurrence** or offense arising from the actions of any **Insured** at any of the Rikers Island correctional facilities in the state of New York.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### DEFINITION OF EMPLOYEE AMENDATORY ENDORSEMENT

The policy is amended as follows:

Definition G. Employee, of Section I. Definitions Applicable To General Policy Provisions And Conditions And All Coverage Parts, of the GENERAL POLICY PROVISIONS AND CONDITIONS is deleted and replaced with the following:

G. **Employee** means a person paid by **you** in connection with **your** business. It includes a **leased worker** but does not include a **temporary worker** or independent contractor unless such temporary worker or independent contract is a healthcare provider.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

*Brenda S. Osborne*

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### EMPLOYEE BENEFIT ADMINISTRATION LIABILITY ENDORSEMENT
### CLAIMS MADE

**NOTICE: THE COVERAGE PROVIDED BY THIS ENDORSEMENT IS LIMITED TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THIS ENDORSEMENT PERIOD. VARIOUS OTHER PROVISIONS RESTRICT COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER.**

Endorsement Period: From: 01/01/2014 To: 01/01/2015

The DECLARATIONS to include the following:

Item 3. Retroactive Date - Employment Benefit Administration Liability: 07/30/1985

Item 5. Limits of Insurance

(b) Healthcare General Liability
Wrongful Act Limit $1,000,000

The Wrongful Act Limit is included in the Healthcare General Liability Aggregate Limit.

The HEALTHCARE GENERAL LIABILITY COVERAGE PART is amended to include the following:

## I. INSURING AGREEMENTS

**Administration Liability**

**We** will pay all sums which **you** become legally obligated to pay as damages resulting from **your wrongful act** or that of any other person for whose acts **you** are legally liable, while acting solely within the **administration** of **your employee benefit programs**. The **wrongful act** must take place on or after the **retroactive date** and before the end of the endorsement period. A claim for a **wrongful act** must first be made during the endorsement period or during any applicable extended reporting period.

## II. EXCLUSIONS

The following exclusions shall apply to the coverage provided in this Endorsement.

**We** will not defend or pay any **claims** against **you**:

A. For any liability resulting from a **wrongful act** of which **you** had knowledge prior to the effective date of this endorsement, if **you** could reasonably foresee a claim might arise.

B. For **bodily injury** to or sickness, disease or death of any person, or for injury to or destruction of any tangible property, including the loss of use thereof;

C. For any claim based upon the failure or inability to fund any **employee benefit programs**, or any claim for failure of performance of contract by any insurer;

D. For any class action **lawsuit** or purported class action **lawsuit** alleging any **wrongful act** in **administration**;

E. For any claim for plan benefits, except for a claim solely alleging a **wrongful act** in **administration**; or

F. For any claim based upon failure of any stock to perform as represented or advice given by **you** to an **employee** to participate or not to participate in any stock plan.

## IV. LIMITS OF INSURANCE

A. The **wrongful act** limit stated in this endorsement is the most **we** shall pay for all damages arising out of any one **wrongful act.**

B. All claims arising from continuous, related, or repeated **wrongful acts** shall be treated as arising out of the first **wrongful act.**

## V. DEDUCTIBLE

A. If a Deductible applies to this Policy, then **you** shall be responsible for the deductible amount stated in the Additional Declarations. The deductible applies to each **wrongful act** and **you** may not insure against it.

B. All claims arising from a single **wrongful act** or continuous, related, or repeated **wrongful acts** shall be subject to one deductible. The terms of this policy, including those with respect to notice of a claim or **wrongful act** and **our** rights to investigate and negotiate any such claim or **suit**, apply regardless of the deductible. **Your** bankruptcy, insolvency, or inability to pay the deductible shall not increase **our** obligations under this endorsement.

## VI. OPTIONAL EXTENDED REPORTING PERIOD

A. If **you** cancel or do not renew this coverage, **you** shall have the right to purchase an Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement, beginning with the end of the endorsement period. Any extending reporting period that is purchased will start when the endorsement period set forth in the Additional Declarations ends.

B. The additional premium for and the term of the Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement shall be in accordance with the rates and rules in effect at the time of the purchase. **You** do not have the right to purchase an Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement if **we** cancel for non-payment of premium.

C. The Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement applies only to claims first made against the Insured during the Optional Extended Reporting Period and arising from **wrongful acts** which take place on or after the **retroactive date** and before the end of the endorsement period. The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for claims under the Endorsement. **Claims** first made during the Optional Extended Reporting Period shall be deemed to have been made on the last day of the **policy period**.

D. To obtain an Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement, **you** must request it in writing within sixty (60) days after the endorsement period ends and pay the premium due. If **we** do not receive the written request and payment

within sixty (60) days after the endorsement period ends, **you** may not exercise this right at a later date. The Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement cannot be canceled.

E.  The insurance provided under the Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement is excess over any other valid and collectible insurance that begins or continues in effect after the Employee Benefit **Administration** Liability Optional Extended Reporting Period Endorsement is effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

F.  **Our** offer of terms, conditions or premium different from the expiring Policy or Coverage Part shall not be considered a refusal for failure to renew this insurance.

The GENERAL POLICY PROVISIONS AND CONDITIONS is amended to include the following:

## I.  DEFINITIONS

**A.  Administration** means performing non-fiduciary administrative acts or tasks of:

1. Counseling **employees** with respect to **Employee Benefit Programs**;

2. Interpreting plan documents of **Employee Benefit Programs**;

3. Filling out records in connection with **Employee Benefit Programs**; or

4. Effecting enrollment, termination or cancellation of **employees** under **Employee Benefit Programs.**

**B.  Employee Benefit Programs** means:

1. Group life insurance, group accident or health insurance, profit sharing plans, pension plans, **employee** stock subscription plans, workers compensation, unemployment insurance, social security benefits, disability benefits; and

2. Any other **employee benefit programs** instituted after the effective date of this endorsement, provided **we** are notified by **you** within thirty (30) days after the institution of such benefit program(s).

**C.  Wrongful Act** means any breach of duty, neglect, error, misstatement, misleading statement, or omission.

## II.  DEFENSE AND OTHER PAYMENTS UNDER THIS POLICY - ALL COVERAGE PARTS

A.  When **we** have the duty to defend any **suit, we** will defend such **suit** against the **Insured** for a covered **claim** seeking damages on account of a **wrongful act** even if such **claim** or **suit** is groundless, false or fraudulent. **We** have the right to investigate, defend, appoint an attorney to defend and settle the **suit** as **we** deem expedient.

All other terms, conditions and exclusions of the Policy remain unchanged.

_Brenda S. Osborne_

**Authorized Representative**
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

## PENALTIES AMENDATORY ENDORSEMENT

The policy is amended as follows:

Any exclusion in this policy excluding coverage for Penalties is hereby deleted and replaced by the following.

Penalties

Any fines or penalties.

All other terms, conditions and exclusions of the policy remain unchanged.

_Brendan J. Osborne_

**Authorized Representative**
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

## PROFESSIONAL SERVICES EXCLUSION

The policy is amended as follows:

The following exclusion is added to Section III. EXCLUSIONS of the HEALTHCARE GENERAL LIABILITY COVERAGE PART.

[This insurance does not apply to any **occurrence, claim** or **suit** arising out of:]

This insurance does not apply to any liability arising out of **professional services.**

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative
or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:**  January 1, 2014

**Forms a part of policy no.:**          6797142

**Issued to:**  VALITAS HEALTH SERVICES, INC.

**By:**  LEXINGTON INSURANCE COMPANY

### PRODUCTS LIABILITY (BODILY INJURY) EXCLUSION

The policy is amended as follows:

The following exclusion is added to Section III. EXCLUSIONS of the HEALTHCARE GENERAL LIABILITY COVERAGE PART.

[This insurance does not apply to any **occurrence**, **claim** or **suit** arising out of:]

This insurance does not apply to any liability for **bodily injury** arising out of the **products-completed operations hazard.**

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

# EXCLUSION - VIOLATION OF STATUTES IN CONNECTION WITH SENDING, TRANSMITTING OR COMMUNICATING ANY MATERIAL OR INFORMATION

This insurance does not apply to any loss, injury, damage, claim, suit, cost or expense arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

To the extent any coverage may otherwise be available under this Policy, the provisions of this Exclusion shall supercede the same and exclude such coverage.

All other terms, conditions and exclusions of this policy remain unchanged.

_Brenda V. Osborne_

**Authorized Representative**
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNGUS EXCLUSION**

This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** or any other loss, injury, damage, cost or expense, including but not limited to, losses, costs or expense related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a. Any **fungus(i)**, **mold(s)**, mildew or yeast, or

b. Any **spore(s)**, or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast, or

c. Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **fungus(i)**, **mold(s)**, mildew or yeast, or

d. Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **fungus(i)**, **mold(s)**, mildew, yeast, or **spore(s)** or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

For the purposes of this endorsement, the following definitions apply to the Policy:

**Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including **molds**, rusts, mildews, smuts, and mushrooms.

**Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **fungi** that produce molds.

**Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms or microorganisms.

All other terms, conditions and exclusions of the policy remain unchanged.

*Brenda J. Osborne*

**Authorized Representative**
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### INDIANA AMENDATORY ENDORSEMENT
### (Definition of Pollutants)

When a claim or **Suit** is brought against an **Insured** in the state of Indiana and/or Indiana law applies, this policy is amended as follows:

The definition of **Pollutants** in this policy or in any endorsement to this policy is deleted in its entirety and replaced with the following:

**Pollutants** means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils, gasoline, butane, propane, natural gas, and other fuels, brake fluid, transmission fluid, and other hydraulic fluids, ethylene glycol, methyltertbutylether (MTBE), methanol, ethanol, isopropyl alcohol, and propylene glycol, and other fuel and antifreeze additives, grease, tar, petroleum distillates, and other petroleum products and petroleum hydrocarbons, carbon monoxide, and other exhaust gases, stoddard solvent, mineral spirits, and other solvents, chromium compounds, emulsions/emulsifiers, naphtha tetrachloroethylene (PCE), perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, methyl isobytyl ketone, methyl ethal ketone, n-butyl acetate, 2-butoxyethanol, hexylene glycol, peroxides, freon, polychlorinated biphenyl (PCB), CFC113, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, barium, 1,2-Dichloroethylene, ethylene dichloride, dichloromethane, methylene chloride, ethylbenzene, lead, Mercury, Selenium, sulfate, xylene, silica, sewage, and industrial waste materials, and all substances, constituents, derivatives or degradative byproducts, or additives specifically listed, identified, or described by one or more of the following references:

i. Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions),

ii. Agency for Toxic Substances And Disease Registry ToxFAQsr,

iii. Clean Air Act's List of 188 Air Toxics And Diesel Particulate Matter,

iv. U.S. Environmental Protection Agency EMCI Chemical References Complete Index,

v. U.S. Environmental Protection Agency Persistent, Bioaccumulative, and Toxic Chemicals List,

vi. Indiana Department of Environmental Management, Remediation Closure Guide, March 22, 2012 edition, Table A-6 Screening Level Summary Table - 2012, and

vii. Indiana Department of Environmental Management, Risk Integrated System of Closure Technical Guide, Default Closure Tables, January 31, 2006 Appendix 1 (Revised May 1, 2009)

Substances identified as examples above or by the referenced lists also include materials or substances to be discarded, recycled, reconditioned or reclaimed.

This definition of **Pollutants** applies whether or not such solid, liquid, gaseous, bacterial, fungal, electromagnetic or thermal irritant or contaminant or substance is your product or products used by you or for you, and/or is an integral part of or incidental to your business, operations, premises, site or locations or has any function in your business, operations, premises, site or locations.

For the purpose of this endorsement, **Suit**, **Insured** and **Pollutants** shall have the applicable meaning, in accordance with the terms of this policy, whether or not such term is in quotation marks or bolded.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:**       6797142

**Issued to:**   VALITAS HEALTH SERVICES, INC.

**By:**   LEXINGTON INSURANCE COMPANY

## ECONOMIC SANCTIONS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

Insurer shall also mean "we", "us", "our", or the "Company", whichever is applicable, in accordance with the terms of this Policy, whether or not such term is in quotation marks or bolded.

All other terms and conditions of the policy remain the same.

*Brendan J. Osborne*

**Authorized Representative**

©2013 American International Group, Inc.
All Right Reserved.

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL POLICY PROVISIONS AND CONDITIONS

The last Paragraph of Section **IV. CANCELLATION** beginning with the words, "The time of the surrender..." and ending with the words, "...condition of cancellation." is deleted in its entirety and replaced with the following:

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period.** Delivery of such written notice either by the First Named Insured or by **us** shall be the equivalent to mailing. If the First Named Insured cancels, we shall retain an earned premium which shall be the greater of the customary short-rate procedure or the minimum earned premium of ▮▮▮▮▮. If **we** cancel, unearned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

All other terms, conditions and exclusions of the policy remain unchanged.

**Authorized Representative**
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED (COUNTY OF ALAMEDA, CA) ENDORSEMENT

The Policy is amended as follows:

**Schedule - Name Of Additional Insured:**

County of Alameda of California, its Board of Supervisors, the individual members thereof, and all county officers, agents, employees and representatives

Section **II. WHO IS AN INSURED** of the MEDICAL GROUP GENERAL LIABILITY OCCURRENCE COVERAGE PART are amended by adding the following:

The organization shown in the Schedule above is included as additional insured if **you** are obligated by virtue of a written contract to provide indemnification or insurance as afforded by this Policy, but only with respect to liability arising out of operations conducted by **you** or on **your** behalf.

In the event that the Limits of Insurance provided by this Policy exceed the Limits of Insurance required by the written contract, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis, unless the written contract with additional insured specifically requires that this insurance be primary and non-contributory with any other insurance carried by the additional insured. In such case, this insurance shall be primary and non-contributory with any other insurance carried by the additional insured.

In the event of payment under the Policy, **we** waive our right of subrogation against a person or organization included as an Insured on this endorsement where the **Named Insured** has waived liability of such person or organization as part of a written contractual agreement between the **Named Insured** and the organization entered into prior to the **occurrence** or offense.

In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give **us** prompt notice of any **occurrence** which may result in a **claim**, forward all legal papers to **us**, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions. Failure to comply with this provision may, at **our** option, result in the **claim** or **suit** being denied.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED (SPECIFIC) ENDORSEMENT

This endorsement modifies insurance provided by the policy:

**Schedule - Name Of Additional Insured:**

Cal East Industrial Investors, LLC
LaSalle Investment Management, Inc.
Colliers Turley Martin Tucker
State of Michigan
State of Idaho/Idaho Department of Corrections

The organization shown in the Schedule above is included as additional insured if **you** are obligated by virtue of a written contract to provide indemnification or insurance as afforded by this Policy, but only with respect to liability arising out of operations conducted by **you** or on **your** behalf.

In the event that the Limits of Insurance provided by this Policy exceed the Limits of Insurance required by the written contract, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis, unless the written contract with additional insured specifically requires that this insurance be primary and non-contributory with any other insurance carried by the additional insured. In such case, this insurance shall be primary and non-contributory with any other insurance carried by the additional insured.

In the event of payment under the Policy, **we** waive our right of subrogation against a person or organization included as an Insured on this endorsement where the **Named Insured** has waived liability of such person or organization as part of a written contractual agreement between the **Named Insured** and the organization entered into prior to the **occurrence** or offense.

In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give **us** prompt notice of any **occurrence** which may result in a **claim**, forward all legal papers to **us**, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions. Failure to comply with this provision may, at **our** option, result in the **claim** or **suit** being denied.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED (STATE OF ARIZONA DOC) ENDORSEMENT

This endorsement modifies insurance provided by the policy:

**Schedule - Name Of Additional Insured:**

The State of Arizona, its departments, agencies, boards, commissions and its officers, officials, agents, and employees, but *only* with respect to Correctional Healthcare to State of Arizona Department of Corrections (Direct Contract No. 130051DC - Privatization of All Correctional Health Services Request for Proposal (RFP) No. ADOC12-00001105 - Privatization of All Correctional Health Services)

The organization shown in the Schedule above is included as additional insured if **you** are obligated by virtue of a written contract to provide indemnification or insurance as afforded by this Policy, but only with respect to liability arising out of operations conducted by **you** or on **your** behalf.

In the event that the Limits of Insurance provided by this Policy exceed the Limits of Insurance required by the written contract, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis, unless the written contract with additional insured specifically requires that this insurance be primary and non-contributory with any other insurance carried by the additional insured. In such case, this insurance shall be primary and non-contributory with any other insurance carried by the additional insured.

In the event of payment under the Policy, **we** waive our right of subrogation against a person or organization included as an Insured on this endorsement where the **Named Insured** has waived liability of such person or organization as part of a written contractual agreement between the **Named Insured** and the organization entered into prior to the **occurrence** or offense.

In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give **us** prompt notice of any **occurrence** which may result in a **claim**, forward all legal papers to **us**, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions. Failure to comply with this provision may, at **our** option, result in the **claim** or **suit** being denied.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative
or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### DISCRIMINATION / HUMILIATION AMENDATORY (STATE OF ARIZONA DOC) ENDORSEMENT

This endorsement modifies insurance provided by the policy:

EXCLUSION L. DISCRIMINATION/HUMILIATION of Section III. EXCLUSION of the HEALTHCARE GENERAL LIABILITY OCCURRENCE COVERAGE PART is deleted and replaced with the following:

[This insurance does not apply to any **occurrence**, **claim** or **suit** arising out of:]

L. Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any **claims** involving humiliation or mental anguish, arising out of discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

However, this exclusion does not apply to any liability with respect to Correctional Healthcare to State of Arizona Department of Corrections (Direct Contract No. 130051DC - Privatization of All Correctional Health Services Request for Proposal (RFP) No. ADOC12-00001105 - Privatization of All Correctional Health Services).

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:** January 1, 2014

**Forms a part of policy no.:** 6797142

**Issued to:** VALITAS HEALTH SERVICES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### SEXUAL MISCONDUCT AMENDATORY (STATE OF ARIZONA DOC) ENDORSEMENT

The policy is amended as follows:

The following applies *only* with respect to operations of Correctional Healthcare to State of Arizona Department of Corrections (Direct Contract No. 130051DC - Privatization of All Correctional Health Services Request for Proposal (RFP) No. ADOC12-00001105 - Privatization of All Correctional Health Services):

EXCLUSION J. SEXUAL MISCONDUCT of Section III. EXCLUSION of the HEALTHCARE GENERAL LIABILITY OCCURRENCE COVERAGE PART is deleted and replaced with the following:

[This insurance does not apply to any **occurrence, claim** or **suit** arising out of:]

Any sexual act, including without limitation, sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation, or other verbal or physical conduct of a sexual nature.

However, this exclusion does not apply to:
1. Any Specific Individual **Insured** who allegedly committed such sexual misconduct, unless it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct. If it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct **we** will not pay any damages.

2. Any other **Insured**, unless that **Insured**:

   a. knew about the sexual misconduct allegedly committed by the Specific Individual **Insured**, but failed to prevent or stop it, or

   b. knew that the Specific Individual **Insured** who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

**We** will defend **claims** alleging such acts until final adjudication.

As used in this exclusion, Specific Individual **Insured** includes employees and authorized volunteer workers while performing duties related to the conduct of **your** business.

All other terms, conditions and exclusions of the policy remain unchanged.

MNSCPT (12/13)

*Brenda J. Osborne*

**Authorized Representative**
**or countersignature (where required by law)**

**This endorsement, effective 12:01 AM:**  January 1, 2014

**Forms a part of policy no:**       6797142

**Issued to:**  VALITAS HEALTH SERVICES, INC.

**By:**  LEXINGTON INSURANCE COMPANY

## TERRORISM EXCLUSION - CERTIFIED AND NON-CERTIFIED ACTS

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") as follows:

(1) ACT OF TERRORISM. -
 (A) CERTIFICATION. - The term "act of terrorism" means any act that is certified by the Secretary (of the Treasury), in concurrence with the Secretary of State, and the Attorney General of the United States -
  (i) to be an act of terrorism;
  (ii) to be a violent act or an act that is dangerous to -
   (I) human life;
   (II) property; or
   (III) infrastructure;
  (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
   (I) an air carrier or vessel (described in TRIA); or
   (II) the premises of a United States mission; and
  (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
 (B) LIMITATION. - No act shall be certified by the Secretary as an act of terrorism if -
  (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
  (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
 (C) DETERMINATIONS FINAL. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
 (D) NONDELEGATION. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

This insurance also does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of a "non-certified act of terrorism", which means any act that is not an "act of terrorism", as defined above, that
 (1) involves the use of force or violence against person or property;
 (2) is dangerous to human life or property; or
 (3) interferes with or disrupts an electronic or communication system; and
 (4) is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:
  (A) a government;
  (B) the civilian population of a country, state or community; or
  (C) to disrupt the economy of a country, state or community.

All other terms, conditions and exclusions of the policy remain unchanged.

*Brendan J. Osborne*

**Authorized Representative**
or countersignature (where required by law)

96554 (4/08)
HC0505