# EXHIBIT B

**Fill in this information to identify the case:**

Debtor _____Tehum Care Services, Inc._____

United States Bankruptcy Court for the: _____Southern_____ District of __Texas__
(State)

Case number _____23-90086_____

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies or any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

AIG Member Companies  listed on attached addendum
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes.   From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| See summary page | |

Contact phone  212-458-7101

Contact email  kevin.larner@aig.com

**(see summary page for notice party information)**

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No

☐ Yes.   Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing? _____

239008623081100000000000002

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?**  $ 13951361.00 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

insurance

9. **Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature or property:**

☐ Real estate: If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:  cash held by creditor

**Basis for perfection:**  cash held by creditor

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ 13951361.00

**Amount of the claim that is secured:**  $ 13951361.00

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amount should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____

11. **Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: Cash held by creditor

2390086230811000000000002

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date ___08/11/2023___
           MM / DD / YYYY

___/s/Michael S. Davis___
           Signature

**Print the name of the person who is completing and signing this claim:**

Name          ___Michael S. Davis___
              First name          Middle name          Last name

Title         ___Attorney___

Company       ___Zeichner Ellman and Krause LLP___
              Identify the corporate servicer as the company if the authorized agent is a servicer.

Address

Contact phone _____          Email _____

2390086230811000000000002

# KCC ePOC Electronic Claim Filing Summary

For phone assistance: Domestic (866) 967-0491 | International 001-424-236-7244

**Debtor:**

23-90086 - Tehum Care Services, Inc.

**District:**

Southern District of Texas, Houston Division

| | |
|---|---|
| **Creditor:**<br><br>AIG Member Companies  listed on attached addendum<br>AIG Member Companies  Attn K. Larner<br>28 Liberty Street<br><br>New York, New York, 10005<br>United States<br>**Phone:**<br>212-458-7101<br>**Phone 2:**<br><br>**Fax:**<br><br>**Email:**<br>kevin.larner@aig.com | **Has Supporting Documentation:**<br>    Yes, supporting documentation successfully uploaded<br>**Related Document Statement:**<br><br>**Has Related Claim:**<br>    No<br>**Related Claim Filed By:**<br><br>**Filing Party:**<br>    Authorized agent |

**Disbursement/Notice Parties:**

Michael S. Davis, Esq.

Zeichner Ellman and Krause LLP

1211 Avenue of the Americas

New York, New York, 10036
United States
**Phone:**
914-649-9447
**Phone 2:**

**Fax:**

**E-mail:**
mdavis@zeklaw.com

| | |
|---|---|
| **Other Names Used with Debtor:** | **Amends Claim:**<br>No<br>**Acquired Claim:**<br>No |
| **Basis of Claim:**<br>insurance | **Last 4 Digits:**<br>No  **Uniform Claim Identifier:** |
| **Total Amount of Claim:**<br>13951361.00 | **Includes Interest or Charges:**<br>No |
| **Has Priority Claim:**<br>No | **Priority Under:** |
| **Has Secured Claim:**<br>    Yes: 13951361.00 | **Nature of Secured Amount:**<br>    Other |
| **Based on Lease:**<br>No | Describe: cash held by creditor<br>**Value of Property:** |
| **Subject to Right of Setoff:**<br>    Yes, Cash held by creditor | 13951361.00<br>**Annual Interest Rate:** |
| | **Arrearage Amount:** |
| | **Basis for Perfection:**<br>    cash held by creditor |
| | **Amount Unsecured:** |

VN: A2199CE97805DB4BEEE7D6D077B279BE

**Submitted By:**
Michael S. Davis on 11-Aug-2023 9:56:45 a.m. Eastern Time
**Title:**
Attorney
**Company:**
Zeichner Ellman and Krause LLP

security

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC | Case No 23-90086 |
| Debtor. | |

## ADDENDUM TO
## PROOF OF CLAIM #2 OF THE AIG MEMBER COMPANIES

American Home Assurance Company, AIG Assurance Company, AIG Specialty Insurance Company, AIG Property Casualty Company, Commerce and Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Co., Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, The Insurance Company of the State of Pennsylvania and certain other entities related to AIG Property Casualty Inc. (collectively, the "AIG Member Companies") that conducted the business transactions described herein with VALITAS HEALTH SERVICES, INC, (Valitas") et al to the extent the Debtor herein TEHUM CARE SERVICES, INC. and its predecessors and affiliates (collectively, "Debtor") has responsibility for or an interest in such business transactions, AIG Member Companies hereby submit this proof of claim (the "Proof of Claim").

## A.      SECURED CLAIM

Annexed hereto as **Exhibit A** is a certain Payment Agreement dated effective January 1, 2012 between AIG Member Companies on-the-one-hand and Valitas on-the-other-hand, setting out Payment Obligations of Valitas, of certain affiliates of Valitas, and (to the extend applicable) of the Debtor herein TEHUM CARE SERVICES, INC and its predecessors and affiliates. The amount of that Payment Obligation is disputed and is currently subject to an on-going arbitration commenced by CHX TX d/b/a YesCare ("CHX"), asserting that it is the successor to Valitas. (The Payment Agreement annexed hereto, together with its addenda, schedules, amendments, and renewals are referred to collectively herein as the "Payment Agreement.")

AIG Member Companies hold cash as collateral in the amount of $13,951,361 (the "Collateral") as of March 31, 2023, which CHX claims has been assigned to it. AIG Member Companies assert a secured claim for the full amount of all Payment Obligations under the Payment Agreement, secured by the Collateral, plus any other amount that may be owed to the AIG Companies by Debtor.

As of February 2023, unpaid liquidated reimbursable losses due as Payment Obligations were tabulated to be $823,575. This amount continues to grow daily as workers compensation claims continue to be paid. The total amount of the Payment Obligations is disputed and subject to the pending arbitration commenced by CHX.

**B. POTENTIAL UNLIQUIDATED COMPONENTS OF THIS PROOF OF CLAIM.**

       1.     **Unmatured and/or Unliquidated Claim**.  The Debtor entered into certain other agreements with the AIG Member Companies and may be obligated to pay to among other things, audit or other premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and related costs that are not readily calculable at this time.  Certain of such amounts remain unmatured, contingent and/or unliquidated, and such amounts constitute an unliquidated claim against the Debtor.  Should any such amounts become liquidated or become mature such amounts shall become a liquidated claim.  The AIG Member Companies expressly reserve the right to amend or supplement this Proof of Claim for whatever reason, including without limitation, for the purpose of filing additional claims or to specify the amount of the AIG Member Companies' unmatured, contingent and/or unliquidated claim as they become matured and/or liquidated.

       2.     Annexed hereto as **Exhibit B** is a list of insurance policies frorm which this unliquidated claim may be derived.In connection with the foregoing, the AIG Member Companies expressly preserve all rights at law or equity with respect to such funds or such rejection damages, including, without limitation, the right to (i) obtain an accounting and audit, (ii) collect applicable statutory, compensatory and punitive damages, and (iii) obtain payment of obligations from affiliates, successors, officers and/or directors of the Debtor or from present or former affiliated companies as allowed by applicable law.

       3.     **Other Insurance or Services**.  To the extent the AIG Member Companies provide or provided any other or different insurance (including excess coverages or renewals of any insurance), or other services to the Debtor, either included within or in addition to the insurance policies listed on Exhibit B, the AIG Member Companies hereby assert a claim for all obligations of the Debtor to the AIG Member Companies arising thereunder, including, without limitation, premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and other costs arising from such transactions, or from funds advanced or to be advanced on the Debtor's behalf.  Additionally, the AIG Member Companies reserve the right to amend this proof of claim to assert further amounts due or particulars in connection therewith.

       4.     **Bond Obligations**.  Claim is made to the extent of any surety bonds outstanding if any, where the Debtor agreed to pay to the AIG Member Companies, among other things, any and all loss and expense, including, without limitation, attorneys' fees, incurred by the AIG Member Companies by reason of having issued any such bonds, and losses incurred as a result of the issuance of any bonds.  The amount presently due the AIG Member Companies with respect to any bonds is unliquidated and untabulated.

       5.     **Quantum Meruit**.  To the extent the Debtor received a benefit from service or product provided by the AIG Member Companies, Debtor is obligated to pay the AIG Member Companies for the value of the benefits received.

       6.     **Joint Liability**.  Should Debtor be liable to the AIG Member Companies (or any of them) for any obligations of any other entity, including without limitation CHX TX (d/b/a YesCare), this Proof of Claim asserts such claim, with prejudice to the obligation of such entity.

7. **Indemnity Obligations**. In the event the Debtor has entered into any agreement with the AIG Member Companies pursuant to which Debtor has a duty to indemnify the AIG Member Companies, a claim is made herein for such right of indemnity.

8. **Other**. In connection with the foregoing, Debtor also may be liable to the AIG Member Companies by virtue of relevant principles of contract and common law relating to, among other things, subrogation, suretyship, indemnification or contribution.

9. **Right of Recoupment**. The AIG Member Companies assert the right to use funds paid to them to recoup obligations of the Debtor arising therefrom.

10. **Security**. To the extent the AIG Member Companies hold any cash or other collateral as security for its claim, regardless of whether such cash or collateral is property of the Debtor's estate, the AIG Member Companies assert a secured claim and/or a right of setoff and reserve its rights to collect against same by recoupment and/or setoff. Alternatively, or in addition, to the extent the AIG Member Companies hold an interest in any property of the Debtor, the AIG Member Companies assert a security interest in same to the extent of applicable law.

11. **Interest**. The AIG Member Companies claim all rights to claim interest to the extent permitted by law, including post-petition interest to the extent such interest is secured. To the extent this claim or any portion hereof, is unliquidated, appropriate interest (if any) remains unliquidated at this time. In preparing any tabulation of a liquidated claim, we will endeavor to include a tabulation of applicable interest to the extent dates of accrual of obligations can be readily ascertained. The AIG Member Companies reserve the right to amend such calculations and to claim additional interest as facts are learned, data compiled, and/or unliquidated claims become liquidated.

12. **Administrative Expense**. To the extent the AIG Member Companies' claim against the Debtor relates to the post-petition period the AIG Member Companies are entitled to administrative priority under 11 U.S.C. §§ 503(b)(1) and 507(a)(2). Therefore, through this Proof of Claim, the AIG Member Companies also assert an administrative expense claim for all services provided, risks insured or occurrences occurring after the Petition Date, all or a portion of which may be set forth in this Proof of Claim. To the extent any amounts set forth herein are entitled to administrative expense priority, the AIG Member Companies hereby request immediate allowance and payment of its administrative expense. Any failure by the AIG Member Companies to specifically assert an administrative expense claim against the Debtor's estate shall not be deemed a waiver by the AIG Member Companies of its right to payment of an administrative expense, said right being asserted herein and fully preserved.

13. **Arbitration**. The dispute concerning the amount of this claim is currently pending in arbitration. Nothing herein is intended to supersede the jurisdiction of such arbitration. The filing of this Proof of Claim is not intended to waive any right to arbitration. The AIG Member Companies expressly reserve any right to arbitration with respect to this claim or any other dispute arising in connection with the Debtor. To the extent of any pre-existing arbitration agreement between the AIG Member Companies and Debtor, this Court's jurisdiction should be limited to referring such dispute to arbitration and enforcing any arbitration award.

14. **No Consent to Jurisdiction; No Waiver of Jury Trial**.  The filing of this Proof of Claim is not and shall not be deemed or construed as: (i) consent to jurisdiction of this Court with respect to proceedings, if any, involving the duties and obligations of the AIG Member Companies; (ii) a waiver or release of the AIG Member Companies' right to a trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal, public, or private rights in any case, controversy or proceeding related hereto, notwithstanding any designation of such matters as "core" proceedings pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (iii) a consent to this Court's entry of final orders or judgments with respect to the Proof of Claim or any other matter involving the AIG Member Companies; (iv) a waiver of the AIG Member Companies' right to have any and all orders and judgments of this Court reviewed *de novo* by a court duly authorized under Article III of the United States Constitution; or (v) a waiver of the AIG Member Companies' right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in the Debtor' bankruptcy cases or otherwise involving the AIG Member Companies.

15. **Reservation of Rights**.  In executing and filing this Proof of Claim, the AIG Member Companies: (i) do not waive any right or rights that it has or may have against any other persons liable for all or part of the claim set forth herein; (ii) expressly reserve the right to amend or supplement this Proof of Claim in any respect; (iii) expressly reserve the right to assert all claims, causes of action, defenses, offsets or counterclaims; and (iv) expressly reserve the right to contest insurance coverage in the event of any claim that may be tendered by the Debtor for coverage.

EXHIBIT A

# PAYMENT AGREEMENT

For

## Insurance and Risk Management Services

effective on the **01** day of **January, 2012**

by and between us,

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

**American Home Assurance Company**
**The Insurance Company of the State of Pennsylvania**
**Commerce and Industry Insurance Company**
**Chartis Property Casualty Company**
**Illinois National Insurance Co**
**Chartis Casualty Company**
**Granite State Insurance Company**
**New Hampshire Insurance Company**

And *You*, our Client

*VALITAS HEALTH SERVICES, INC.*
*105 WESTPARK DRIVE, SUITE 200*
*BRENTWOOD   TN 37027*

in consultation with *Your* representative

*GALLAGHER HEALTHCARE INSURANCE*
*1900 WEST LOOP SOUTH,*
*HOUSTON TX 77027*

# PAYMENT AGREEMENT

## TABLE of CONTENTS

| | |
|---|---|
| Title Page | 1 |
| Table of Contents | 2 |
| Who Has Agreed To This Agreement? | 3 |
| What Have *You* And We Agreed To? | 3 |
| When Does This Agreement Begin? | 3 |
| When Will This Agreement End? | 3 |
| Which Words Have Special Meanings In This Agreement? | 3 |
| What Else Should *You* Know About *Your Payment Obligation*? | 4 |
| When Must *You* Pay *Your Payment Obligation*? | 4 |
| What Is the Payment Plan? | 4 |
| What Is the Billing Method? | 5 |
| What About Collateral? | 6 |
| What Is Default? | 7 |
| What May We Do In Case Of Default? | 7 |
| How Will Disagreements Be Resolved? | 8 |
| To Whom Must *You* and We Give Notices? | 9 |
| May Rights or Obligations be Assigned? | 9 |
| Will Past Forbearance Waive Rights under This Agreement? | 9 |
| Who Must Pay to Enforce This Agreement? | 9 |
| How May This Agreement Be Changed? | 9 |
| What If the Law Changes? | 9 |
| Are *You* Authorized to Make This Agreement? | 9 |
| Signatures | 10 |
| Schedule of Policies and Payments | Appended |

# PAYMENT AGREEMENT

## WHO HAS AGREED TO THIS AGREEMENT?

This Agreement is between:

- *You,* the organization(s) named as "our Client" in the *Schedule,* and
- us, the insurer(s) named in the *Schedule.*

The words "we", "us" and "our" in this Agreement refer to the insurer(s) named in the *Schedule.*

## WHAT HAVE *YOU* AND WE AGREED TO?

**We have agreed** to the following:

- to provide *You* insurance and services according to the *Policies* and other agreements; and
- to extend credit to *You* by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement.

To induce us to agree as above,

**You have agreed** to the following:

- to pay us all *Your Payment Obligation* and to perform all *Your* other obligations according to this Agreement and *Schedule* for all entities covered by the *Policies;*
- to provide us with collateral according to this Agreement and *Schedule;*

## WHEN DOES THIS AGREEMENT BEGIN?

This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement. Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

## WHEN WILL THIS AGREEMENT END?

This Agreement will end only after *You* and we have settled and paid all obligations between *You* and us relating to this Agreement. Neither *You* nor we may cancel this Agreement without the other's consent.

## WHICH WORDS HAVE SPECIAL MEANINGS IN THIS AGREEMENT?

Words with special meanings in the *Policies* have the same meanings in this Agreement as they have in the *Policies.* Non-italicized capitalized words in this Agreement are defined in the *Policies,* or their meanings are otherwise described in this Agreement.

The following are definitions of other special words. Terms printed in this Agreement in italic typeface have the meanings described below.

1. **"ALAE"** means Allocated Loss Adjustment Expense as defined in the *Policies.*

2. **"Deductible Loss Reimbursements"** means the portion of any *Loss* and *ALAE* we pay that *You* must reimburse us for under any "Deductible" or "Loss Reimbursement" provisions of a *Policy.*

3. **"Loss"** or **"Losses"** means damages, benefits or indemnity that we become obligated under the terms of the *Policies* to pay to claimants.

4. **"Policy"** or **"Policies"** means:

   - any of the insurance *Policies* described by their *Policy* numbers in the *Schedule,* and their replacements and renewals;
   - any additional insurance *Policies* that we may issue to *You* that *You* and we agree to make subject to this Agreement.

5. **"Retained Amount"** or **"Retention"** means one of the following:

   - **Self-Insured Retention:** the amount specified in the applicable *Policy* as *Your* Self-Insured Retention per occurrence, accident, offense, claim or suit; or
   - **Deductible:** the amount specified in the applicable *Policy* as the Reimbursable or Deductible portion of *Loss* per occurrence, accident, offense, claim or suit; or
   - **Loss Limit:** the portion of any *Loss* we pay because of an occurrence, offense, accident, claim or suit, that we will include in the computation of the premiums.

# PAYMENT AGREEMENT

The *Policies* show the type of *Retention* that applies to any specific occurrence, offense, accident, claim or suit.

6. **"Schedule"** means each of the attachments to this Agreement that describes specific elements of the Agreement for a specified period of time. Each *Schedule* is a part of this Agreement. Additional *Schedules* or amendments to *Schedules* may be attached to this Agreement from time to time by mutual agreement between *You* and us.

7. **"You"** or **"Your"** means the person or organization named as our Client in the title page of this Agreement, its predecessor and successor organizations, and each of its subsidiary, affiliated or associated organizations that are included as Named Insureds under any of the *Policies*. Each is jointly and severally liable to us for the entire amount of *Your Payment Obligation*.

8. **"Your Payment Obligation"** means the amounts that *You* must pay us for the insurance and services in accordance with the terms of the *Policies*, this Agreement, and any similar primary casualty insurance *Policies* and agreements with us incurred before the inception date hereof. Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:

   - the premiums and premium surcharges,
   - *Deductible Loss Reimbursements*,
   - any amount that we may have paid on *Your* behalf because of any occurrence, accident, offense, claim or suit with respect to which *You* are a self-insurer,
   - any other fees, charges, or obligations as shown in the *Schedule* or as may arise as *You* and we may agree from time to time.

**Loss Reserves:** *Your Payment Obligation* includes any portion of the premiums, premium surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for *Losses* and *ALAE*. Those reserves shall include specific reserves on known *Losses* and *ALAE*, reserves for incurred but not reported *Losses* and *ALAE*, and reserves for statistically expected development on *Losses* and *ALAE* that have been reported to us. Any *Loss* development factors we apply in determining such reserves will be based on our actuarial evaluation of relevant statistical data including, to the extent available and credible, statistical data based upon *Your* cumulative *Loss* and *ALAE* history.

---

## WHAT ELSE SHOULD *YOU* KNOW ABOUT *YOUR PAYMENT OBLIGATION*?

**Amounts:** We will calculate *Your Payment Obligation* according to the methods stated in the *Policies* and any other similar primary casualty insurance *Policies* and agreements between us.

*You* must abide by the results under this Agreement of any payment of *Loss* or *ALAE* that the claims service provider or we shall have made in the absence of negligence and in good faith under any of the *Policies*.

**Credit:** Credit is extended to *You* whenever *Your* payment of some or all of *Your Payment Obligation* is postponed beyond the effective date of the insurance *Policies* to which such obligations pertain. Any extension of unsecured credit to *You* under this Agreement is extended only for the duration of the *Policy* year for which it is extended. It is subject to review and revision or withdrawal at each anniversary of this Agreement or at other times in accordance with the terms of this Agreement. Any extension of credit to *You* under this Agreement, including any deferral or waiver of the collection of collateral from *You* is not an assumption by us of any of *Your* obligations to us. Any extension of credit to *You* does not limit our right to enforce *Your* performance under this Agreement.

A Credit Fee may be charged for any unsecured credit extended to *You*. The Credit Fee, if any, is shown in the *Schedule*. Any such Credit Fee is an annual fee and applies only to the *Policy* year to which such *Schedule* applies. A renewal Credit Fee may be charged for the period of any renewed extension of unsecured credit, and shall be shown in the *Schedule* pertaining thereto.

Payment of the Credit Fee, if any, is neither payment of premium for insurance of any kind nor payment of *Deductible Loss Reimbursements*.

---

## WHEN MUST *YOU* PAY *YOUR PAYMENT OBLIGATION*?

All payments are due by the due date stated in the *Schedule*, or as respects Additional Payments, within 30 days of the later of the Invoice, Notice or Bill date or *Your* evidenced receipt date of the Invoice, Notice or Bill for each such Additional Payment.

---

## WHAT IS THE PAYMENT PLAN?

# PAYMENT AGREEMENT

### Deposit and Installments

*You* must pay us a Deposit and Installments in the amounts and by the dates shown in the *Schedule* for the *Policies* described in the *Schedule*.

**Claims Payment Deposit:** If so shown in the *Schedule*, the Deposit includes a Claims Payment Deposit. The Claims Payment Deposit will not bear interest. We will return the amount of the Claim Payment Deposit to *You* when *You* have paid us all amounts due us.

If the total amount of claims we shall have paid on *Your* behalf exceeds the sum of the Claims Payment Deposit for three (3) consecutive billing periods, we may require *You* to pay us additional funds for the Claims Payment Deposit. However, the entire Claims Payment Deposit shall not exceed 250% of the average amount of the claims we had paid in each of the prior 3 periods.

### Additional Payments

*You* must also make payments in addition to the Deposit and Installments according to the Payment Method described under "Additional Payments" in the *Schedule*.

## WHAT IS THE BILLING METHOD?

**Deposit and Installments:** *You* must pay us the amounts shown in the *Schedule* as "Installments". *You* must pay us those amounts by their Due Dates shown there.

**Additional Payments:** *You* have chosen the **Direct Billing Method** or the **Automatic Withdrawal Method,** or a combination of both. *Your* choice is shown in the *Schedule*.

### Direct Billing Method

For the Additional Payments described under "WHAT IS THE PAYMENT PLAN?", we will further bill *You* as necessary for the payment of *Losses* we must pay or have paid within *Your Retention* and *Your* share of *ALAE* covered by the *Policies*. We will not bill more than permitted under any Aggregate Stop or Maximum Premium or Maximum Insurance Cost provisions that apply to the *Policies*.

### Automatic Withdrawal Method

For the Additional Payments described under "WHAT IS THE PAYMENT PLAN?", we will draw funds from the "Automatic Withdrawal Account" described in the *Schedule* as necessary for the payment of *Losses* within *Your Retention* and *Your* share of *ALAE* covered by the *Policies*. We will not withdraw more than permitted under any Aggregate Stop or Maximum Premium or Maximum Insurance Cost provisions that apply to the *Policies*.

*You* hereby authorize us to withdraw funds from that Account upon our demand.

*You* must pay enough cash into that "Automatic Withdrawal Account" to cover our expected payments of *Loss* within *Your Retention* and *Your* share of *ALAE* during the next Claims Payment Fund Coverage Period shown in the *Schedule*. The minimum amount of such cash funds is shown in the *Schedule* as "Minimum Amount". *You* must make a payment in that amount into that Account immediately whenever its balance falls below 25% of that amount. Interest earned on that Account belongs to *You*.

# PAYMENT AGREEMENT

## WHAT ABOUT COLLATERAL?

### Collateral is Required

*You* must deliver collateral acceptable to us to secure *Your Payment Obligation* at the time(s), in the form(s) and in the amount(s) shown in the *Schedule*. Subject to the terms of this Agreement, we may apply any collateral we hold in connection with this or any other similar primary casualty insurance *Policies* or agreements to *Your Payment Obligation*.

### Grant of Security Interest and Right to Offset

*You* grant us a possessory security interest in any property *You* deliver to us to secure *Your Payment Obligation*. *You* also grant us a continuing first-priority security interest and right of offset with respect to all premiums, surcharges, dividends, cash, accounts, or funds that are payable to *You* and are now or may in the future come into our possession in connection with *Your Payment Obligation*. *You* agree to assist us in any reasonable way to enable us to perfect our interest. *You* direct us to hold all such sums as collateral for *Your Payment Obligation* as they may be payable now or may become payable in the future.

### Letter of Credit

Any letter of credit must be clean, unconditional, irrevocable and evergreen. It must be from a bank that we and the Securities Valuation Office of the National Association of Insurance Commissioners have approved and in a form acceptable to us. It must be in the amount shown in the *Schedule*.

If any letter of credit is canceled, no later than 30 days before that letter of credit expires, *You* must deliver to us a substitute letter of credit that complies with the requirements set forth above. Upon *Your* written request, we will not unreasonably withhold our consent to a reasonable extension of the time within which *You* must deliver such a substitute letter of credit to us. The substitute letter of credit must take effect no later than the date of termination of the expiring letter of credit. *Your* duty to deliver such a letter of credit will continue until *You* have satisfied all *Your* obligations under this Agreement and the *Policies*. If *You* fail to provide us with a qualifying substitute letter of credit as indicated above, we may draw upon the existing letter of credit in full.

### Other Collateral

With respect to any collateral we accept other than a letter of credit, including but not limited to any collateral we hold in trust or escrow, any agreements between *You* and us about our respective rights and obligations with respect to such collateral are incorporated by reference into this Agreement. Nothing in those agreements will limit or modify any of our rights under this Agreement.

### Collateral Reviews

The collateral we require to secure *Your Payment Obligation* is subject to reviews and revisions as described below.

We will review our collateral requirement annually. In addition, we may review our collateral requirement at any time that we may deem reasonably necessary, including at any time after an event such as but not limited to the following:

1. the non-renewal or cancellation of any *Policy* to which this Agreement applies,
2. the failure or violation of any financial covenants or tests, or minimum financial rating (if any) specified in the *Schedule*,
3. the occurrence of any direct or indirect transaction for the merger or consolidation, or the conveyance, sale, transfer, dividend, spin-off, lease, or sale and lease back, of all or any material portion of *Your* property, assets, business or equity to any other entity,
4. any material adverse change in the financial condition of *You*, *Your* subsidiaries or affiliates taken separately or in combination, or any other entity on which we rely for security or guarantee in connection with this Agreement.

*You* and we will cooperate with each other and each other's designated consultants in the conduct of such reviews.

If as a result of any review we find that we require additional collateral, *You* will provide us such additional collateral within 30 days of our written request, which shall be accompanied by a worksheet showing our calculation of the amount thereof. If a return of collateral to *You* is indicated, we will return annually the indicated amount to *You* within 30 days of our written acknowledgement thereof.

# PAYMENT AGREEMENT

## Collateral Adjustment Procedure

The additional collateral that *You* must provide us will be in the amount of the difference between the total unpaid amount of *Your Payment Obligation* and the total amount of *Your* collateral that we then hold. We may adjust the collateral requirement relating to the unexpired term of the *Policies* on the basis of our evaluation of *Your* financial condition. If such difference is a negative sum, that sum is the amount that we will return to *You*. However, we are not obligated to return collateral to *You* if *You* are in default of any provision of this Agreement or any other similar agreement relating to *Your* primary casualty insurance with us.

## Financial Information

*You* must provide financial information to us as a basis for our collateral reviews within 14 days after our request.

If *You* are not subject to the reporting requirements of the Securities and Exchange Act of 1934, *You* must provide us copies of *Your* audited annual financial statements.

If we so request, *You* must provide us such financial information as we may reasonably deem necessary to determine *Your* financial condition, including but not limited to copies of *Your* completed quarterly financial statements. Those statements must include the following:

- balance sheet,
- income statement,
- statement of retained earnings,
- cash flow statement,
- notes to the statements, and
- any supplemental schedules.

## Reporting Requirement

Give us prompt notice of the event of any default as described in the section titled "What is a Default", or any event described in the section titled "Collateral Reviews" in this Agreement, that has happened or is about to happen.

As an alternative to the above, at *Your* option, provide us with the same notices at the same time that *You* provide such notices to any other creditor regarding any material financial or operational condition that *You* are obligated to report to such other creditor.

# WHAT IS DEFAULT?

Default is any of the following:

1. failure by *You* or any of *Your* subsidiaries or affiliates to perform within 5 days after its due date any obligation *You* or any of *Your* subsidiaries or affiliates have under this Agreement or any other agreement with us.

2. *Your* insolvency, or the occurrence of any of the following:

   - the commencement of liquidation or dissolution proceedings, *Your* general failure to pay debts as they become due, general assignment by *You* for the benefit of creditors, the filing by or against *You* of any petition, proceeding, case or action under the provisions of the United States Bankruptcy Code or other such law relating to debtors, the appointment of, or the voluntary or involuntary filing for a petition for the appointment of, a receiver, liquidator, rehabilitator, trustee, custodian or similar official to take possession or control of any of *Your* property; or

   - *Your* default on any material outstanding debt not cured within its applicable cure period, if any.

3. the cancellation by *You*, without our prior consent, of any *Policy* material to this agreement. However, *Your* concurrent cancellation of <u>all</u> the unexpired *Policies* shall not constitute default.

4. the discovery of any material inaccuracy or incompleteness in any representation, warranty or condition precedent *You* make in connection with this Agreement, the insurance afforded by any of the *Policies* or *Your Payment Obligation*.

# WHAT MAY WE DO IN CASE OF DEFAULT?

If default occurs, we may take reasonable and appropriate steps that are necessary to protect our interest. We will exercise good faith consistent with usual and customary commercial and credit practice in selecting and exercising such steps. We may take steps such as the following:

# PAYMENT AGREEMENT

1. We may declare the entire unpaid amount of *Your Payment Obligation* immediately due and payable.

2. We may change any or all unexpired *Policies* under Loss Reimbursement or Deductible plans to Non-Deductible plans for the remaining term of any such *Policy*, to become effective after ten days written notice to *You*. We will therewith increase the premiums for those *Policies* in accordance with our applicable rating plan.

3. We may draw upon, liquidate, or take ownership of any or all collateral we hold regardless of the form, and hold or apply such amounts to any of *Your Payment Obligations* under this Agreement or any other premium, surcharge or deductible financing agreement between *You* and us, or under any *Policies*. However we will not draw upon, liquidate, or take ownership of more collateral than is reasonably necessary to protect our interest.

4. We may require *You* to deliver to us additional collateral, including an amendment to the letter of credit or an additional letter of credit or other additional collateral. The other additional collateral, letter of credit or its amendment must conform to the requirements described above. *You* must deliver it within 15 days of *Your* receipt of a written notice from us.

5. We may cancel any or all unexpired *Policies* as if for non-payment of premium or *Deductible Loss Reimbursements*. We may apply any return of premium resulting from the cancellation to remedy any default.

6. We may withhold payment of claims to *You* or any of *Your* subsidiaries or affiliates.

7. We may satisfy *Your* obligations to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of *yours* received by, pledged to, held by or otherwise available to us in connection with *Your Payment Obligation*. *You* authorize us after any default to charge any account that *You* maintain with us in connection with *Your Payment Obligation* in order to satisfy any of *Your* obligations.

## HOW WILL DISAGREEMENTS BE RESOLVED?

### What if we disagree about payment due?

If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay, within the time allowed for payment *You* must:

- give us written particulars about the items with which *You* disagree; and
- pay those items with which *You* do not disagree.

We will review the disputed items promptly and provide *You* with further explanations, details, or corrections. *You* must pay us the correct amounts for the disputed items within 10 days of agreement between *You* and us about their correct amounts. Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration as set forth below. With our written consent, which shall not be unreasonably withheld, *You* may have reasonable additional time to evaluate our response to *Your* written particulars.

So long as *You* are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of *Your Payment Obligation*.

### What about disputes other than disputes about payment due?

Any other unresolved dispute arising out of this Agreement must be submitted to arbitration. *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

### Arbitration Procedures

**How arbitrators must be chosen:** *You* must choose one arbitrator and we must choose another. They will choose the third. If *You* or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make an application to a Justice of the Supreme Court of the State of New York, County of New York and the Court will appoint the additional arbitrator or arbitrators.

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

# PAYMENT AGREEMENT

**How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when filed with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.

The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability. However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.

**Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.

This Section will apply whether that dispute arises before or after termination of this Agreement.

## TO WHOM MUST *YOU* AND WE GIVE NOTICES?

We will mail or deliver all notices to *You* at *Your* address in the *Schedule*. *You* must mail or deliver all notices to our Law Representative with a copy to our Account Executive at the address specified in the *Schedule*. All notices must be in writing.

## MAY RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT BE ASSIGNED?

Neither *You* nor we may assign our rights or obligations under this Agreement without the written consent of the other, which shall not be unreasonably withheld.

## WILL PAST FORBEARANCE WAIVE RIGHTS UNDER THIS AGREEMENT?

Past forbearance, neglect or failure to enforce any or all provisions of this Agreement, or to give notice of insistence upon strict compliance with it, will not be a waiver of any rights. A waiver of rights in a past circumstance will not be a course of conduct that waives any rights in any subsequent circumstance.

## WHO MUST PAY TO ENFORCE THIS AGREEMENT?

If *You* or we fail to perform or observe any provisions under this Agreement, the other may incur reasonable additional expenses to enforce or exercise its remedies. Either *You* or we must reimburse the other upon demand and presentation of clear and convincing supporting evidence for any and all such additional expenses.

## HOW MAY THIS AGREEMENT BE CHANGED?

This Agreement may be changed only by agreement by *You* and us, as evidenced by a written addendum to this Agreement, duly executed by the authorized representatives of each.

## WHAT IF THE LAW CHANGES?

If any part of this Agreement should become unenforceable because of any change in law, the remainder of this Agreement will remain in full force and effect.

## ARE *YOU* AUTHORIZED TO MAKE THIS AGREEMENT?

*You* hereby represent and warrant that *Your* execution, delivery and performance of this Agreement have been authorized by all necessary corporate actions. The individual executing this agreement on *Your* behalf has full right and authority to execute and deliver this agreement and to bind *You* jointly and severally.

# PAYMENT AGREEMENT

## SIGNATURES

TO SIGNIFY AGREEMENT, *You* and we have caused this Agreement to be executed by the duly authorized representatives of each.

For **National Union Fire Insurance Company of Pittsburgh, Pa.,**

On behalf of itself and its affiliates first listed above:

In **Houston**, **TX**,

This *21st* day of *March*, *2012*

Signed by *Anner M. Jones*

Typed Name **Anner M. Jones**

Title **Attorney in Fact**

For *You*, our Client

**VALITAS HEALTH SERVICES, INC.**

In *Brentwood*, *TN*,

This *15th* day of *March*, *2012*

Signed by _____

Typed Name *Dennis Wade*

Title *CHRO*

**EXHIBIT B**